IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GENESIS CARE PTY LIMITED[1], <br><br> Debtor. | Chapter 11 <br><br> Case No. 23-90614 (DRJ) <br><br> (Jointly Administered) |

**OBJECTION OF STORE MASTER FUNDING VI, LLC TO THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (TECHNICAL MODIFICATIONS)**

STORE Master Funding VI, LLC ("STORE" or "Landlord"), hereby files this objection (the "Objection") to the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1024] (the "Plan"),[2] and respectfully represents as follows:

### I.  BACKGROUND

1. On June 1, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GenesisCare. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 2270 Colonial Blvd., Fort Myers, FL 33907.

[2] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Plan and accompanying documents.

in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]  No trustee or examiner has been appointed in the Chapter 11 Cases.

        2.      STORE and Debtor GenesisCare USA Holdings, Inc. ("Debtor" or "Tenant") are parties to that certain Master Lease dated March 31, 2014 (as amended, the "Master Lease"), whereby Debtor agreed to lease, from STORE, twelve (12) commercial properties located in Florida and Alabama (the "Master Lease Sites"):

    i)      431 University Blvd., Jupiter, FL 33458
    ii)     5550 S. US 1, Fort Pierce, FL 34982
    iii)    931 37th Place, Vero Beach, FL 32960
    iv)    3343 State Road 7, Wellington, FL 33449
    v)     3319 State Road 7, Wellington, FL 33449
    vi)    2301 W. Woolbright Avenue, Boynton Beach, FL 33426
    vii)   225 Chimney Corner Lane, Jupiter, FL 33458
    viii)  3355 Burns Road #105, Palm Beach Gardens, FL 33410
    ix)    3355 Burns Road #100, Palm Beach Gardens, FL 33410
    x)     14233 & 14235 S.W. 42nd St., Miami, FL 33175
    xi)    203 E. Adams St., Enterprise, AL 36330
    xii)   3031 Carters Mill Road, Marianna, FL 32446

        3.      STORE and Debtor GenesisCare USA Holdings, Inc. are also parties to a Lease Agreement dated February 19, 2016 (the "Individual Lease"), whereby Tenant agreed to lease commercial property located at 2141 A. Alternate A1A, Suites 410 & 420 in Palm Beach, Florida (the "Individual Site" and collectively with the Master Lease Sites, the "Premises").  (The Master Lease and Individual Lease are collectively referred to herein as the "Leases").

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

4.      The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.      On November 6, 2023, Debtors filed the Plan. The Plan contemplates the assumption and rejection of executory contracts and unexpired leases of the GC U.S. Debtors. In accordance with Article V of the Plan, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected as of the Effective Date except for any Executory Contract or Unexpired Lease that (1) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) are the subject of a motion to assume Filed on or before the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction including the Sale Transaction Restructuring; (5) are a contract instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (6) are a D&O Liability Insurance Policy. Plan Art. V. A. 2.

6.      Landlord does not object to the Debtors' efforts to confirm a plan of reorganization, but as drafted, the Plan improperly modifies the Landlord's rights under the Leases and the Bankruptcy Code.  Landlord, through counsel, has raised these issues with counsel for the Debtors and is optimistic that the outstanding items will be resolved by language in the Confirmation Order.  However, as of the filing of this Objection, no agreement has been reached. Landlord will withdraw this Objection with respect to any resolved issues if an agreement can be negotiated.

## II.     ARGUMENT

### A.     *The Plan Improperly Attempts to Modify the Terms of the Leases*

7.     Through the Plan and the Assumption Schedules, Debtors seek to sever the Master Lease, assume only eight of the twelve locations and assign certain of the assumed locations to different assignees. The Master Lease is a unitary, unexpired lease and must be assumed or rejected in whole. Nothing in the Bankruptcy Code or applicable law permits the Debtors to assume certain portions of a contract while rejecting or amending other portions of the same contract.

8.     Through the Plan Debtors ask this Court to simply ignore the plain language and intent of the Master Lease, and rewrite the terms so that the Debtors have the benefits of certain properties under the Master Lease without bearing the burdens of the integrated Master Lease structure. This is contrary to the Bankruptcy Code and Florida law.

9.     The Master Lease is an enforceable, unexpired lease that must be assumed or rejected *in toto*. A debtor cannot assume the benefits and reject the unfavorable aspects of the same contract. *See Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 121-23 (Bankr. D. Del. 2008). For purposes of assumption and assignment, courts must determine, under applicable law (here, Florida law), whether a contract or lease is properly construed as a unitary agreement that can only be assumed and assigned as a whole, or whether it may be severed. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 389 (Bankr. N.D. Tex. 2003); *Buffets*, 387 B.R. at 120. As the court in *Buffets* made clear, "there is 'no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible.' . . . Rather, the determination of whether a specific contract or lease is an indivisible agreement or is several agreements in one, which should properly be severable, depends on the application of state law."

*Buffets*, 387 B.R. at 124 (quoting *Bistrain v. E. Hampton Sand & Gravel Co.*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982)).

10. Under Florida law, "the intention of the parties is the governing principle in contract construction and — absent ambiguity in the terms of a contract — intent is gleaned from the four corners of the instrument. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987)(internal citations omitted). The Eleventh Circuit found three factors generally persuasive in determining the parties' intent in connection with the severability of a contract: (1) whether the nature and purpose of the agreements are different; (2) whether the consideration for each agreement is separate and distinct; and (3) whether the obligations of each party are interrelated. *Id.*, s*ee also In re Ecoventure Wiggins Pass, Ltd.*, 406 B.R. 123, 129 (Bankr.M.D. Fla. 2009)(citing *In re Gardinier*, 831 F.2d 974 (11th Cir. 1987)).

11. Here, the Master Lease is clearly an integrated contract that cannot be severed. The heart of the bargain struck between the parties was a single lease between a single landlord and a single tenant, and subject to a single monthly rent payment. In exchange for the payment of rent and other amounts due, Tenant was entitled to occupy the Properties as a whole. *See* Master Lease arts. II, III, and IV. Therefore, the Court should find that, under the terms of the Master Lease, Debtors may not sever the Master Lease and are prohibited from rejecting some—but not all—of the Properties under the Master Lease. Absent agreement, the Debtors must either reject or assume the Master Lease as it exists without modification.

**B. The Plan Improperly Seeks to Assume or Reject Leases Beyond the Confirmation Date Absent Landlord Consent**

12. The Plan proposes that, except as otherwise expressly provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed <u>rejected</u> as of the Effective Date,

but then gives the Debtors the ability to assume leases by motion past the Confirmation Date. Plan at Art. V. A. 2.

13. There is no legal basis to allow the Debtors to assume Unexpired Leases post-confirmation. Not only is this unsupported by any statutory authority or case law, the Bankruptcy Code requires that all leases of nonresidential real property be assumed or rejected no later than the date of entry of the confirmation order, absent consent of the Landlords. Unless an extension of the period to assume or reject is agreed upon by written agreement of the applicable parties, the Debtors must finalize their list of assumed and rejected leases on or before the Confirmation Date.

14. Section 1129(a)(1) provides that "a plan may not be confirmed unless the plan complies with the applicable provisions of Title 11 . . . ." *Mabey v. S.W. Elec. Power Co. (In the Matter of Cajun Elec. Power Cooperative, Inc.)*, 150 F. 3d 503, 513, n.3 (5th Cir. 1998), *citing Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.)*, 165 B.R. 188, 193 (Bankr. W.D. Tex. 1994) ("In order to confirm a plan the court must find that the plan and its proponent have complied with the applicable provisions of Title 11."). Moreover, a plan cannot be confirmed if it violates the provisions of Title 11. *See Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995).

15. The Debtors cannot pick and choose which Bankruptcy Code provisions to follow and which to ignore. Section 365(d)(4) requires the assumption or rejection of leases no later than the entry of the order confirmation a plan of reorganization, absent consent of the landlord counterparty, and the Debtors must abide by this provision to confirm their Plan. Section 365(d)(4) provides that "an unexpired lease of nonresidential real property under which the debtor is the lessee <u>shall be deemed rejected</u> . . . if the trustee does not assume or reject the unexpired

lease by the earlier of (i) the date that is 120 days after the date of the order for relief [or within such additional time as set by the Court and authorized by Section 365(d)(4)]; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4).

### C. Disputed Cures Must be Reserved in Full Pending a Resolution of the Dispute

16. The Plan further provides that cure amounts will be paid upon resolution of the cure dispute, which may be after the Confirmation Date, but provides no mechanism for ensuring that the cure amounts are reserved pending resolution of the dispute. Art. V .C. To ensure availability of funds post-confirmation, the full amount of any cure claimed by Landlord must be reserved by the Debtors pending a resolution of any cure dispute.

### D. The Effective Date of Rejection Cannot Occur Until the Properties have been Unequivocally Surrendered to the Landlord

17. Debtors request that the effective date of rejection of Unexpired Leases occur on confirmation of the Plan. Plan Art. V. 2. Rejection damages claims are to be filed "within thirty days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date." Plan Art. V. B.

18. The Plan is unclear on how the Debtors intend to the convey possession of the Premises to STORE. The effective date of rejection should not occur until STORE has full dominion and control over the Premises in accordance with the Leases. STORE does not object to rejection as of the Confirmation Date, however, the Debtors must have <u>unequivocally surrendered</u> the Premises to STORE and turnover all keys, key codes, and alarm codes prior to the Confirmation Date.

19. The Plan is also silent on the status of personal property that may be abandoned at the Premises. Landlord requires confirmation that any personal property will be abandoned free and clear of all liens, claims, interests, and encumbrances as of the Surrender Date, and that Landlords may use or dispose of any such personal property without notice or liability to the Debtors or any third parties without further notice or order of the Court.

### E. The Injunction and Release Provisions of the Plan are Overbroad and Ambiguous

20. The Plan provides broad release and exculpation provisions that are inapplicable to the Leases to the extent these provisions purport to release the Debtors from any obligations under the Leases. *See* Plan at Article VIII. A debtor assumes its leases *cum onere*, or subject to existing burdens. *In re Wash. Capital Aviation & Leasing*, 156 B.R. 167,172 (Bankr. E.D. Va. 1993). While the Debtors must pay all outstanding balances due under the Leases as cure at the time of assumption, the Debtors assume, and must honor, other obligations under the Leases, regardless of when they arise. The Debtors cannot avoid these obligations through releases or waivers in their Plan. Further, any assumption must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance. This is consistent with Section 365(b) of the Bankruptcy Code.

21. Specifically, in addition to rent and related monthly charges, the Debtors bear responsibility for other charges under the Leases that may not yet be known or which may not yet have been reconciled and/or adjusted from the pre-assumption periods. For instance, the Debtors occupy retail space pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. In addition to a base minimum rent, the Debtors pay a pro-rata share of other charges and expenses, such as real property taxes, insurance, common area

maintenance ("CAM") fees, and percentage rent. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year based upon such estimate, and then reconciled after year-end. Year-end reconciliations and adjustments for previous years may not yet be complete (i.e. – year-end reconciliations and adjustments that accrued through 2022 may not yet been billed, and such charges for 2023 will not be billed until sometime in 2024 or after). Moreover, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. These accrued but unbilled charges are not yet due under the Leases, and they do not create a current default or payment obligation that is part of the cure payment required to assume the Leases. Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases. The Debtors cannot assume the Leases pursuant to the Plan, and then try to use the Plan or Confirmation Order to release their obligation to pay these accrued or accruing, but unbilled, charges that come due under the Leases in the ordinary course.

22. The Leases also contain provisions that require the Debtors to indemnify Landlords with respect to various claims, which claims may not become known until after the assumption of the Leases (i.e. personal injury claims at the Premises and damage to property by the Debtors or their agents). Any assumption of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arise.[4] Nothing in the Plan or Confirmation Order should act as a waiver or release of any indemnity or other rights and obligations that exist under the Leases.

---

[4] Any ability to assume the Leases is subject to the protections provided by section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

### F.     *The Plan Improperly Seeks to Deprive Landlord of its Setoff and Recoupment Rights*

23.     Through the injunction and release provisions, the Debtors improperly seek to deprive Landlord of its rights to setoff and recoupment.  *See* Plan at VIII.D and VIII.F.  There is no authority to deprive Landlord of its setoff and recoupment rights through a plan or to impose unreasonable conditions on the preservations of those rights as set forth in the Plan. To the extent any claim objections or preference actions are prosecuted against Landlord following Plan confirmation, Landlord should not be deprived of its rights to assert setoffs or exercise recoupment, or be limited in its ability to enforce these rights.  In addition, the Plan may not cut off the Landlord's rights to setoff existing security deposits in the event of future defaults under Leases assumed under the Plan, or other defaults existing under Leases that are rejected by the Debtors.

24.     The Debtors fail to provide any authority for seeking to void Landlord's ability to exercise their setoff and recoupment rights pursuant to applicable law, and Debtors should not be permitted to deprive Landlord of these rights.  *See Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269 (9th Cir. 1992), *cert denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257-61 (3d Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets).  This is especially true where, as here, the Plan seems to preserve all of the Debtors' rights to such setoff and recoupment.

### III.     RESERVATION OF RIGHTS

25.     Landlords reserve the right to make such other and further objections as may be appropriate at the hearing.

## IV. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

26. To the extent consistent with the objections expressed herein, STORE also joins in the objections of other landlords and the Committee. Additionally, this Objection is without prejudice to STORE's ability to raise further objections at the Sale Hearing and STORE reserves all rights to: (i) object to any request to the assumption and assignment of the Leases on any grounds, including objections based upon adequate assurance of future performance and the proposed use for any Premises, (ii) object to the form of any asset purchase agreement, or other document executed by the Debtors and the Winning Bidder; (iii) raise additional objections at any sale hearing; (iv) object to any final process for designation rights for any of the Leases; (v) require any attempted assignment to comply with all terms of the Leases; (vi) object to any request to conduct further store closing sales; and (vii) seek to continue the sale hearing.

## V. CONCLUSION

WHEREFORE, STORE respectfully request that the Court grant relief consistent with the foregoing objections; and such other and further relief as may be just and proper under all of the circumstances.

Dated: November 15, 2023

Respectfully submitted,

By: */s/ Michael S. Myers*
Craig Solomon Ganz
Southern District of Texas No. 24127203
Michael S. Myers
Southern District of Texas No. 3832721
Katherine E. Anderson (*pro hac vice* pending)
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Email: ganzc@ballardspahr.com
Email: myersm@ballardspahr.com
Email: andersonke@ballardspahr.com
Telephone: 602.798.5400

Facsimile: 602.798.5595

*Attorneys for STORE Master Funding VI, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 15, 2023 a true and correct copy of the foregoing was filed and served electronically via the Court's CM/ECF System upon those who are registered to receive electronic notice.

                                          */s/ Michael S. Myers*
                                          Michael S. Myers