United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 22, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS CARE PTY LIMITED, *et al.*,[1] | ) | Case No. 23-90614 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING
## THE FIRST AMENDED DISCLOSURE
## STATEMENT AND (II) CONFIRMING THE
## FIRST AMENDED JOINT PLAN OF GENESIS CARE PTY
## LIMITED AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11
## OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)

The above-captioned debtors (collectively, the "Debtors") having:[2]

a.    commenced these chapter 11 cases (the "Chapter 11 Cases") on June 1, 2023 (the "Petition Date"), by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules");

b.    Filed,[3] on June 1, 2023, the *Declaration of David Young, Chief Executive Officer of Genesis Care Pty Limited, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19], detailing the facts and circumstances of these Chapter 11 Cases;

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GenesisCare.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 1419 SE 8th Terrace, Suite 200, Cape Coral, Florida 33990.

[2]    Capitalized terms used but not defined in this confirmation order (this "Confirmation Order") have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each, as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

[3]    Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

c.      continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

d.      Filed, on June 30, 2023, the *Debtors' Emergency Motion For Entry Of (A) an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures, and (B) an Order Authorizing the Debtors to Enter into Definitive Purchase Agreements* [Docket No. 227] (the "<u>Bidding Procedures Motion</u>") seeking approval of the Bidding Procedures (as defined in the Bidding Procedures Motion);

e.      obtained, on July 19, 2023, entry of the *Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Establishing Related Dates and Deadlines, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 321] (the "<u>Bidding Procedures Order</u>");

f.      Filed, on September 8, 2023, (i) the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 705] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"), (ii) the *Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 706] (as modified, amended, or supplemented from time to time, and including the Notice of Additional DS Exhibits, the "<u>Disclosure Statement</u>"), and (iii) the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Form of Ballot and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 707] (the "<u>Disclosure Statement Motion</u>");

g.      Filed, on September 28, 2023, the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No 828] and the *First Amended Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 829];

h.      obtained, on October 2, 2023, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Form of Ballot and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 851] (the "<u>Disclosure Statement Order</u>"), conditionally approving the Disclosure Statement and approving:  (i) the related solicitation and voting procedures (the "<u>Solicitation and Voting Procedures</u>"), (ii) the notice of the hearing to be held to consider the adequacy of the Disclosure Statement and confirmation

of the Plan (the "Combined Hearing" and, such notice, the "Combined Hearing Notice"), (iii) the notices of non-voting status (the "Non-Voting Status Notices"), (iv) the ballots (the "Ballots"), (v) the cover letter, (vi) the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages"), and (vii) other forms, notices, and dates and deadlines;

i.     caused service of the Solicitation Packages, including the Combined Hearing Notice, to be provided on or about October 5, 2023, for all Holders of Claims as of the Voting Record Date, and on or about October 11, 2023, for all Holders that filed Claims after the Voting Record Date but on or before the Claims Bar Date, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the United States Bankruptcy Court for the Southern District of Texas (the "Complex Chapter 11 Cases Procedures"), the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the *Affidavit of Service of Solicitation Materials* [Docket No. 1003], the first *Supplemental Affidavit of Service of Solicitation Materials* [Docket No. 1004], and the second *Supplemental Affidavit of Service of Solicitation Materials* [Docket No. 1132] (collectively, and together with all the exhibits thereto, the "Solicitation Materials Affidavits");

j.     caused the Combined Hearing Notice to be published in *The New York Times* (national edition) on October 6, 2023, as evidenced by the *Proof of Publication* [Docket No. 875], and the *Financial Times* (global edition) on October 9, 2023, as evidenced by the *Affidavit of Publication* [Docket No. 876] (together, the "Publication Affidavit");

k.     Filed, on October 27, 2023, the *Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 991] (the "Initial Plan Supplement");

l.     Filed, on November 6, 2023, the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1024] and the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1025] (the "Confirmation Brief");

m.     Filed, on November 13, 2023, the *Notice of Winning Bidders for Certain of the Debtors' Acquired Assets* [Docket No. 1043];

n.     Filed, on November 13, 2023, the *First Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1044] (the "First Amended Plan Supplement");

o.     Filed, on November 14, 2023, the *Notice of Filing of Exhibits in Connection with the Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1045] (the "Notice of Additional DS Exhibits");

p.     Filed, on November 17, 2023, the *Notice of Winning Bidder for Certain of the Debtors' Acquired Assets* [Docket No. 1146];

q.     Filed, on November 19, 2023, the *Second Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1149] (the "<u>Second Amended Plan Supplement</u>");

r.     Filed, on November 19, 2023, the *Debtors' Omnibus Reply to Plan Confirmation Objections* [Docket No. 1151] (the "<u>Confirmation Reply</u>");

s.     Filed, on November 19, 2023, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1152] (the "<u>Voting Report</u>");

t.     Filed, on November 19, 2023, the *Declaration of David Young of Genesis Care Pty Limited, in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1159] (the "<u>Young Declaration</u>");

u.     Filed, on November 19, 2023, the *Declaration of Richard Wu in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1156] (the "<u>Wu Declaration</u>");

v.     Filed, on November 19, 2023, the *Declaration of John Singh in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1160] (the "<u>Singh Declaration</u>");

w.     Filed, on November 19, 2023, the *Declaration of Carol Flaton in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1154] (the "<u>Flaton Declaration</u>");

x.     Filed, on November 19, 2023, the *Declaration of Jonathan F. Foster in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1155] (the "<u>Foster Declaration</u>" and, together with the Young Declaration, the Wu Declaration, the Singh Declaration, and the Flaton Declaration, the "<u>Confirmation Declarations</u>");

y.     Filed, on November 20, 2023, the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 1161];

z.      Filed, on November 20, 2023, the *Third Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1174] (the "Third Amended Plan Supplement" and, together with the Initial Plan Supplement, the First Amended Plan Supplement, and the Second Amended Plan Supplement, and as may be amended, supplemented, or otherwise modified from time to time, the "Plan Supplement"); and

aa.      Filed, on November 21, 2023, the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 1186].

The Bankruptcy Court having:

a.      entered, on October 2, 2023, the Disclosure Statement Order that, among other things, approved the Disclosure Statement on a conditional basis;

b.      set November 15, 2023, at 4:00 p.m. (prevailing Central Time) as the deadline to file objections to the Disclosure Statement and the Plan (the "Objection Deadline");

c.      set November 21, 2023, at 3:30 p.m. (prevailing Central Time) as the date and time for the Combined Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018;

d.      reviewed the Plan, the Disclosure Statement, the Disclosure Statement Motion, the Plan Supplement, the Confirmation Brief, the Confirmation Reply, the Confirmation Declarations, the Solicitation Materials Affidavits, the Publication Affidavit, the Voting Report, the Combined Hearing Notice, and all Filed pleadings, exhibits, statements, and comments regarding final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights;

e.      considered the Restructuring Transactions incorporated and described in the Plan or the Plan Supplement, as applicable;

f.      held the Combined Hearing on November 21, 2023;

g.      heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and confirmation of Plan ("Confirmation");

h.      considered all oral representations, testimony, documents, filings, exhibits and other evidence regarding approval of the Disclosure Statement and Confirmation;

i.      overruled (i) any and all objections to final approval of the Disclosure Statement, the Plan, and Confirmation, except as otherwise stated or indicated on the record, and (ii) all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

j.     taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the Disclosure Statement and the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of approval of the Disclosure Statement and Confirmation and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings and Conclusions.**

1.     The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final

order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

### C.      Eligibility for Relief.

3.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

### D.      Commencement and Joint Administration of these Chapter 11 Cases.

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.   In accordance with the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 29], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

### E.      Appointment of the Committee.

5.      On June 15, 2023, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") to represent the interests of the Debtors' unsecured creditors in these Chapter 11 Cases [Docket No. 174].

**F.     Appointment of a Patient Care Ombudsman.**

6.     On July 7, 2023, the U.S. Trustee appointed a patient care ombudsman ("PCO") in these Chapter 11 Cases [Docket No. 250] to monitor the quality of care provided to the patients of the Debtors.

7.     On September 1, 2023, pursuant to section 333 of the Bankruptcy Code, the PCO filed the following reports for the period from July 7, 2023, to September 1, 2023: (a) *Patient Care Ombudsman's First Interim Report, East Florida Market* [Docket No. 683]; (b) *Patient Care Ombudsman's First Interim Report, West Florida/Central Market* [Docket No. 684]; and (c) *Patient Care Ombudsman's First Interim Report, East/West U.S. Market* [Docket No. 685].

8.     On November 1, 2023, pursuant to section 333 of the Bankruptcy Code, the PCO filed the following reports for the period from September 2, 2023, to November 1, 2023: (a) *Patient Care Ombudsman's Second Interim Report, East Florida Market* [Docket No. 1008]; (b) *Patient Care Ombudsman's Second Interim Report, West Florida/Central Market* [Docket No. 1006]; and (c) *Patient Care Ombudsman's Second Interim Report, East/West U.S. Market* [Docket No. 1007].

**G.     Plan Supplement.**

9.     The Debtors Filed (a) the Initial Plan Supplement on October 27, 2023, (b) the First Amended Plan Supplement on November 13, 2023, (c) the Second Amended Plan Supplement on November 19, 2023, and (d) the Third Amended Plan Supplement on November 20, 2023.  The Plan Supplement (including as subsequently amended, supplemented, or otherwise modified from time to time in accordance with the Plan) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements.  No other or further

notice will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto, unless any such documents are further modified.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any of the documents contained therein or related thereto on or before the Applicable Effective Date.

### H.    Modifications to the Plan.

10.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.   In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan.  No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan modifications, unless otherwise agreed to by the Holder of the Claim and the Debtors, in consultation with the Required Lenders (as defined in the Final DIP Order). Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

### I.    Objections Overruled.

11.    Any resolution or disposition of objections to the adequacy of the Disclosure Statement or Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections,

statements, and reservations of rights are hereby overruled on the merits (except in connection with unresolved objections to the extent solely related to cure amounts arising under assumed executory contracts).

**J.      Conditional Disclosure Statement Order.**

12.      On October 2, 2023, the Bankruptcy Court entered the Disclosure Statement Order, setting November 15, 2023, at 4:00 p.m. (prevailing Central Time) as the deadline for voting to accept or reject the Plan, as well as the deadline for objecting to the adequacy of the Disclosure Statement and Confirmation (the "Voting Deadline").

**K.      Disclosure Statement.**

13.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The Disclosure Statement also provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c). The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

14.      The exhibits contained in the Notice of Additional DS Exhibits are incorporated into the Disclosure Statement as approved on a final basis.

**L.      Burden of Proof—Confirmation of the Plan.**

15.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

> **M.**    **Notice.**

16.    As evidenced by the Solicitation Mailing Affidavits and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the opportunity to opt out of the third-party release contained in the Plan (the "<u>Third-Party Release</u>")), the Combined Hearing, the Plan Supplement, and all other materials distributed by the Debtors in connection with Confirmation of the Plan in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3019, and 3020(b), the Bankruptcy Local Rules, and the procedures set forth in the Disclosure Statement Order.  Further, the Combined Hearing Notice was published in *The New York Times* (national edition) on October 6, 2023, and the *Financial Times* (global edition) on October 9, 2023, in compliance with Bankruptcy Rule 2002(i) and the Disclosure Statement Order.  The Debtors provided due, adequate, and sufficient notice of the Objection Deadline and any applicable bar dates and hearings described in the Disclosure Statement Order or the Plan, as applicable, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

> **N.**    **Solicitation.**

17.    As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

18.     As described in the Voting Report and the Solicitation Materials Affidavit, as applicable, the Solicitation Packages were transmitted and served, including to all Holders of Claims and Interests entitled to vote on the Plan for which the Debtors did not waive the right to solicit (the "Voting Classes"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

19.     As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim or Interest as of September 22, 2023 (the "Voting Record Date"), which was set in the Disclosure Statement Order.  The establishment and notice of the Voting Record Date was reasonable and sufficient.

20.     The period during which the Debtors solicited acceptances of or rejections to the Plan was a reasonable and sufficient period of time for each Holder in the Voting Classes to make an informed decision to accept or reject the Plan.

21.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5A (General Unsecured Claims against the ROW Debtors) (collectively, the "Unimpaired Classes") are Unimpaired and conclusively presumed to have accepted the Plan.  The Debtors were not required to solicit votes from the Holders of Claims and Interests in Class 4 (Shareholder Loan Claims), Class 5B (General Unsecured Claims against the GC U.S. Debtors), Class 8A (Existing TopCo Interests), Class 8B (Existing GC U.S. TopCo Interests), and Class 9 (Section 510(b) Claims) (collectively, the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the Plan under the

Bankruptcy Code. Holders of Claims and Interests in Class 6 (Intercompany Claims), Class 7A (Intercompany Interests in the ROW Debtors), and Class 7B (Intercompany Interests in the GC U.S. Debtors) (collectively, the "Deemed Accepting/Rejecting Classes" and, together with the Unimpaired Classes and the Deemed Rejecting Classes, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.

22.     The Debtors served the Combined Hearing Notice on the entire creditor matrix and served Non-Voting Status Notices on all Non-Voting Classes. The Combined Hearing Notice adequately informed Holders of claims or interests of critical information regarding voting on (if applicable) and objecting to the Plan, including deadlines and the inclusion of release, exculpation, and injunction provisions in the Plan, and adequately summarized the terms of the Third-Party Release. Further, because the form enabling stakeholders to opt out of the Third-Party Release (the "Opt Out Form") was included in both the Ballots and the Non-Voting Status Notices, every known stakeholder, including unimpaired creditors and equity holders, was provided with the means by which the stakeholders could opt out of the Third-Party Release.

**O.     Voting.**

23.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

**P.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

24.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

(i)      *Proper Classification—Sections 1122 and 1123.*

25.      Article III of the Plan provides for the separate classification of Claims and Interests into twelve Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

(ii)      *Specified Unimpaired Classes—Section 1123(a)(2).*

26.      Article III of the Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims and Interests |
|-------|---------------------|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 5A | General Unsecured Claims against the ROW Debtors |

27.      Holders of Intercompany Claims and Intercompany Interests in the ROW Debtors and in the GC U.S. Debtors are either Unimpaired and conclusively presumed to have accepted the Plan, or are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.  Additionally, Article II of the Plan specifies that Allowed General Administrative Claims, Allowed DIP Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and Restructuring Expenses will be paid in accordance with the terms of the Plan,

although these Claims are not classified under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

       (iii)    *Specified Treatment of Impaired Classes—Section 1123(a)(3).*

28.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes, as summarized below.

| Class | Claims and Interests |
|-------|----------------------|
| 3 | SFA Claims and Swap Claims |
| 4 | Shareholder Loan Claims |
| 5B | General Unsecured Claims against the GC U.S. Debtors |
| 8A | Existing TopCo Interests |
| 8B | Existing GC U.S. TopCo Interests |
| 9 | Section 510(b) Claims |

Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

       (iv)    *No Discrimination—Section 1123(a)(4).*

29.    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

       (v)    *Adequate Means for Plan Implementation—Section 1123(a)(5).*

30.    The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the Plan (including the Plan Supplement), provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the general settlement of Claims and Interests; (b) authorization for the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those

actions necessary or appropriate to effect the Restructuring Transactions, including, without limitation, any restructuring transaction steps set forth herein or in the Restructuring Transactions Memorandum, as applicable, as the same may be modified or amended from time to time prior to the Applicable Effective Date; (c) the adoption, authorization, and entry of the New Organizational Documents; (d) the funding and sources of consideration for the Plan distributions; (e) the reservation of equity for future distribution in accordance with the terms and conditions of the Management Incentive Plans and the Physician Incentive Plans, as applicable; (f) the vesting of assets in the Post Effective Date Debtors or the Reorganized Debtors, as applicable; (g) except as otherwise provided in the Plan and Confirmation Order, the cancellation of existing securities and agreements; (h) the authorization and approval of the New Money Exit Facilities (if any), the Takeback Facilities, the New Equity Interests, the Rights Offering (if any), the New Warrants, and the transactions contemplated in connection therewith and entry into any agreements related to the same as set forth in the Plan or the Plan Supplement; (i) the authorization, approval, and entry of corporate actions under the Plan; (j) the authorization and approval of the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and/or the U.S. Asset Sales; (k) the appointment of the directors, officers, or managers for the Reorganized ROW Debtors and the Post Effective Date Debtors, as applicable; (l) the granting of new Liens and security interests to secure the New Money Exit Facilities (if any) and the Takeback Facilities, as applicable; and (m) the effectuation and implementation of documents and further transactions, including with respect to the Restructuring Transactions or otherwise.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi)     *Voting Power of Equity Securities—Section 1123(a)(6).*

31.     The New Organizational Documents and the Plan prohibit the issuance of non-voting equity securities only to the extent required to comply with section 1123(a)(6) of the

Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)    *Directors and Officers—Section 1123(a)(7).*

32.    The manner of selection of any officer, director, or trustee (or any successor of any officer, director, or trustee) of the Reorganized Debtors and the Post Effective Date Debtors, as applicable, will be determined in accordance with the Plan and the New Organizational Documents, as applicable, which is consistent with the interests of creditors and equity holders and with public policy. Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

(viii)   *Impairment / Unimpairment of Classes—Section 1123(b)(1).*

33.    Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ix)    *Assumption—Section 1123(b)(2).*

34.    Article V.A.1 of the Plan provides that, as of the ROW Effective Date, each Executory Contract and Unexpired Lease for the ROW Debtors shall be assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code.

35.    Article V.A.2 of the Plan provides that, on the GC U.S. Effective Date, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Reorganized GC U.S. Debtor or Post Effective Date Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (c) are the subject of a motion to assume Filed on or before the Confirmation Date; (d) are to be assumed by the Debtors or assumed by the

Debtors and assigned to another third party, as applicable, in connection with any sale transaction including the Sale Transaction Restructuring or the U.S. Asset Sales; (e) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (f) are a D&O Liability Insurance Policy.  The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the Plan Supplement.

36.     Article IV.B.2.d of the Plan provides that, unless otherwise provided in the Plan, and subject to Article V thereof, the Reorganized Debtors or Post Effective Date Debtors, as applicable, shall:  (a) assume all employment agreements, indemnification agreements, or other agreements with current and former members of any Governing Body, employees, officers, directors, or managers of the GC U.S. Debtors or the ROW Debtors, as applicable; or (b) enter into new agreements with such persons on terms and conditions acceptable to the Reorganized ROW Debtors or the Post Effective Date Debtors, as applicable, the Required Lenders, and such person.  Notwithstanding the foregoing: (a) pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Applicable Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law; and (b) the rabbi trusts established in respect of that certain Executive Nonqualified Excess Plan, adopted by GenesisCare, USA, Inc., GenesisCare USA of Florida, LLC, GenesisCare USA Management Services, Inc., Financial Services of Southwest Florida, Inc., and North Carolina Radiation Therapy Management Services, Inc. pursuant to the Executive

Nonqualified Excess Plan Adoption Agreement on December 2, 2019, shall be terminated as set forth in the Plan.

37.     Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

> (x)     *Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).*

38.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The Plan incorporates a settlement pursuant to Bankruptcy Rule 9019 of numerous claims and Causes of Action, issues, and disputes designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest.  Such settlement is the product of extensive arm's-length, good-faith negotiations that represents a sound exercise of the Debtors' business judgment.

39.     Accordingly, in consideration for the distributions and other benefits provided under the Plan, the Confirmation Order shall constitute the Bankruptcy Court's approval of such settlement as well as a finding by the Bankruptcy Court that such settlement is in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and is fair, equitable, and reasonable.

40.     Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Combined Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the

Bankruptcy Court's approval of the settlements embodied in the Plan and this Confirmation Order, because, among other things:  (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent such settlement, there is a likelihood of complex and protracted litigation involving, among other things, such settlement, with the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting such settlement, including the Debtors, each of the DIP Lenders and the Ad Hoc Group, is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlement is fair, equitable, and reasonable and in the best interests of the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of the Reorganized Debtors and the Post Effective Date Debtors, as applicable, to continue operating outside of bankruptcy protection and in the ordinary course of business (if applicable), and is essential to the successful implementation of the Plan.  Based on the foregoing, such settlement satisfies the requirements of applicable Fifth Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

### c.   **Debtor Release.**

41.     Article VIII.C of the Plan describes certain releases granted by the Debtors (the "Debtor Release").   The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release.  The Debtor Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best

interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

42.     Also, including for the reasons set forth in the Confirmation Declarations, the Debtor Release:  (a) reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the claims and Causes of Action released by the Debtor Release; (c) is provided in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate the Restructuring Transactions and implementing the Plan, following extensive, arm's-length negotiations between sophisticated parties represented by able counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.  Further, the Special Committees analyzed and considered all potential claims and causes of action held by the Debtors and determined that granting the Debtor Release was appropriate and necessary under the circumstances.  The Debtors' or the Reorganized Debtors or the Post Effective Date Debtors' pursuit of any such claims or Causes of Action against the Released Parties is not in the best interests of the Estates or the Debtors' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims or Causes of Action.

43.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Each of the Released Parties made significant concessions and

contributions to these Chapter 11 Cases.  The Debtor Release for the Debtors' current and former directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during these Chapter 11 Cases, and provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization and continued operation.  The Debtor Release for the DIP Lenders and the DIP Agent is likewise an integral component of the compromises and settlements contained in the Plan.  The DIP Lenders and the DIP Agent supported the Debtors' businesses through consensual debtor in possession financing and invested significant time and effort to make the restructuring a success and preserve the value of the Debtors' Estates.

44.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.

d.     **Third-Party Release.**

45.     The Third-Party Release is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests.  Also, the Third-Party Release is:  (a) consensual as to those Releasing Parties that did not specifically and timely object or properly opt out from the Third-Party Release; (b) specific in language and scope; (c) essential to the confirmation of the Plan; (d) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (e) a good faith settlement and compromise of the Claims released by the Third-Party Release; (f) in the best interests of the Debtors and their Estates; (g) fair, equitable,

22

and reasonable; (h) given and made after due notice and opportunity for hearing; and (i) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

46.     Article VIII.D of the Plan describes the Third-Party Release granted by the Releasing Parties.  The Third-Party Release is an integral part of the Plan.  Like the Debtor Release, the Third-Party Release was critical to incentivizing parties to support the Plan and facilitated participation in the chapter 11 process generally, and prevented significant, time-consuming, and value-depleting litigation.   The Third-Party Release was a core negotiation point and was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan.

47.     The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, and such parties were provided appropriate service of the notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan, received appropriate service of the Non-Voting Status Notice and/or the Combined Hearing Notice, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form, returned in advance of the Voting Deadline, would be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties.   Additionally, the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice, and the Combined Hearing Notice.

48.     The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Third-Party Release is specific in language, is integral to and a condition of the compromises and settlements embodied in the Plan, and is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In each case, (i) the Combined Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (national edition) on October 6, 2023 and the *Financial Times* (global edition) on October 9, 2023, (ii) the Ballots sent to all Holders in the Voting Classes, and (iii) the Non-Voting Status Notices sent to each Holder within a Non-Voting Class unambiguously stated that the Plan contains the Third-Party Release.  Further, each Ballot and Non-Voting Status Notice included the Opt Out Form and unambiguous directions for making such an opt-out election.  The Releasing Parties were given due and adequate notice of the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent as to those Releasing Parties that did not elect to opt out of granting the Third-Party Release.

e.      **Exculpation.**

49.     The exculpation described in Article VIII.E of the Plan (the "Exculpation") is appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because it was supported by proper evidence, proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and is appropriately released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Applicable Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into,

24

or filing of, as applicable the Chapter 11 Cases, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents, the New Money Exit Facility Documents (if any), the Takeback Facility Documents (if applicable), the Sale Transaction Documents, the Rights Offering Documents (if applicable), or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Applicable Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to

implement the Plan.  The Exculpation, including its carveout for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction.

50.     No Person or Entity may commence or pursue a Claim or Cause of Action or Covered Claim, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, the Exculpated Parties, the Released Parties, or the Covered Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action or Covered Claim, as applicable, subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action or Covered Claim, as applicable, against any such Debtor, Reorganized Debtor, Post Effective Date Debtor, Exculpated Party, Released Party, or Covered Party, as applicable.  This Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

f.      **Injunction.**

51.     The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation.  The injunction provisions are appropriately tailored to achieve those purposes.

g.      **Preservation of Causes of Action.**

52.     Pursuant to Article IV.B.2.e of the Plan and in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan or pursuant to a Final Order (including the DIP Order), each Reorganized ROW Debtor or Post Effective Date Debtor, as applicable, shall

retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (other than the UCC Settlement Avoidance Actions) of the ROW Debtors or GC U.S. Debtors, as applicable, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized ROW Debtors' or the Post Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Applicable Effective Date, other than the Causes of Action released by the ROW Debtors or GC U.S. Debtors, as applicable, pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan or pursuant to a Final Order (including the DIP Order), which, in each case, shall be deemed released and waived by the ROW Debtors and the Reorganized ROW Debtors or the GC U.S. Debtors and Post Effective Date Debtors, as applicable, as of the Applicable Effective Date. The provisions regarding the preservation of Causes of Action in the Plan, including those contained in the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

### h.   **Lien Release.**

53.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan (the "Lien Release") is essential to the Plan and necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

### (xi)   *Additional Plan Provisions—Section 1123(b)(6).*

54.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xii)   *Cure of Defaults —Section 1123(d).*

55.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with section 365 of the Bankruptcy Code or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract and Unexpired Lease.  The Debtors or the Reorganized Debtors or the Post Effective Date Debtors, as applicable, shall pay the Cure amounts, if any, on such terms as the parties to such Executory Contracts or Unexpired Leases have agreed.  If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or the Post Effective Date Debtors, as applicable, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, such dispute shall be determined in accordance with the terms set forth in Article V.C of the Plan. The assumption of any Executory Contract or Unexpired Lease and the satisfaction of related Cure Claims in full or as otherwise agreed among the Debtors and the counterparty to such Executory Contract or Unexpired Lease, pursuant to the Plan, shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the assignment of, change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time on or prior to the effective date of assumption.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed

Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**Q.    Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

56.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

> a.    is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;
>
> b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and
>
> c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.    Plan Proposed in Good Faith—Section 1129(a)(3).**

57.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the overwhelming support of Holders of Claims and other critical stakeholders for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

58.     The Plan is the product of good-faith, arm's-length negotiations by and among the Debtors, the DIP Lenders, the lenders under the SFA, and the Committee, among others.  The Plan itself and the process leading to its formulation provides independent evidence of the Debtors' and such other parties' good faith, serves the public interest, and assures fair treatment of Holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**S.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

59.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid to Professionals by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.      Directors, Officers, and Insiders—Section 1129(a)(5).**

60.     The process for appointment of the Reorganized Debtors' and the Post Effective Date Debtors' (as applicable) directors and officers proposed to serve after the Applicable Effective Date were disclosed (to the extent known) in the Plan Supplement.  The appointment to, or continuance in, such office of such persons is consistent with the interests of Holders of Claims and Interests and with public policy.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

U.      **No Rate Changes—Section 1129(a)(6).**

61.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

V.      **Best Interest of Creditors—Section 1129(a)(7).**

62.     The liquidation analysis attached as <u>Exhibit D</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, prior to, or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Applicable Effective Date, as such Holder would receive if the Debtors were liquidated, on the Applicable Effective Date, under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

W.      **Acceptance by Certain Classes—Section 1129(a)(8).**

63.     Classes 1, 2, and 5A constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Report, Class 3 has voted to accept the Plan. Holders of Claims and Interests in Classes 6, 7A, and 7B are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.  Pursuant to the Plan, Holders of Claims and Interests in Classes 4, 5B, 8A, 8B, and 9

receive no recovery on account of their Claims and Interests and are deemed to reject the Plan. Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes, and thus satisfies section 1129(b) of the Bankruptcy Code.

**X.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

64.    The treatment of Allowed General Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, and Restructuring Expenses under Article II of the Plan, and Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

65.    On the Applicable Effective Date, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, an amount of Cash equal to the amount of such Allowed General Administrative Claim, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.  Unless a Holder of an Allowed Administrative Claim has objected to Confirmation on grounds of the treatment proposed by the Plan on account of such Claim, such Holder shall be deemed to have consented to receive treatment for such Claim other than as set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**Y.    Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

66.    As evidenced by the Voting Report, the Voting Class, which is Impaired, voted to accept the Plan by the requisite numbers and amounts of Claims.  As such, there is at least one

Voting Class that voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**Z.     Feasibility—Section 1129(a)(11).**

67.     The financial projections attached to the Disclosure Statement as <u>Exhibit E</u> with respect to the Sale Transaction Restructuring and as a supplement to the Disclosure Statement at <u>Exhibit E</u> filed on November 14, 2023 [Docket No. 1045] with respect to the U.S. Equitization Restructuring, and the other evidence supporting Confirmation proffered or adduced by the Debtors at or prior to the Combined Hearing, or in the Confirmation Declarations Filed in connection therewith (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or Post Effective Date Debtors or any successor to the Reorganized Debtors or Post Effective Date Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors and the Post Effective Date Debtors, as applicable, will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**AA.     Payment of Fees—Section 1129(a)(12).**

68.     Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**BB.    Continuation of Employee Benefits—Section 1129(a)(13).**

69.    Except as otherwise specified in the Plan, Article IV.B.2.d of the Plan provides that from and after the Applicable Effective Date, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, if any, shall continue to be paid in accordance with applicable law. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**CC.    Non-Applicability of Certain Sections—1129(a)(14), (15), and (16).**

70.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    "Cram Down" Requirements—Section 1129(b).**

71.    Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim in a Class senior to such Class is receiving more than 100% on account of its Claim. The treatment of Intercompany Interests under the Plan provides for the mere technical preservation of equity as a device to maintain the Debtors' corporate organizational structure and does not constitute a distribution under the Plan on account of such Interests, and therefore such treatment complies with the requirement of section 1129(b)(2)(B)(ii) of the Bankruptcy Code. Accordingly, the Plan is fair and equitable to all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed

Rejecting Classes because similarly situated creditors and interest Holders will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### EE.   Only One Plan—Section 1129(c).

72.     The Plan (including previous versions thereof) is the only chapter 11 plan Filed in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

### FF.   Principal Purpose of the Plan—Section 1129(d).

73.     No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### GG.   Not Small Business Cases—Section 1129(e).

74.     The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

### HH.   Good Faith Solicitation—Section 1125(e).

75.     The Debtors, along with the DIP Lenders, the DIP Agent, the Prepetition Agents and the Prepetition Secured Parties, the Shareholder Lenders, each of such party's current and former Affiliates, and each Related Party of each such party, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the issuance of the New Equity Interests and the New Warrants, the extension of financing under the DIP Facility

and the New Money Exit Facilities and the Takeback Facilities, the issuance of the Rights Offering, and the solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

## II.      Sufficiency of Marketing.

76.      The Debtors and their professionals conducted a fair, open, and adequate postpetition marketing and sale process, as set forth in the Singh Declaration.  The marketing and sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any Entity to make an offer, and the process conducted by the Debtors obtained the highest or best value for the Debtors' Estates.  There were no other transactions available or presented that would have yielded as favorable an economic result for the Debtors' Estates as that provided by the Sale Transaction Restructuring or the U.S. Asset Sales.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective buyers have been afforded a reasonable and fair opportunity to make a higher or otherwise better offer or submit an objection, as the case may be.  The marketing and sale process undertaken by the Debtors and their professionals has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all stakeholders in all respects.  The Debtors have presented credible evidence that they and their professionals explored various strategic alternatives for the Debtors' businesses over an extended period of time and communicated with numerous parties regarding, among other potential transactions, a sale of all or substantially all of the assets of the Debtors.  The Sale

Transaction Restructuring or the U.S. Asset Sales are the result of the Debtors' extensive efforts in seeking to maximize value to the Debtors' estates for the benefit of creditors.

        **JJ.**    **Sound Business Purpose; Sale Highest or Best Offer.**

     77.    Entry into the Purchase Agreements included in the Plan Supplement as <u>Exhibit K</u> and consummation of the Sale Transaction Restructuring or U.S. Asset Sales constitute a valid and sound exercise of the Debtors' business judgment, and such acts are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  This Bankruptcy Court finds that the Debtors have articulated good and sufficient business reasons for the Bankruptcy Court to authorize (a) entry into the Purchase Agreements and consummation of the Sale Transaction Restructuring or the U.S. Asset Sales pursuant to the terms of this Confirmation Order, the Purchase Agreements, and the Plan and (b) the assumption or assumption and assignment of the assumed Executory Contracts and Unexpired Leases as set forth herein, in the Purchase Agreements, the Plan Supplement, and the Plan.

     78.    The Debtors have articulated good and sufficient business reasons justifying the sale of the assets acquired pursuant to Purchase Agreements under the Plan (the "<u>Acquired Assets</u>") to the Purchasers on the terms and conditions set forth in the Purchase Agreements. Additionally:   (a) the total consideration provided by the Purchasers pursuant to the Sale Transaction Restructuring or the U.S. Asset Sales are the highest or best offer available to the Debtors; (b) the Sale Transaction Restructuring or the U.S. Asset Sales present the best opportunity to realize the maximum value for the Debtors' Estates and avoid a decline and devaluation of their assets; (c) there is risk that the value of the Debtors' assets will deteriorate, and the Purchasers may terminate the applicable Purchase Agreement, if such Purchase Agreement is not immediately assumed and the Sale Transaction Restructuring or the U.S. Asset Sales are not consummated promptly;  (d) the Purchase Agreements and the consummation of the Sale Transaction

Restructuring or the U.S. Asset Sales will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative; (e) the Purchasers would not agree to purchase the Acquired Assets if such assets remained subject to higher or better offers after the entry of this Confirmation Order; and (f) the Debtors' assumption of the Purchase Agreements and consummation of the Sale Transaction Restructuring or the U.S. Asset Sales are reasonable and appropriate under the circumstances.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for (x) the consummation of the Sale Transaction Restructuring or the U.S. Asset Sales, (y) a restriction on the Debtors pursuing, considering, or accepting any further offers for the Acquired Assets from and after the entry of this Confirmation Order through the earlier of the consummation of the Sale Transaction Restructuring or the U.S. Asset Sales or termination of the Purchase Agreements in accordance with their terms, and (z) the immediate assumption of the Purchase Agreements.  To maximize the value for the Debtors' Estates and preserve the viability of the operations of the acquired Debtors and to which the Acquired Assets relate, it is essential that the Sale Transaction Restructuring or the U.S. Asset Sales occur within the time constraints set forth in the applicable Purchase Agreement and this Confirmation Order and that the Purchasers be protected against any further offers for the Acquired Assets.

79.    The Debtors' decision to enter into and assume the Purchase Agreements and consummate the Sale Transaction Restructuring or the U.S. Asset Sales constitutes a proper exercise of their fiduciary duties.  Because entry into and assumption of the Purchase Agreements and the consummation of the Sale Transaction Restructuring or the U.S. Asset Sales constitutes the exercise of sound business judgment by the Debtors, none of the Debtors, or their respective current and former members, managers, officers, directors, employees, advisors, professionals, or

agents in their capacity as such, shall incur or have any liability to the Estates or any Holder of a Claim against or Interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Purchase Agreements or the consummation of the sale transaction contemplated thereunder, other than liability arising out of or relating to any act or omission of the Debtors that constitutes a breach of the Purchase Agreements, willful misconduct, or fraud, in each case as determined by a court of competent jurisdiction.

**KK.    Arm's-Length Sale and Purchasers' Good Faith.**

80.    The Purchase Agreements and the Sale Transaction Restructuring or the U.S. Asset Sales were negotiated, proposed, and undertaken by the Debtors and the Purchasers at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Each Purchaser (a) recognizes that the Debtors were free to deal with any other party interested in making an offer, (b) complied with the procedures governing the Debtors' marketing and sale process in all respects, and (c) willingly subjected its bid to the competitive marketing and sale process.  All payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Sale Transaction Restructuring or the U.S. Asset Sales have been disclosed.  As a result of the foregoing, each Purchaser is a "good faith purchaser" and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including in the event this Confirmation Order or any portion thereof is reversed or modified on appeal, and such Purchaser has proceeded in good faith in all respects in connection with the Sale Transaction Restructuring or the U.S. Asset Sales specifically and the Chapter 11 Cases generally.

81.    **Title to the Acquired Assets**.  The applicable Acquired Assets sought to be transferred and/or assigned, as applicable, by the Debtors to the applicable Purchaser pursuant to the relevant Purchase Agreement are property of the Debtors' Estates and good title thereto is

presently vested in the Debtors' Estates within the meaning of section 541(a) of the Bankruptcy Code. Except as provided in the Purchase Agreements, the Debtors are the sole and rightful owners of such Acquired Assets with all rights, title, and interests to the Acquired Assets.

82.     **Authority**. The Debtors have: (a) full power and authority to execute and assume the Purchase Agreements and all other documents contemplated thereby, (b) all of the power and authority necessary to consummate the transactions contemplated by the Purchase Agreements subject to the terms of the Plan and this Confirmation Order, and (c) taken all corporate action necessary to authorize and approve the Purchase Agreements and the immediate assumption thereof, the sale of the Acquired Assets, and all other actions required to be performed by the Debtors in order to consummate the Sale Transaction Restructuring or the U.S. Asset Sales. No consents or approvals, other than those already obtained or expressly provided for in the Purchase Agreements or this Confirmation Order, are required for the Debtors to consummate the Sale Transaction Restructuring or the U.S. Asset Sales.

83.     **No Fraudulent Transfer**. The total consideration provided by the Purchasers pursuant to the Purchase Agreements constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transfer Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law. The Purchase Agreements were not entered into, and the Sale Transaction Restructuring or the U.S. Asset Sales are not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other

applicable law.  Neither the Debtors nor the Purchasers entered into the Purchase Agreements or is consummating the Sale Transaction Restructuring or the U.S. Asset Sales with any fraudulent or otherwise improper purpose.  Neither the Debtors nor the Purchasers engaged in any conduct that would cause or permit the Purchase Agreements or the consummation of the Sale Transaction Restructuring or the U.S. Asset Sales to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, the District of Columbia or any other applicable law.

**LL.     Satisfaction of Confirmation Requirements.**

84.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**MM.     Likelihood of Satisfaction of Conditions Precedent to the Applicable Effective Date.**

85.     Each of the conditions precedent to the ROW Effective Date, as set forth in Article IX.A of the Plan, and the GC U.S. Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**NN.     Disclosure of Facts.**

86.     The Debtors have disclosed all material facts regarding the Plan, including with respect to issuance of the New Equity Interests and the New Warrants, execution of the New Money Exit Facilities, the Takeback Facilities, and the New Organizational Documents, the issuance of the Rights Offering, and the fact that each applicable Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations, as set forth in the Plan.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

87.    **Disclosure Statement.**  The Disclosure Statement, the Solicitation Packages, and the Solicitation and Voting Procedures are approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

88.    **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

89.    This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Applicable Effective Date in accordance with and as permitted by the Plan, subject to the consent rights set forth therein.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that if there is any direct conflict between the terms of the Plan (including the Plan Supplement) and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

90.    **Objections Overruled.**  All objections, statements, and reservations of rights pertaining to approval of the Disclosure Statement or Confirmation that have not been withdrawn, waived, or settled are hereby OVERRULED and DENIED on the merits (except in connection with unresolved objections to the extent solely related to cure amounts arising under assumed executory contracts).

91.    All objections to the Disclosure Statement or Confirmation not filed and served prior to the deadline for filing objections to the Disclosure Statement and the Plan set forth in the

Combined Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

92.     **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

93.     **Implementation.**  The Debtors (with the consent of the Required Lenders), the Reorganized Debtors and the Post Effective Date Debtors, as applicable, are authorized to take all actions necessary at any time, appropriate or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements or other documents created or executed in connection with the Plan, the Restructuring Transactions, including the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and/or the U.S. Asset Sales.  All documents necessary to implement the Plan and the transactions contemplated thereby (including the Restructuring Transactions, the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and the U.S. Asset Sales), including those contained in the Plan Supplement, and all other relevant and necessary or desirable documents (including the New Money Exit Facility Documents, the Takeback Facility Documents, and the New Organizational Documents) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign law.  Without further order or authorization of this Bankruptcy Court, the Debtors (with the consent of the Required Lenders), the Reorganized Debtors, and the Post Effective Date Debtors (as applicable) are authorized and empowered to make any and all modifications to any and all documents related to implementation of the Plan, the Restructuring Transactions, the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and/or the

U.S. Asset Sales, subject to any restrictions on modifications as set forth in the Plan (including in Article X.A), that are necessary in connection with the implementation of the Plan, the Restructuring Transactions, the U.S. Equitization Restructuring, the Sale Transaction Restructuring, and/or the U.S. Asset Sales.

94.     **No Action Required.**  Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of any of the Debtors is required to authorize any of the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and/or the U.S. Asset Sales and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the New Money Exit Facilities, the Takeback Facilities, the New Organizational Documents, and the appointment and election of the members of the new board of directors and officers of the Reorganized Debtors and the Post Effective Date Debtors (to the extent known), as applicable.

95.     **Binding Effect.**  Subject to Article IX.A and Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the date of and after entry of this Confirmation Order (but subject to the occurrence of the Applicable Effective Date), the terms of the Plan and the Restructuring Transactions (and any documents related or ancillary thereto, including any liens and security interests and, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and not subject to avoidance or other challenge, legal or otherwise, and deemed binding upon the

Debtors, the Reorganized Debtors, the Post Effective Date Debtors, any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

96.     **Incorporation by Reference.**   The terms and provisions of the Plan are incorporated by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, and all other relevant and necessary documents shall, on and after the Applicable Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates and their creditors, and their respective successors and assigns, non-debtor affiliates, any affected third parties, all Holders of equity interests in the Debtors, all Holders of any Claims, whether known or unknown, against the Debtors, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

97.     **Vesting of Assets in the Reorganized Debtors or Post Effective Date Debtors.** Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Plan Supplement and the Restructuring Transactions Memorandum), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Applicable Effective Date, all property in each Estate, all Causes of Action

retained by the Debtors in the Schedule of Retained Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor or Post Effective Date Debtor, as applicable, free and clear of all Liens, Claims, charges, other encumbrances, and interests.  On and after the Applicable Effective Date, except as otherwise provided in the Plan, including Article VIII thereof, each Reorganized Debtor and Post Effective Date Debtor, as applicable, may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.  After the Applicable Effective Date, a certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any federal, state, province, county, or local authority, whether foreign or domestic, to act to effectuate the transfer of all property in each Estate to the Reorganized Debtors or the Post Effective Date Debtors, as applicable, vesting the Reorganized Debtors and the Post Effective Date Debtors, as applicable, with all right, title, and interest of the Debtors to the property in each Estate, free and clear of all Liens, Claims, Interests, and other encumbrances of record.

98.     **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions contemplated by or in connection with the Sale Transactions, the New Money Exit Facilities, the Takeback Facilities, and the New Organizational Documents are hereby effective and authorized to be taken on, prior to, or after the Applicable Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or

further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors or the Post Effective Date Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

99.  **Release, Exculpation, Discharge, and Injunction Provisions.**  All release, exculpation, discharge, and injunction provisions embodied in the Plan, including those contained in Article VIII.A–F of the Plan are hereby approved and authorized in their entirety and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by this Bankruptcy Court.

100.  **Executory Contracts and Unexpired Leases.**  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V and Article IV.B.2.d of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption, assumption and assignment or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

101.  For the avoidance of doubt, on the GC U.S. Effective Date, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Reorganized GC U.S. Debtor or Post Effective Date Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (c) are the subject of a motion to assume Filed on or before the Confirmation Date; (d) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction including the Sale Transaction Restructuring or the U.S. Asset Sales (e) are a contract, instrument,

release, indenture, or other agreement or document entered into in connection with the Plan; or (f) are a D&O Liability Insurance Policy.

102.    For the avoidance of doubt, unless otherwise provided in the Plan, and subject to Article V thereof, the Reorganized Debtors or Post Effective Date Debtors, as applicable, shall: (a) assume all employment agreements, indemnification agreements, or other agreements with current and former members of any Governing Body, employees, officers, directors, or managers of the GC U.S. Debtors or the ROW Debtors (other than agreements with the Excluded Parties), as applicable; or (b) enter into new agreements with such persons on terms and conditions acceptable to the Reorganized ROW Debtors or the Post Effective Date Debtors, as applicable, the Required Lenders, and such person.

103.    Unless a party to an Executory Contract or Unexpired Lease has objected no later than the objection deadline specified in the applicable Cure notice to the Cure amounts and any assumption or assumption and assignment of such Executory Contract or Unexpired Lease identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, shall pay such Cure amounts in accordance with the terms of the Plan or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract or Unexpired Lease and the assumption or assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including relating to such assumption and assignment, defaults of provisions relating to any anti-assignment provisions or restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date

of assumption or assumption and assignment.  Any disputed Cure amounts shall be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or otherwise may not be terminated on account of such assumption or assumption and assignment or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Applicable Effective Date.  Each Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtors or Post Effective Date Debtor in accordance with its terms, except as modified by the provisions of the Plan, this Confirmation Order, or any order of this Bankruptcy Court authorizing and providing for its assumption.

104.    The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.  This Confirmation Order shall constitute a Final Order approving the assumptions, assumptions and assignments, and rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan and the Assumed Executory Contracts and Unexpired Leases Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

105.    **Plan Supplement**.  The Debtors reserve the right to alter, amend, modify, or supplement any document in the Plan Supplement in accordance with the Plan, at any time before the Applicable Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.  Notwithstanding anything in this Order, the documents

included in the Plan Supplement, whether filed by the Debtors prior to or after the Combined Hearing, remain subject in all respects to the consent, approval and similar rights contained in the Plan.

106.   **Restructuring Transactions**.   Subject to the terms of the Plan, the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order (but subject to the occurrence of the Applicable Effective Date), to enter into and take all steps desirable or necessary to effectuate the Restructuring Transactions, including the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and the U.S. Asset Sales, the entry into and consummation of the transactions contemplated by the Plan, the Plan Supplement, and the New Organizational Documents, as the same may be modified in accordance with the Plan from time to time prior to the Applicable Effective Date (including, without limitation, any restructuring transaction steps set forth in the Restructuring Transactions Memorandum or other exhibits to or referred to in the Plan Supplement), and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, in each case as and to the extent provided in the Plan.   Any transfers of assets, Claims, or equity interests effected or any obligations incurred through the Restructuring Transactions as contemplated by and in accordance with the Plan (including the deemed contributions of Claims or the transfers of assets of and/or Claims and Liens against a Debtor or Reorganized Debtor or its property contemplated in the Restructuring Transactions Memorandum) are hereby approved and shall be deemed not to constitute a fraudulent conveyance, fraudulent transfer, or undervalue transaction or any similar avoidable or voidable transaction and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes

whatsoever and shall not constitute an unfair preference or a preferential transfer, fraudulent conveyance, or any similar avoidable or voidable transaction under the Bankruptcy Code or any applicable law, whether federal, state, or foreign law.  Except as otherwise provided in the Plan, each Reorganized Debtor or Post Effective Date Debtor, as applicable, shall continue to exist after the Applicable Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.  The Debtors or the Reorganized Debtors or the Post Effective Date Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order, without the need to seek any third-party consents, corporate approvals, or further approvals of this Bankruptcy Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Restructuring Transactions Memorandum and consistent with the Plan, including the transfers of assets of and/or Claims and Liens against a Debtor or Reorganized Debtor or its property.

107.    To the extent necessary, the Debtors or the Reorganized Debtors or the Post Effective Date Debtors, as the case may be, and their respective directors, officers, members, agents, attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to take any and all actions necessary to secure recognition of the Plan in the foreign jurisdictions where the Debtors conduct business.  All Holders of Interests against the Debtors were given a full and fair opportunity to participate in the Chapter 11 Cases and raise any arguments against or objections to Confirmation, and such objections are hereby overruled.

108.    **Sale Transaction Restructuring or U.S. Asset Sales.**  The Purchase Agreements, all other ancillary documents, and all of the terms and conditions thereof, are hereby approved,

pursuant to sections 105, 363, 364, 554, 1123, and 1141 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014, each as applicable.  Entry of this Confirmation Order shall authorize the Debtors, the Purchasers, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, to undertake the transactions contemplated by the Purchase Agreements, as applicable, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code, including authorizing entry into Purchase Agreements or any other ancillary documents that have not yet been entered into as of the date hereof.  Further, entry of this Confirmation Order shall constitute approval of the Sale Transaction Restructuring or the U.S. Asset Sales, as applicable, and the Purchase Agreements.  The Debtors are hereby authorized, subject to the consent of the Required Lenders, to use sale proceeds received prior to the Applicable Effective Date in accordance with the terms of the Plan without any further notice or order of the Bankruptcy Court.

109.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction Restructuring or the U.S. Asset Sales pursuant to and in accordance with the terms and conditions of the Purchase Agreements, (b) close the sale transactions as contemplated in the Purchase Agreements in connection with either the Sale Transaction Restructuring or the U.S. Asset Sales, and (c) execute and deliver, perform under, consummate, implement, and fully close the Purchase Agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreements, the sale transaction(s), and the Sale Transaction Restructuring or the U.S. Asset Sales.

110.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), 1123, and 1141 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with

the terms of the Purchase Agreements and such transfer shall constitute a legal, valid, binding, and effective sale of the Acquired Assets and shall vest each Purchaser with title to the respective Acquired Assets subject to the applicable Purchase Agreement, and to the fullest extent permitted by sections 363(f) and 1123(b)(4) of the Bankruptcy Code, the Acquired Assets shall be free and clear of all Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the applicable Purchase Agreement), with all such Liens, Claims, or other interests to attach to the cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the applicable sale transaction, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

111.   Except as otherwise permitted by the Purchase Agreements, the Plan, or this Confirmation Order, all persons and entities holding Claims against or other interests in the Debtors, or any Liens against the Acquired Assets arising prior to the Applicable Effective Date, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims, interests, or Liens against the Purchasers, any of the foregoing's affiliates, successors, or assigns, their property or the Acquired Assets.

112.   The Purchasers have acted in good faith and are entitled to the protections afforded under section 363(m) of the Bankruptcy Code.  No evidence has been presented to this Bankruptcy Court indicating that any sale transaction effectuated pursuant to the Plan may be avoided pursuant to section 363(n) of the Bankruptcy Code.

113.   Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Purchase Agreements.  A certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.  The Debtors and the Purchasers are each authorized to file a copy of this Confirmation Order, which, upon filing, shall be conclusive evidence of the release and termination of any Claim, Lien, or interest that is terminated under the terms of the Plan.

114.    This Confirmation Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreements.

115.    All persons and entities that are presently, or on the applicable Closing may be, in possession of some or all of the Acquired Assets pursuant to the applicable Purchase Agreements are hereby directed to surrender possession of the Acquired Assets to the applicable Purchaser unless such person or entity was a good faith, bona fide purchaser of the Acquired Assets without notice of the Debtors' rights in such property.  Subject to the terms, conditions, and provisions of this Confirmation Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell

and/or transfer the Acquired Assets to the applicable Purchaser in accordance with the terms of the applicable Purchase Agreement and Confirmation Order.

116.     The Purchase Agreements and any related documents or other instruments may be modified, amended, or supplemented by the parties thereto in non-material ways in accordance with the terms thereof, without further order of the Bankruptcy Court.  Any material changes require the approval of this Bankruptcy Court.

117.     Additionally, prior to the Applicable Effective Date, the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, may take all actions as may be necessary or appropriate to effectuate the Sale Transaction Restructuring or the U.S. Asset Sales that are intended to be implemented prior to the Applicable Effective Date in accordance with the Plan, the Purchase Agreements, or any other documents in connection therewith.  As needed and prior to the Applicable Effective Date, the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, are authorized (a) to enter into, perform under, and File in the Plan Supplement subsequent Purchase Agreements and (b) to take all actions as may be necessary or appropriate to close and consummate the sale transactions contemplated by such Purchase Agreements, in each case without further application to or order of the Bankruptcy Court.

118.     **Subordination.**  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors and the Post Effective Date Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

119.     **Release of Liens.**  Except as otherwise provided in the Plan, the Plan Sponsor Agreement (if applicable), the Confirmation Order, the Purchase Agreement, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on

the Applicable Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Applicable Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors or Post Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors or Post Effective Date Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

120.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Applicable Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors that are necessary or desirable to record or effectuate the cancellation

and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors or Post Effective Date Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

121.     On the Applicable Effective Date, concurrently with the consummation of the Sale Transaction Restructuring or the U.S. Asset Sales through the Plan and except as set forth in the Purchase Agreement, the assets sold in the Sale Transaction Restructuring or the U.S. Asset Sales shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, interests or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of this Confirmation Order, the Plan, and the relevant Purchase Agreement, as applicable.

122.     **New Money Exit Facilities and Takeback Facilities.**  On the Applicable Effective Date, the applicable Reorganized Debtors and Post Effective Date Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, shall, subject to the terms and conditions provided for in the various documents and agreements associated therewith enter into the New Money Exit Facilities and the Takeback Facilities.  To the extent applicable, entry of this Confirmation Order shall be deemed (a) approval of the New Money Exit Facilities and the Takeback Facilities (including the transactions, payments and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the applicable Debtors or the Reorganized Debtors or the Post Effective Date Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, as applicable, in connection therewith), to the extent not approved by

the Bankruptcy Court previously, and (b) authorization for the applicable Debtors or the Reorganized Debtors or the Post Effective Date Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain the New Money Exit Facilities and the Takeback Facilities, grant the Liens provided for and contemplated in connection with each of the New Money Exit Facilities and the Takeback Facilities, and incur and pay any and all fees and expenses in connection therewith, and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or the Reorganized Debtors or the Post Effective Date Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, as applicable, may deem to be necessary to consummate the New Money Exit Facilities and the Takeback Facilities.

123.    As of the Applicable Effective Date, each of the New Money Exit Facilities and the Takeback Facilities shall constitute legal, valid, binding, and authorized obligations of the applicable Reorganized Debtors and Post Effective Date Debtors and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, in each case enforceable in accordance with their terms.  Such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination for any purposes whatsoever under applicable federal, state, or foreign law, the Plan or this Confirmation Order, and upon the creation, granting or continuation of Liens in accordance with the Plan, the New Money Exit

Facility Documents and the Takeback Facility Documents, and other agreements or documentation related thereto, such Liens shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in the Exit Facility Documents or Takeback Facility Documents, as applicable, without the need for any further action on the part of the applicable Agent under the New Money Exit Facilities and the Takeback Facilities.  Each of the Agents or holder(s) of Liens under the New Money Exit Facilities and the Takeback Facilities is authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests.  The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under each of the New Money Exit Facilities and the Takeback Facilities have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination for any purposes whatsoever under applicable federal, state, or foreign law, the Plan, or this Confirmation Order, and shall not constitute unfair preferences, preferential transfers, fraudulent transfers or fraudulent conveyances, or any similar avoidable or voidable transactions under the Bankruptcy Code or any applicable federal, state, or foreign law, and the priorities of such Liens and security interests shall be as set forth in the New Money Exit Facility Documents or the Takeback Facility Documents, respectively.  The Reorganized Debtors and the Post Effective Date Debtors, as applicable, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post Effective Date Debtors, including in connection with the Restructuring Transactions, and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings

and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or foreign law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

124. **New Organizational Documents.** The terms of the New Organizational Documents (or the term sheets thereof), as may be amended, restated, amended and restated, supplemented or modified on or before the Applicable Effective Date consistent with the Plan, are approved in all respects. To the extent any New Organizational Document is not attached to the Plan Supplement as of the entry of this Confirmation Order, such New Organizational Document is approved to the extent it is consistent with this Confirmation Order, the Plan, and the Plan Supplement (including any applicable consent rights set forth therein). The obligations of the applicable Reorganized Debtors and Post Effective Date Debtors related thereto will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state, federal, or foreign law. To the extent applicable, entry of this Confirmation Order shall be deemed approval of the New Organizational Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the applicable Debtors or the Reorganized Debtors or the Post Effective Date Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized Debtors or Post

Effective Date Debtors, including in connection with the Restructuring Transactions, as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and on the Applicable Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of any of the Reorganized Debtors or Post Effective Date Debtors, as applicable, each Reorganized Debtor or Post Effective Date Debtor, as applicable, will be and is authorized to enter into the New Organizational Documents and all related documents to which such Reorganized Debtor or Post Effective Date Debtor is contemplated to be a party on the Applicable Effective Date.  In addition, on the Applicable Effective Date, without any further action by the Bankruptcy Court or the directors, officers or equity holders of any of the Reorganized Debtors or Post Effective Date Debtors, as applicable, each applicable Reorganized Debtor and Post Effective Date Debtor will be and is authorized to:  (a) execute, deliver, file, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the New Organizational Documents; (b) issue the New Equity Interests; (c) perform all of its obligations under the New Organizational Documents; and (d) take all such other actions as any of the responsible officers of such Reorganized Debtor or Post Effective Date Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the New Organizational Documents.  Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Applicable Effective Date, any disputes arising under the New Organizational Documents will be governed by the jurisdictional provisions therein.  For the avoidance of doubt, any claimant's acceptance of the New Equity Interests shall be deemed as its agreement to be bound by the New Organizational Documents without the need for execution by any party other than the applicable Reorganized Debtor(s) or Post Effective Date Debtor(s).

125.     **Texas Taxing Authorities.**   Notwithstanding anything to the contrary in this Confirmation Order or the Plan, any Allowed Secured Claims on account of the 2023 ad valorem taxes owed to the Texas Taxing Authorities[4] (the "Texas Tax Claims") shall be paid when due in the ordinary course of business.  Any valid, perfected, non-avoidable, and enforceable tax liens of the Texas Taxing Authorities (the "Texas Tax Liens") for tax year 2023 shall be retained, in their prepetition priority, to the extent the Texas Taxing Authorities are entitled to such Liens, in accordance with applicable non-bankruptcy law against the applicable property of the Debtors until such time as the Texas Tax Claims are paid in full.  If the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, fail to timely pay the Texas Tax Claims in the ordinary course, interest as allowed under the Texas Property Tax Code will accrue and be payable until the Texas Tax Claims are paid in full.  In the event of a Sale Transaction Restructuring or U.S. Asset Sales, any valid, perfected, non-avoidable, and enforceable tax liens of the Texas Taxing Authorities for tax year 2024 shall be retained to the extent the Texas Taxing Authorities are entitled to such Liens, in accordance with applicable non-bankruptcy law against the applicable property until such time as any outstanding 2024 ad valorem taxes are paid in full to the Texas Taxing Authorities.  The Claims and Liens of the Texas Taxing Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity, extent, or amount of such Liens.  In the event the Reorganized Debtors or Post Effective Date Debtors, as applicable, sell, convey, or transfer any property which is the collateral of the Texas Taxing Authorities, the Reorganized Debtors or Post Effective Date Debtors shall remit such sales proceeds first to the Texas Taxing Authorities to be applied to the Texas Taxing Authorities' tax debt incident to any such property sold, conveyed, or transferred.  The Texas Taxing Authorities'

---

[4]     "Texas Taxing Authorities" means Denton County, Dallas County, and Harris County.

lien priority with respect to any valid, perfected, non-avoidable, and enforceable Texas Tax Liens shall not be primed or subordinated by any Exit Financing approved by the Bankruptcy Court in conjunction with the Confirmation of this Plan or otherwise.  The Texas Taxing Authorities may amend any timely filed Proof of Claim on account of the Texas Tax Claims after the Effective Date to reflect the certified tax amounts for tax year 2023 without having to receive prior authorization to do so; *provided* that the rights and defenses of the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, with respect to such Proofs of Claim are preserved.  All rights and defenses of the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors under non-bankruptcy law and the Bankruptcy Code are reserved and preserved with respect to the Texas Tax Claims.

126.    **Broward County, Florida.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Broward County, Florida (the "Tax Collector"), shall retain any valid, perfected, and unavoidable statutory Liens, if any (the "Tax Liens"), held for tangible personal property taxes to the extent entitled to such Liens in accordance with applicable law.  In addition, the Tax Collector shall be entitled to enforce its Tax Liens, if any, to collect any unpaid taxes in accordance with applicable state law to the extent such taxes are not paid by the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, under applicable state law, subject to the applicable provisions of the Bankruptcy Code.  In the event of: (a) a U.S. Equitization Restructuring, the Debtors or the Reorganized GC U.S. Debtors, as applicable, shall retain sufficient taxable, tangible, personal property within the geographic boundaries of Broward County to cover the amount of any tangible personal property taxes outstanding; or (b) a Sale Transaction Restructuring or U.S. Asset Sales, the amount of any tangible personal property taxes outstanding shall be paid in full in Cash upon the closing of the sale of the Acquired Assets located

within the geographic boundaries of Broward County.  Nothing in this Confirmation Order is, or shall be deemed, an admission as to the validity of any Lien or Claim asserted by the Tax Collector, and all parties' rights to object to the priority, validity, amount, and extent of the Claims and Liens asserted by the Tax Collector are fully preserved.  In addition, and notwithstanding anything contained in the Plan and this Confirmation Order to the contrary, any 2024 tangible personal property taxes shall become payable in accordance with Florida Law, and the Tax Collector shall not be required to File Administrative Claims for the 2024 tangible personal property taxes.

127.   **Zurich.**  Notwithstanding anything to the contrary in the Disclosure Statement, the Plan (including without limitation and for the avoidance of doubt Articles IV.I, V.E, VI.I, VI.J, and VIII.F of the Plan), the Plan Supplement, the Confirmation Order, the Plan Support Agreement, any agreement or order related to post-petition or exit financing, any bar date notice or claim objection, any Cure Notice or any other notice of any Cure Claim, any Sale Order, any Purchase Agreement, any document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction, grants an injunction, discharge or release, or requires a party to opt out of any releases):

    a.    nothing alters, modifies or otherwise amends the terms and conditions of any of the insurance policies issued by Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and/or any of their affiliates and predecessors (collectively, "Zurich") to, or that provide coverage to, any of the Debtors (or any of their predecessors) at any time and all agreements, documents or instruments related thereto (collectively, the "Zurich Insurance Program") (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature and priority of any and all letters of credit, trusts, cash collateral, credits, return premium, unearned premium and any and all other collateral and/or security (including any proceeds of any of the foregoing) provided at any time by or on behalf of the Debtors to Zurich (collectively, the "Collateral")), except that on and after the Effective Date, the Reorganized Debtors and, as applicable, the Post Effective Date Debtors

jointly and severally shall assume the Zurich Insurance Program in its entirety pursuant to sections 105 and 365 of the Bankruptcy Code;

b.      nothing therein releases or discharges Zurich's security interests and Liens on the Collateral;

c.      nothing therein releases or discharges any of the claims of Zurich (including any Cure Claim) arising under the Zurich Insurance Program (regardless of whether all or any part of such claims are liquidated before or after the commencement of the Chapter 11 Cases, confirmation of the Plan and/or any other chapter 11 plan, or conversion of one or more of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) (collectively, the "Zurich Claims") and, further, the Zurich Claims are actual and necessary expenses of the Debtors' estates (or the Reorganized Debtors and the Post Effective Date Debtors, as applicable) and shall be paid in full in the ordinary course of business, whether as an Allowed Administrative Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts are or shall become liquidated, due or paid, without the need or requirement for Zurich to file or serve a request, motion, or application for payment of or proof of any Proof of Claim, Cure Claim (or any objection to Cure amounts and/or Cure Notices), Administrative Claim, or any notice of recoupment (and further and for the avoidance of doubt, any Claims Bar Date and/or Administrative Claims Bar Date shall not be applicable to Zurich);

d.      nothing in the second paragraph of Article VIII.F of the Plan applies or shall be deemed to apply to any claims covered by or asserted under the Zurich Insurance Program, which claims may proceed in the appropriate judicial or administrative forum in accordance with the terms and conditions of the Zurich Insurance Program and/or applicable non-bankruptcy law (regardless of whether such claims arise before or after the Petition Date), provided that the automatic stay of section 362(a) of the Bankruptcy Code and/or the injunctions set forth in Article VIII of the Plan, each if and to the extent applicable, has been lifted with respect to such claims under the Plan or by or through any order entered by the Bankruptcy Court, and nothing shall impact, affect, impair, waive, release, or expand the coverage provided for any claims covered by or asserted under the Zurich Insurance Program and/or Zurich's rights and defenses relating to or in connection with such claims under the terms and conditions of the Zurich Insurance Program and/or applicable non-bankruptcy law;

e.      the Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, shall not sell, assign, or otherwise transfer the Zurich Insurance Program other than in accordance with the terms of the Zurich Insurance Program and except with the express written permission of Zurich; and

        f.        the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Zurich under applicable non-bankruptcy law to proceed with their claims; (II) Zurich to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) all workers' compensation or direct action claims covered by the Zurich Insurance Program, (B) all claims where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Zurich to draw against any or all of the Collateral provided by or on behalf of the Debtors (or the Reorganized Debtors and the Post Effective Date Debtors, as applicable) to Zurich at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors and the Post Effective Date Debtors, as applicable) to Zurich and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors and the Post Effective Date Debtors, as applicable) under the applicable Zurich Insurance Program, in such order as Zurich may determine; provided that nothing herein shall permit Zurich to take any action that it would not have been permitted to take with respect to any workers' compensation or direct action claims prior to the Petition Date or prevent any Debtor from taking any action it would have been permitted to take prior to the Petition Date; and (IV) subject to the terms of the Zurich Insurance Program and/or applicable non-bankruptcy law, Zurich to (i) cancel any policies under the Zurich Insurance Program, and (ii) take other actions relating to the Zurich Insurance Program (including setoff), to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Zurich Insurance Program.

128.    **Department of Justice.**  Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document:

        a.       nothing shall discharge, waive, release, preclude, enjoin, or impair (i) any liability to any federal Governmental Unit that is not a Claim; (ii) any Claim of any federal Governmental Unit arising on or after the Effective Date; (iii) the exercise of any federal Governmental Unit's police and regulatory powers; (iv) any police or regulatory liability of any entity to any federal Governmental Unit, including, without limitation, any police or regulatory liability that such entity would be subject to as the post-Effective Date owner or operator of property; (v) any Claim of or liability to a federal Governmental Unit on the part of any Person or Entity other than the

66

Debtors; or (vi) any obligations preserved or established in any order entered by the Bankruptcy Court in any Debtor's case;

b.   nothing shall enjoin or otherwise bar any federal Governmental Unit from asserting or enforcing any liability described in the preceding clause outside of this Bankruptcy Court; and

c.   except as otherwise ordered by the Bankruptcy Court, nothing shall authorize the sale, assignment, or transfer of any federal (i) contract, (ii) purchase order, (iii) agreement, (iv) lease, (v) grant, (vi) grant funds, (vii) application, (viii) registration, (ix) identifier, (x) license, (xi) permit, (xii) covenant, (xiii) guaranty, (xiv) indemnification, or (xv) other authorization or approval without compliance with all applicable legal requirements under non-bankruptcy law governing such transaction.

129.   Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, for the avoidance of doubt, no federal Governmental Unit shall be subject to any of the releases or exculpation contained in Plan Article VIII.C, D, and E, and every federal Governmental Unit's claims and defenses of setoff or recoupment, if any, are expressly preserved, as are the Debtors' defenses and rights thereto.

130.   Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, nothing shall set any Cure amount with respect to any assumption of any Medicare or Medicaid provider agreements, TRICARE participation agreements, Uniformed Services Family Health Plan agreements, or any other TRICARE agreements, and the Debtors, Post Effective Date Debtors, or Reorganized Debtors, as applicable, shall pay any overpayments, civil money penalties, or other liabilities owed to any federal Governmental Unit in relation to those agreements in the ordinary course in accordance with applicable non-bankruptcy law, unless the terms of repayment have been specifically modified by agreement of the parties.

131.   Notwithstanding anything in the Disclosure Statement, Plan, Plan Supplement, this Confirmation Order, or any other Plan document, to the extent any Medicare or Medicaid provider

agreement, or any other agreement or contract with any federal Governmental Unit (including, only as applicable, TRICARE agreements or Uniformed Services Family Health Plan agreements) are neither assumed nor rejected as of the Effective Date, nothing shall discharge, waive, release, preclude, or enjoin any Claim, debt, or liability owed to the federal Governmental Unit under such agreements or contracts; *provided* that the Debtors retain all rights, counterclaims, and defenses with respect thereto including seeking the Bankruptcy Court's determination regarding the allowability and priority of such Claim, debt, or liability.

132.     **Cigna.**  Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or any notice related thereto:

a.      the Cigna Payor Contracts (as defined in the *Objection of Cigna to Notice of Filing of First Amended Plan Supplement and Notice of Potential Assumption and Assignment of Certain Contracts or Leases* [Docket No. 1136] (the "Cigna Objection")) and the contracts listed on Exhibit C to the Second Amended Plan Supplement that reference "Cigna," all only to the extent that they are active contracts between a Cigna entity and one of the debtors (collectively, the "Assumed Cigna Payor Contracts") shall be assumed under the Plan;

b.      each Cigna Payor Contract listed on the Schedule of Assigned Contracts attached as Exhibit A to the *Notice of Potential Assumption and Assignment of Certain Contracts or Leases* [Docket No. 1046] (collectively, the "Assigned Cigna Payor Contracts") shall be assigned to the applicable Winning Bidder;

c.      in lieu of Cure, all obligations due and unpaid under each Assigned Cigna Payor Contract accruing prior to the respective Sale Closing Date shall pass through to the applicable Winning Bidder and survive assumption and assignment, and nothing in this Confirmation Order or section 365 of the Bankruptcy Code shall affect such obligations;

d.      in lieu of Cure, all obligations due and unpaid under the Assumed Cigna Payor Contracts that are not Assigned Cigna Payor Contracts (the "Non-Assigned Cigna Payor Contracts") accruing prior to the Effective Date shall be unimpaired and reinstated, and nothing in this Confirmation Order or section 365 of the Bankruptcy Code shall affect such obligations;

e.     any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under such Non-Assigned Cigna Payor Contracts and applicable law in favor of the Debtors, Reorganized Debtors, Post Effective Date Debtors, as applicable, and Cigna (as defined in the Cigna Objection) are preserved and unimpaired; and

f.     the Non-Assigned Cigna Payor Contracts may be subsequently assigned by further order of this Bankruptcy Court, subject to notice and an opportunity for Cigna to be heard thereon.

This fully resolves the Cigna Objection.

133.    **Broward Health.**  For the avoidance of doubt, each and every Executory Contract or Unexpired Lease with North Broward Hospital District ("Broward Health") that is assumed in these Chapter 11 Cases will be assumed pursuant to section 365 of the Bankruptcy Code in accordance with such Executory Contract's or Unexpired Lease's existing terms, so that any and all of Broward Health's rights under such Executory Contract or Unexpired Lease (including without limitation, any and all contractual and legal rights, defenses, claims, and counterclaims) are preserved, subject to section 365 of the Bankruptcy Code.  Notwithstanding that the proposed Cure amount for each Executory Contract and Unexpired Lease of Broward Health has been listed in the Plan Supplement as "-," in the event of assumption or assumption and assignment, to the extent there is any Cure due and owing to Broward Health as of the date of assumption, such Cure shall be determined and paid pursuant to section 365(b) of the Bankruptcy Code in accordance with such Executory Contract's or Unexpired Lease's existing terms without the need for Broward Health to object to any proposed Cure amount.  To the extent that any other provision in this Confirmation Order, Plan, Plan Supplement, or any notice or other paper Filed in these Chapter 11 Cases could be read in a manner contrary to this provision, this provision controls.

134.    **Nationwide.**  Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, nothing in the Plan, the Plan Supplement, or this

Confirmation Order shall discharge, cancel, extinguish, alter, impair, modify, or otherwise prevent Nationwide Health Properties Inc. ("Nationwide") from, to the extent they exist, asserting any or all of Nationwide's defenses, arguments, claims, or rights relating to (a) any proposed assumption, assumption and assignment, or rejection by GenesisCare USA, Inc. ("GC USA") or Maryland Radiation Therapy Management Services, LLC ("Maryland Radiation") of the Master Lease dated as of September 30, 2008 by and between Nationwide, on the one hand, and GC USA, Maryland Radiation, and certain of their non-debtor affiliates (the "Master Lease"), on the other hand, or (b) in the event of an assumption or an assumption and assignment of the Master Lease, any proposed Cure on account of such assumption or assumption and assignment; *provided* that Nationwide shall be required to assert such rights, interests, defenses, or arguments in a written objection filed with this Bankruptcy Court on or prior to the date that is fourteen (14) calendar days following filing and service by the Debtors of notice to Nationwide of such proposed assumption, assumption and assignment, or rejection ("Nationwide Notice").  If Nationwide timely files such a written objection, the Master Lease shall not be deemed to be assumed, assumed and assigned, or rejected, as applicable—unless Nationwide and the Debtors, the Reorganized Debtors, or Post Effective Date Debtors, as applicable, otherwise agree in writing—until entry of an order by this Bankruptcy Court resolving the dispute and approving the assumption, assumption and assignment, or rejection, as applicable, of the Master Lease.  For the avoidance of doubt, Nationwide's objection deadline with respect to the agreements listed on the Second Amended Plan Supplement that are proposed to be assumed shall be December 8, 2023, at 5:00 PM (prevailing Central Time).

135.    **Ad Hoc Group of Florida Employees.**  Subject to the following, the employment agreements (the "FL Employment Agreements") with certain of the ad hoc group of thirty-two

current and former employees (the "Florida Employees") listed in the Plan Supplement Filed as of the Combined Hearing are hereby assumed.[5]  Unless the applicable Florida Employees and the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, agree otherwise by written stipulation filed with the Bankruptcy Court, the Bankruptcy Court shall set a hearing, on no less than fourteen (14) days' notice by any party, to determine the Cure to be paid on account of each assumed FL Employment Agreement.  The Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, shall be responsible for paying the Cure determined by separate order of the Bankruptcy Court, after notice and a hearing consistent with this paragraph. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, cancel, extinguish, alter, impair, modify, or otherwise prevent the Florida Employees from, to the extent they exist, asserting any or all of the Florida Employees' defenses, arguments, or rights relating to any proposed post-Effective Date assignment by any of the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, of any of the FL Employment Agreements.  For the avoidance of doubt, the Florida Employees have timely opted out of the Third-Party Release under Article VIII.D of the Plan and, thus, are excluded from the definition of Releasing Parties.

136.    **Ad Hoc Group of Atlantic Urology Clinics, LLC Employees.**  Subject to the following, the employment agreements (the "AUC Employment Agreements") with the AUC Employees listed in the Plan Supplement Filed as of the Combined Hearing are hereby assumed.[6]

---

[5]    A complete list of the Florida Employees is included in Exhibit A of the *Ad Group of Florida Employees' Limited Objection and Reservation of Rights With Respect to the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1119].

[6]    A complete list of the AUC Employees is included in Exhibit A of the *Ad Group of AUC Employees' Limited Objection and Reservation of Rights With Respect to the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1120].

Unless the applicable AUC Employees and the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, agree otherwise by written stipulation filed with the Bankruptcy Court, the Bankruptcy Court shall set a hearing, on no less than fourteen (14) days' notice by any party, to determine the Cure to be paid on account of each assumed AUC Employment Agreement. The Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, shall be responsible for paying the Cure determined by separate order of the Bankruptcy Court, after notice and a hearing consistent with this paragraph. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, cancel, extinguish, alter, impair, modify, or otherwise prevent the AUC Employees from, to the extent they exist, asserting any or all of the AUC Employees' defenses, arguments, or rights relating to any proposed post-Effective Date assignment by any of the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, of any of the AUC Employment Agreements (including, without limitation, any rights under applicable non-bankruptcy law to withhold consent to any proposed assignee due to the non-delegable or personal service nature of such AUC Employment Agreements). For the avoidance of doubt, the AUC Employees have timely opted out of the Third-Party Release under Article VIII.D of the Plan and, thus, are excluded from the definition of Releasing Parties.

137.    **Simi Valley Hospital.** Notwithstanding any other provision in this Confirmation Order or the Plan to the contrary, nothing in this Confirmation Order or the Plan (and neither the confirmation nor consummation of the Plan) shall discharge, cancel, extinguish, eliminate, alter, impair, modify, or otherwise prevent Simi Valley Hospital & Health Care Services dba Adventist Health Simi Valley ("Simi Valley Hospital") from asserting, any or all of Simi Valley Hospital's defenses, arguments or rights (appellate or otherwise) relating to (a) any proposed assumption,

assumption and assignment, or rejection, by any of the Debtors of any Executory Contract or Unexpired Lease with Simi Valley Hospital or the outpatient radiation oncology cancer treatment center located at 2984 North Sycamore Drive, Simi Valley, CA (the "Simi Valley Center"), or (b) the transfer, conveyance or sale by any of the Debtors of all or any part of any membership interest, directly or indirectly, in Simi Valley Cancer Center Management, LLC, free and clear of Liens, Claims, charges, other encumbrances or interests of Simi Valley Hospital, including without limitation, any consent right, right of first refusal, right of first offer, co-sale right, or investor right of Simi Valley Hospital (collectively, "Simi Valley Hospital's Right of First Refusal"); *provided* that Simi Valley Hospital shall be required to assert such rights, Liens, Claims, other encumbrances, interests, defenses, or arguments in a written objection filed with this Court on or prior to the date that is fourteen (14) calendar days following notice to Simi Valley Hospital of such proposed assumption, assumption and assignment, rejection, or sale.  If Simi Valley Hospital timely files such a written objection, (x) any Executory Contract or Unexpired Lease with Simi Valley Hospital shall not be deemed to be assumed or rejected, as applicable, and (y) no property of any Estate shall vest free and clear of Simi Valley Hospital's Right of First Refusal or any other interests under any agreements with or relating to Simi Valley Hospital or the Simi Valley Center, in each case—and unless Simi Valley Hospital and the Debtors, the Reorganized Debtors, or Post Effective Date Debtors, as applicable, otherwise agree in writing—until entry of an order resolving the dispute and approving (i) the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contract or Unexpired Lease, or (ii) the sale of such interests, or as may be agreed upon by the Reorganized Debtors or the Post Effective Date Debtors, as applicable, and Simi Valley Hospital.  Notwithstanding the foregoing sentence, all Executory Contracts or Unexpired Leases between the Debtors and Simi Valley Hospital and any ancillary agreements

necessary to the Debtors' performance under such Executory Contracts or Unexpired Leases shall remain in full force and effect until the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, obtain an order assuming, assuming and assigning, or rejecting, as applicable, all such Executory Contracts and Unexpired Leases and/or, to the extent that a sale is contemplated, that sale closes.

138.   **Coastal Radiation.**   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, cancel, extinguish, alter, impair, modify, or otherwise prevent Coastal Radiation Oncology Medical Group ("Coastal Radiation") from, to the extent they exist, asserting any or all of Coastal Radiation's defenses, arguments, or rights relating to (a) any proposed assumption, assumption and assignment, or rejection by any of the Debtors of the contracts related to Coastal Radiation's facilities (whether owned, leased, or occupied) and operations (the "Coastal Contracts") or (b) in the event of an assumption or an assumption and assignment of any or all of the Coastal Contracts, any proposed Cure on account of such assumption or assumption and assignment; *provided* that Coastal Radiation shall be required to assert such rights, interests, defenses, or arguments in a written objection filed with this Bankruptcy Court on or prior to the date that is fourteen (14) calendar days following notice to Coastal Radiation of such proposed assumption, assumption and assignment, or rejection.  If Coastal Radiation timely files such written objection(s), all Coastal Contracts shall be deemed not to be assumed or rejected, as applicable—unless and until Coastal Radiation and the Debtors, the Reorganized Debtors, or Post Effective Date Debtors, as applicable, otherwise agree in writing—until entry of an order by this Bankruptcy Court resolving all such disputes and approving the assumption, assumption and assignment, or rejection, as applicable, of such Coastal Contracts.  To the extent practicable, and absent further agreement of the parties or

order of the Court (upon a showing of substantial cause), it is the intention of the Debtors and Coastal Radiation to conduct a single hearing for the resolution of all such disputes.

139.   **Ad Hoc Group of Practitioner Equity Holders.**   Notwithstanding anything to the contrary in Article VIII.C of the Plan, the Ad Hoc Group of Practitioner Equity Holders' (as defined in the *Limited Objection to Confirmation of Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1106] (the "Limited Objection")) rights to assert direct claims against third parties are reserved and preserved and, to the extent required under the Plan or this Confirmation Order, the Debtors recognize that the members of the Ad Hoc Group of Practitioner Equity Holders have affirmatively opted out from the release provisions contained in Article VIII.D of the Plan.  Additionally, nothing herein shall modify or limit any defenses, to the extent they exist, that the Ad Hoc Group of Practitioner Equity Holders could assert to contest jurisdiction of the Bankruptcy Court to enforce the provisions of the Plan with respect to valid rights, claims, actions, defenses, setoffs, and recoupments of the Ad Hoc Group of Practitioner Equity Holders, which rights are expressly reserved and preserved without exception and with no purpose of confessing or conceding jurisdiction by resolution of the Limited Objection or by any other participation in these Chapter 11 Cases; *provided, however*, that any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, or Post Effective Date Debtors, as applicable, are reserved, preserved, and unimpaired.

140.   **STORE Master Funding VI, LLC.**   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, cancel, extinguish, alter, impair, modify, or otherwise prevent STORE Master Funding VI, LLC ("STORE") from, to the extent they exist, asserting any or all of STORE's defenses, arguments,

or rights relating to (a) any proposed assumption, assumption and assignment, or rejection by any of the Debtors of the Unexpired Master Lease with STORE (the "Master Lease") or (b) in the event of an assumption or an assumption and assignment of the Master Lease, any proposed Cure on account of such assumption or assumption and assignment; *provided* that STORE shall be required to assert such rights, interests, defenses, or arguments in a written objection filed with this Bankruptcy Court on or prior to the date that is fourteen (14) calendar days following notice to STORE of such proposed assumption, assumption and assignment, or rejection.  If STORE timely files such a written objection, the Master Lease shall not be deemed to be assumed or rejected, as applicable—unless STORE and the Debtors, the Reorganized Debtors, or Post Effective Date Debtors, as applicable, otherwise agree in writing—until entry of an order by this Bankruptcy Court resolving the dispute and approving the assumption, assumption and assignment, or rejection, as applicable, of the Master Lease. For the avoidance of doubt, until such time as the Master Lease is assumed or rejected, the Debtors or the Reorganized Debtors, as applicable, shall continue to perform all obligations under the Master Lease, including but not limited to the payment of rent thereunder.

141.    Article V.C ¶5(b) shall not apply to STORE.  Nothing in the Plan or this Confirmation Order shall affect any valid setoff or recoupment rights of STORE.

142.    **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

143. **Treatment of Executory Contracts and Unexpired Leases.** Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Applicable Effective Date, the Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases. The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

144. **Rejection Damages Claims.** In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the solicitation agent and served upon counsel for the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, no later than thirty (30) days after the later of (a) the Applicable Effective Date or (b) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection of such Executory Contract or Unexpired Lease. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

145. **Indemnification Obligations.** All indemnification provisions in place as of the Applicable Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions,

indemnification agreements, employment contracts, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (a) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or this Confirmation Order, (b) remain intact, in full force and effect, and irrevocable, (c) not be limited, reduced or terminated after the Applicable Effective Date, and (d) survive the effectiveness of the Plan on terms no less favorable to such current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Applicable Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors or the Post Effective Date Debtors, as applicable.  Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code.

146.    **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

147.    **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the ROW Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing

in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.   The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the ROW Effective Date.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.   Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

148.    The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.  From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors or the Post Effective Date Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

149.    **Certain Securities Law Matters**.  Pursuant to section 1145 of the Bankruptcy Code to the fullest extent applicable, the offering, issuance, and distribution of the New Equity Interests and New Warrants (including the ROW New Equity Interests issuable upon the exercise of the New Warrants), as contemplated by Article IV.C of the Plan, (a) shall be exempt from the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any

other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of securities, (b)(i) shall not be considered "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) shall be freely tradable and transferable under the federal securities laws unless the holder thereof (A) is an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (B) is an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, or (C) has been an "affiliate" within 90 days of the time of transfer.

150.    To the extent the exemption provided under section 1145 of the Bankruptcy Code is unavailable for the issuance of any shares of New Equity Interests or New Warrants (including the ROW New Equity Interests issuable upon the exercise of the New Warrants) under the Plan, such shares will instead be issued in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S or another available exemption from registration under the Securities Act.  Any such shares of New Equity Interests or New Warrants (including the ROW New Equity Interests issuable upon the exercise of the New Warrants) will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act and applicable state or local securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and pursuant to applicable securities laws.  Notwithstanding the foregoing, such New Equity Interests and the New Warrants (including the ROW New Equity Interests issuable upon the exercise of the New Warrants) shall remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities,

subject to any restrictions in the New Organizational Documents, any agreements governing the New Warrants, and any other regulatory approval.

151.    Should the Reorganized Debtors elect, on or after the Applicable Effective Date, to reflect any ownership of the Securities issued pursuant to the Plan through the facilities of the DTC (or another similar depository), the Reorganized Debtors need not provide to DTC (or another similar depository) or any transfer agent any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the Debtors' or the Reorganized Debtors' securities under applicable securities laws.  Notwithstanding anything to the contrary in the Plan, no Entity, including, for the avoidance of doubt, DTC (or another similar depository) or any transfer agent, shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the initial sale and delivery by the issuer to the Holders of the New Equity Interests, the New Warrants, or the ROW New Equity Interests issued upon the exercise of the New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (or such similar services).  DTC (or another similar depository) or any transfer agent shall be required to accept and conclusively rely upon the Plan or this Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests, the New Warrants, or the ROW New Equity Interests issued upon the exercise of the New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (or such similar services).

152.    **Section 1146(a) Exemption.**  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable Law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or

the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

153.    **Documents, Mortgages, and Instruments.** This Confirmation Order is, and shall be, binding upon and shall govern the acts of all Persons or Entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state,

federal and state officials, and corresponding officials in all applicable jurisdictions, both foreign and domestic, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, local, and foreign government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan, including the Restructuring Transactions, and this Confirmation Order and, to the extent such persons or entities are not identified by the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, after reasonable due inquiry, the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, shall be granted power of attorney to sign on behalf of such person or entity.

154. **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court that is in existence upon entry of this Confirmation Order shall remain in full force and effect until the Applicable Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

155. **Nonseverability of Plan Provisions Upon Confirmation.**  Each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' or Post Effective Date Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

156. **Post-Confirmation Modifications.** In accordance with Article X.A of the Plan, without need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors or the Post Effective Date Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary or desirable to effectuate the Plan and the Restructuring Transactions contemplated therein, including the Sale Transaction Restructuring, the U.S. Equitization Restructuring, and/or the U.S. Asset Sales, in each case that are consistent with the Plan, subject to any applicable consents or consultation rights set forth therein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors and the Post Effective Date Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

157. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable federal, state, or foreign law.

158. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the

Bankruptcy Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

159. **Governmental Approvals Not Required.**   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority, with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the documents contained in the Plan Supplement, the implementation and consummation of the Restructuring Transactions, and any other documents that are necessary or desirable to implement or consummate the Restructuring Transactions.

160. **Reporting.**   After entry of this Confirmation Order, the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases; *provided* that the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.  From the Confirmation Date through the Applicable Effective Date, the Debtors will File such reports as are required under the Bankruptcy Local Rules.

161. **Notices of Confirmation and Effective Date.**   The Reorganized Debtors shall cause service of the notice of entry of this Confirmation Order and the occurrence of the Applicable

Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised to the applicable Debtors, the "Notice of Effective Date"), to be provided in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests within ten (10) Business Days after the Applicable Effective Date or as soon as reasonably practicable thereafter. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The Combined Hearing Notice, this Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

162. **Failure of Consummation.** If Consummation does not occur for a Debtor, the Plan and the findings in this Confirmation Order shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement as to such Debtor shall: (a) constitute a waiver or release of any claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

163. **Substantial Consummation.** On the Applicable Effective Date, the Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

164. **New Equity Interests**. On the Applicable Effective Date, the Debtors or Reorganized Debtors or Post Effective Date Debtors, as applicable, shall issue the New Equity Interests pursuant to the Plan. The issuance of the New Equity Interests, including, if applicable,

equity awards reserved at the Applicable Effective Date for the Management Incentive Plans and the Physician Incentive Plans, shall be authorized without the need for any further corporate or other action by the Debtors or Reorganized Debtors or Post Effective Date Debtors or by Holders of any Claims or Interests.  All New Equity Interests shall be, upon issuance, duly authorized, validly issued, fully paid and non-assessable.

165.    **Challenge Period.**  The Committee's Challenge Period (as defined in the DIP Order), shall be tolled until the Effective Date of the Plan; *provided*, *however*, that so long as the Debtors, the Committee, and the Ad Hoc Group are continuing to propose and prosecute a Plan that incorporates the terms of the UCC Settlement, the Committee shall not (a) seek standing or otherwise pursue (i) Claims against the Prepetition Secured Parties or (ii) other potential Estate Claims, including Claims related to prepetition retention payments or (b) incur fees related to the foregoing.

166.    If the Plan does not incorporate the terms of the UCC Settlement or is not otherwise reasonably acceptable to the Committee with respect to the provisions of the Plan incorporating the UCC Settlement, or is not otherwise confirmed or consummated, the Committee will retain all rights under the DIP Order, including to challenge the Prepetition Secured Parties' Claims and Liens, and the Challenge Period (as defined in the DIP Order) will be set for thirty (30) days from the later of (a) the Filing of a Plan that is inconsistent with the UCC Settlement or otherwise unacceptable to the UCC or (b) the date the Bankruptcy Court denies Confirmation of the Plan or the Plan is unable to be consummated.

167.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer

to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

168.     **Headings.**   Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

169.     **Effect of Conflict.**   This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

170.     **Final Order.**   This Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

171.     **Retention of Jurisdiction.**   The Bankruptcy Court may properly, and upon the Applicable Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, this Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by law under the applicable circumstances.

Signed: November 21, 2023

Marvin Isgur
United States Bankruptcy Judge

## Exhibit A

## Plan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENESIS CARE PTY LIMITED, *et al.*,[1] | ) | Case No. 23-90614 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)**

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER,
ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION
OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS
SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY
CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
jwertz@jw.com
ggraham@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com
steven.serajeddini@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jaimie Fedell (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jaimie.fedell@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated:  November 21, 2023

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GenesisCare.  The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is:  1419 SE 8th Terrace, Suite 200, Cape Coral, FL 33990.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
    GOVERNING LAW ...........................................................................................................1
    A.    Defined Terms. .............................................................................................................1
    B.    Rules of Interpretation. ..............................................................................................21
    C.    Computation of Time. ................................................................................................22
    D.    Governing Law. .........................................................................................................22
    E.    Reference to Monetary Figures. ................................................................................22
    F.    Reference to the Debtors or the Reorganized Debtors. ............................................22
    G.    Nonconsolidated Plan. ..............................................................................................22
    H.    Controlling Document. ..............................................................................................22

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS,  PROFESSIONAL FEE CLAIMS, AND
    PRIORITY CLAIMS, ...................................................................................................22
    A.    General Administrative Claims. ................................................................................23
    B.    Professional Fee Claims. ...........................................................................................23
    C.    DIP Claims. ...............................................................................................................24
    D.    Priority Tax Claims. ..................................................................................................25
    E.    Restructuring Expenses. ............................................................................................25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................25
    A.    Classification of Claims and Interests. .....................................................................25
    B.    Treatment of Claims and Interests. ...........................................................................26
    C.    Special Provision Governing Unimpaired Claims. ...................................................31
    D.    Elimination of Vacant Classes. .................................................................................31
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ..............................31
    F.    Intercompany Interests. .............................................................................................31
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ..................31
    H.    Controversy Concerning Impairment. .......................................................................32
    I.    Subordinated Claims. ................................................................................................32

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .............................................32
    A.    General Settlement of Claims and Interests. .............................................................32
    B.    Restructuring Transactions. .......................................................................................32
    C.    Certain Securities Law Matters. ................................................................................50
    D.    Management Incentive Plans. ....................................................................................51
    E.    Physician Incentive Plans. .........................................................................................51
    F.    UCC Settlement. .......................................................................................................52
    G.    Cancellation of Existing Securities and Agreements. ...............................................52
    H.    Indemnification Obligations. .....................................................................................53
    I.    Section 1146 Exemption. ..........................................................................................53
    J.    Director and Officer Liability Insurance. ..................................................................53
    K.    Closing the Chapter 11 Cases. ..................................................................................54

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............54
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ...........54
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..............55
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..........55
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ..........57
    E.    Insurance Policies. .....................................................................................................57
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ......57
    G.    Reservation of Rights. ...............................................................................................58
    H.    Nonoccurrence of the Effective Date. .......................................................................58
    I.    Contracts and Leases Entered Into After the Petition Date. ......................................58

i

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ....................................................................58
    A.      Distributions on Account of Claims Allowed as of the Effective Date. ........................58
    B.      Distribution Agent. ...............................................................................................................58
    C.      Rights and Powers of the Distribution Agent. ..................................................................59
    D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .................59
    E.      Manner of Payment. ..............................................................................................................60
    F.      Compliance with Tax Requirements. .................................................................................61
    G.      Allocations. ............................................................................................................................61
    H.      Foreign Currency Exchange Rate. ......................................................................................61
    I.      Setoffs and Recoupment. .....................................................................................................61
    J.      Claims Paid or Payable by Third Parties. .........................................................................61
    K.      Distributions After the Effective Date. ..............................................................................62

ARTICLE VII. PROCEDURES FOR RESOLVING  CONTINGENT, UNLIQUIDATED, AND
                DISPUTED CLAIMS .....................................................................................................62
    A.      Allowance of Claims. ...........................................................................................................62
    B.      Claims Administration Responsibilities. ...........................................................................63
    C.      Disputed Claims Process. .....................................................................................................63
    D.      Estimation of Claims and Interests. ....................................................................................64
    E.      Adjustment to Claims or Interests without Objection. ....................................................64
    F.      Disallowance of Claims or Interests. ..................................................................................64
    G.      No Distributions Pending Allowance. ................................................................................64
    H.      Distributions After Allowance. ...........................................................................................64
    I.      No Postpetition Interest on Claims. ....................................................................................65
    J.      Accrual of Dividends and Other Rights. ...........................................................................65

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...............65
    A.      Discharge of Claims and Termination of Interests. .........................................................65
    **B.**      **Release of Liens.** .....................................................................................................................65
    **C.**      **Releases by the Debtors.** .....................................................................................................66
    **D.**      **Releases by the Releasing Parties.** ...................................................................................67
    **E.**      **Exculpation.** ...........................................................................................................................68
    **F.**      **Injunction.** .............................................................................................................................68
    G.      Protections Against Discriminatory Treatment. ...............................................................69
    H.      Document Retention. ............................................................................................................69
    I.      Reimbursement or Contribution. .......................................................................................69

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...........................70
    A.      Conditions Precedent to the ROW Effective Date. .........................................................70
    B.      Conditions Precedent to the GC U.S. Effective Date. .....................................................71
    C.      Waiver of Conditions. ..........................................................................................................72
    D.      Effect of Failure of Conditions. ..........................................................................................72
    E.      Substantial Consummation. ................................................................................................72

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN........................72
    A.      Modification and Amendments. ..........................................................................................72
    B.      Effect of Confirmation on Modifications. .........................................................................72
    C.      Revocation or Withdrawal of Plan. ....................................................................................72

ARTICLE XI. RETENTION OF JURISDICTION ......................................................................................73

ARTICLE XII. MISCELLANEOUS PROVISIONS .....................................................................................74
    A.      Immediate Binding Effect. ...................................................................................................74
    B.      Additional Documents. ........................................................................................................75
    C.      Payment of Statutory Fees. ..................................................................................................75
    D.      Statutory Committee and Cessation of Fee and Expense Payment. ...............................75

E.     Reservation of Rights. ..........................................................................................75
F.     Successors and Assigns. ........................................................................................76
G.     Notices. ..................................................................................................................76
H.     Term of Injunctions or Stays. ...............................................................................76
I.      Entire Agreement. .................................................................................................76
J.      Plan Supplement. ..................................................................................................77
K.     Nonseverability of Plan Provisions. .....................................................................77
L.     Votes Solicited in Good Faith. ..............................................................................77
M.     Closing of Chapter 11 Cases. ...............................................................................77
N.     Waiver or Estoppel. ..............................................................................................77

## INTRODUCTION

The Debtors propose this joint chapter 11 plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The classification of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN, TO THE EXTENT APPLICABLE.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect ascribed to them below.

1.      "*5B-1 General Unsecured Claim*" means any Class 5B General Unsecured Claim that is not a 5B-2 General Unsecured Claim or a 5B-3 General Unsecured Claim.

2.      "*5B-2 General Unsecured Claim*" means any Class 5B General Unsecured Claims that is (a) Allowed in an amount equal to or less than the Convenience Class Threshold, or (b) Allowed in excess of the Convenience Class Threshold. Any Holder of a Class 5B General Unsecured Claim whose Claim is Allowed in excess of the Convenience Class Threshold must voluntarily agree to reduce such Claim to the Convenience Class Threshold (with any excess amounts waived) to Hold a 5B-2 General Unsecured Claim.

3.      "*5B-3 General Unsecured Claim*" means any Class 5B General Unsecured Claim arising from personal injury tort or wrongful death claims subject to § 157(b)(2)(O) of the Judicial Code.

4.      "*Ad Hoc Group*" means that certain ad hoc group of lenders under the SFA and the DIP Facility represented by the Ad Hoc Group Advisors.

5.      "*Ad Hoc Group Advisors*" means Akin Gump Strauss Hauer & Feld, LLP, as lead counsel to the Ad Hoc Group, Arnold Bloch Leibler, as Australian counsel to the Ad Hoc Group, and Houlihan Lokey, Inc., as investment banker to the Ad Hoc Group.

6.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through and including the Applicable Effective Date; (b) Allowed Professional Fee Claims; (c) DIP Claims; (d) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (e) the Disinterested Director Fee Claims.

7.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to a General Administrative Claim subject to the Administrative Claims Bar Date Order against the Bar Date Debtors, shall be the applicable date specified in the Administrative Claims Bar Date Order; (b) with respect to any other General Administrative Claim, shall be thirty days after the

1

Applicable Effective Date; and (c) with respect to Professional Fee Claims, shall be forty-five days after the ROW Effective Date.

8.        "*Administrative Claims Bar Date Order*" means the order of the Bankruptcy Court that establishes one or more dates as the Administrative Claims Bar Date for General Administrative Claims against the Bar Date Debtors.

9.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity was a debtor in a case under the Bankruptcy Code.

10.        "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order, including the DIP Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order, including the DIP Order; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim (other than an SFA Claim or a Swap Claim) that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed subject to the Administrative Claims Bar Date Order after the Administrative Claims Bar Date, as applicable against the Bar Date Debtors, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

11.        "*APH Loan Agreement*" means that certain loan agreement, dated as of August 29, 2022, between TopCo, as borrower, and Asia Pacific Healthcare Investments Limited, as lender.

12.        "*Applicable Effective Date*" means the Effective Date, the GC U.S. Effective Date, or the ROW Effective Date, as the context requires.

13.        "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

14.        "*AUS Exit Takeback Term Loans*" means the term loans issued under the AUS Takeback Facility Credit Agreement, in form and substance acceptable to the ROW Debtors and the Required Lenders.

15.        "*AUS Holdco*" means Genesis Specialist Care Pty Ltd or such other entity as may be set forth in the Restructuring Transactions Memorandum.

16.        "*AUS Holdco New Equity Interests*" means the Equity Interests in Reorganized AUS Holdco to be issued pursuant to the Plan.

17.     "*AUS Management Incentive Plan*" means a management incentive plan for the Reorganized Australian Debtors, as applicable, the terms and conditions of which shall be agreed upon by the New ROW Board, and in form and substance acceptable to the Required Lenders.

18.     "*AUS New Money Exit Agent*" means any agent under the AUS New Money Exit Facility Credit Agreement.

19.     "*AUS New Money Exit Facility*" means the new money credit facility (if any) provided for under the AUS New Money Exit Facility Credit Agreement.

20.     "*AUS New Money Exit Facility Credit Agreement*" means the definitive credit agreement governing the AUS New Money Exit Facility, a form of which shall be included in the Plan Supplement (if applicable).

21.     "*AUS New Money Exit Facility Documents*" means, collectively, the AUS New Money Exit Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the ROW Debtors and the Required Lenders.

22.     "*AUS New Money Exit Term Loans*" means the loans provided for under the AUS New Money Exit Facility Credit Agreement, in form and substance acceptable to the ROW Debtors and the Required Lenders.

23.     "*AUS Physician Equity Interests*" means the AUS Holdco New Equity Interests to be issued pursuant to the AUS Physician Incentive Plan.

24.     "*AUS Physician Incentive Plan*" means an equity incentive plan for certain of the Reorganized Australian Debtors' physicians, the terms and conditions of which shall be set forth in the Plan Supplement, in each case, in form and substance acceptable to the Required Lenders.

25.     "*AUS Takeback Facility*" means the credit facility provided for under the AUS Takeback Facility Credit Agreement, if applicable.

26.     "*AUS Takeback Facility Agent*" means any agent under the AUS Takeback Facility Credit Agreement.

27.     "*AUS Takeback Facility Amount*" means the total amount of AUS Exit Takeback Term Loans issued to Holders of Allowed DIP Claims.

28.     "*AUS Takeback Facility Credit Agreement*" means, if applicable, the definitive credit agreement governing the AUS Takeback Facility, a form of which shall be included in the Plan Supplement.

29.     "*AUS Takeback Facility Documents*" means, if applicable, the AUS Takeback Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the ROW Debtors and the Required Lenders.

30.     "*Australian Debtors*" means each of Genesis Care Pty Limited, Genesis Care Finance Pty Ltd, Genesis Specialist Care Pty Ltd, Genesis Cancer Care Pty Ltd, Genesis Cancer Care Victoria Pty Ltd, Adelaide Radiotherapy Centre Pty. Ltd., Genesis Cancer Care QLD Pty Limited, Radiation Oncology Associates Pty Limited, Genesis Cancer Care WA Pty Limited, and EMROC Pty Ltd.

31.     "*Available Cash*" means all Cash of the Debtors, Reorganized Debtors, and Post Effective Date Debtors from the revenues and proceeds of the Sale Transaction Restructuring or the U.S. Equitization Restructuring on or after the GC U.S. Effective Date and available for use and distribution in accordance with the priorities set forth herein.

32.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in

interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

33.     "*Backstop Parties*" means at any time and from time to time, the parties that have committed to backstop the Rights Offering and are signatories to the Rights Offering Backstop Commitment Agreement, solely in their capacities as such, to the extent provided in the Rights Offering Backstop Commitment Agreement.

34.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

35.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

36.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

37.     "*Bar Date Debtors*" means the GC U.S. Debtors.

38.     "*Bidding Procedures Order*" means the order entered by the Bankruptcy Court at Docket No. 321, including any exhibits or annexes thereto, as modified from time to time in accordance with the terms thereof.

39.     "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

40.     "*Cash*" or "*$*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

41.     "*Cash Collateral*" has the meaning ascribed to such term in section 363(a) of the Bankruptcy Code.

42.     "*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by Law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any other Avoidance Action.

43.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

44.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

45.     "*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained or to be retained by the Debtors in the Chapter 11 Cases.

46.     "*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed against the Bar Date Debtors with respect to Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

47.     "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

48.     "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

49.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

50.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code as set forth in the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 174] and as may be reconstituted from time to time.

51.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

52.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

53.     "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

54.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Lenders.

55.     "*Consenting Creditors*" has the meaning ascribed to it in the Plan Support Agreement.

56.     "*Consenting SFA Lenders*" has the meaning ascribed to it in the Plan Support Agreement.

57.     "*Consummation*" means the occurrence of the Applicable Effective Date.

58.     "*Convenience Class*" means Class 5B-2.

59.     "*Convenience Class Threshold*" means $100,000.00.

60.     "*Convenience Class Amount*" means $350,000.00.

61.     "*Covered Claim*" means any claim or any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents (including with respect to the DIP Facility), the New Money Exit Facility Credit Agreements and other New Money Exit Facility Documents (if any), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan).

62.     "*Covered Party*" means, with respect to the Debtors, each Related Party of each Debtor, including, for the avoidance of doubt, each such Entity's financial advisors, partners, attorneys, accountants, investment bankers, consultants, and other professionals, each in their capacity as such.

63.     "*Credit Bid*" means, as applicable, a bid by the DIP Lenders and/or any Prepetition Secured Parties in a manner consistent with the DIP Order, a Final Order of the Bankruptcy Court approving the Sale Transaction Restructuring under section 363 of the Bankruptcy Code (if applicable), and section 363(k) of the Bankruptcy Code.

64.     "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

65.     "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan or assumed and assigned under a Purchase Agreement pursuant to section 365 of the Bankruptcy Code, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan or assumed and assigned to a Purchaser in connection with a sale; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

66.     "*Cure/Assumption Objection Deadline*" means the date that is 14 days after Filing of the Assumed Executory Contracts and Unexpired Leases Schedule and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedule with such modification and (b) the date of the scheduled Confirmation Hearing, as applicable.

67.     "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

68.     "*Debtor Release*" means the release set forth in Article VIII.C of the Plan.

69.     "*Debtors*" means the GC U.S. Debtors and the ROW Debtors.

70.     "*Defaulting Lender*" has the meaning ascribed to such term in the SFA.

71.     "*DIP Agents*" means the administrative, collateral, and escrow agents under the DIP Credit Agreement.

72.     "*DIP Claims*" means, collectively, the DIP New Money Claims and the DIP Roll-Up Claims.

73.     "*DIP Credit Agreement*" means the definitive senior secured superpriority debtor-in-possession credit agreement, dated as of June 2, 2023, by and among the Debtors party thereto, the DIP Secured Parties, as amended by that certain Amendment No. 1 to Credit Agreement, dated as of July 6, 2023, and that certain Second

Amendment to Credit Agreement, dated as of July 20, 2023 (as the same may be further amended, restated, amended and restated, supplemented, or otherwise modified in accordance with its terms).

74.     "*DIP Documents*" means the DIP Credit Agreement and other guarantee, security, and other relevant documentation governing the DIP Facility.

75.     "*DIP Equity Pool*" means a pool of 100% of the ROW New Equity Interests, subject to dilution by the ROW New Equity Interests issued pursuant to the Management Incentive Plans, the exercise of the New Warrants, the Rights Offering (if any), and the Put Option Premium (if any).

76.     "*DIP Facility*" means the senior secured multiple draw term loan facility in an aggregate principal amount of $800 million (USD).

77.     "*DIP Lenders*" means the lenders under the DIP Facility.

78.     "*DIP Loans*" means the loans under the DIP Facility.

79.     "*DIP New Money Claim*" means any Claim arising under, or related to, the DIP New Money Loans.

80.     "*DIP New Money Loans*" means, collectively, the DIP Loans that are not DIP Roll-Up Loans.

81.     "*DIP Order*" means, collectively, the Interim DIP Order and the Final DIP Order, as may be amended, modified, or supplemented from time to time in accordance with the terms thereof.

82.     "*DIP Recovery Allocation*" means the allocation of the recoveries provided to Holders of Allowed DIP Claims pursuant to Article II.C of the Plan among Holders of Allowed DIP New Money Claims and Allowed DIP Roll-Up Claims which shall be agreed by the Debtors and the Required Lenders and which shall be included in the Plan Supplement.

83.     "*DIP Roll-Up Claim*" means any Claim arising under, or related to, the DIP Roll-Up Loans.

84.     "*DIP Roll-Up Loans*" means, collectively, the DIP Loans resulting from the "roll up" of SFA Loans into the DIP Facility pursuant to the DIP Order.

85.     "*DIP Secured Parties*" means the DIP Agents together with the DIP Lenders.

86.     "*Disclosed Matters*" has the meaning given to such term in the DIP Credit Agreement.

87.     "*Disclosure Statement*" means the related disclosure statement with respect to this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law.

88.     "*Disinterested Director Fee Claims*" means, as of the Applicable Effective Date, all unpaid fees and expenses due to the disinterested directors of the Debtors pursuant to their respective director agreements with the applicable Debtor Entity.  On the Applicable Effective Date, the Disinterested Director Fee Claims shall be deemed Allowed Administrative Claims against the Debtors.

89.     "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest:  (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which an objection or request for estimation has been Filed; and (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

90.     "*Distributable Cash*" means all Available Cash (after reserving minimum Cash to balance sheet of the Reorganized ROW Debtors in an amount to be determined by the Debtors with the consent of the Required Lenders), after giving effect to the funding of the Professional Fee Escrow Account and the reserve or payment in full of all General Administrative Claims, DIP New Money Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims.

91.     "*Distribution Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, in each case, with the consent of the Required Lenders, not to be unreasonably withheld, to make or facilitate distributions pursuant to the Plan.

92.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Applicable Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Applicable Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

93.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date as reasonably selected by the Debtors, and subject to the consent of the Required Lenders.

94.     "*DTC*" means The Depository Trust Company, a New York corporation (or its successor).

95.     "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A or Article IX.B, as applicable, of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan, and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter; *provided*, *however*, that in the event the Consummation of the Plan with respect to the GC U.S. Debtors occurs after the date of Consummation of the Plan with respect to the ROW Debtors, the term "Effective Date" shall exclude the GC U.S. Effective Date.

96.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

97.     "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, ordinary shares, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Person, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, ordinary shares, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Person (in each case whether or not arising under or in connection with any employment agreement).

98.     "*Equity Purchase Price*" means, in the event the U.S. Equitization Restructuring occurs and the DIP Lenders are not the Plan Sponsor, the Purchase Price for the Plan Sponsor Equity Shares.

99.     "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by such Debtor after the Petition Date and before the Effective Date.

100.    "*EUR Debtors*" means each of Genesis Specialist Care UK Limited, Genesis Specialist Care Holding UK Limited, Genesis Cancer Care UK Limited, Genesis Specialist Care Finance UK Limited, and Genesis Specialist Care UK No 2 Limited.

101.    "*EUR Holdco*" means Genesis Specialist Care UK Limited or such other entity as may be set forth in the Restructuring Transactions Memorandum.

102. "*EUR Holdco New Equity Interests*" means the Equity Interests in Reorganized EUR Holdco to be issued pursuant to the Plan.

103. "*EUR Management Incentive Plan*" means a management incentive plan for the Reorganized EUR Debtors, as applicable, the terms and conditions of which shall be agreed upon by the New ROW Board, and in form and substance acceptable to the Required Lenders.

104. "*EUR New Money Exit Agent*" means any agent under the EUR New Money Exit Facility Credit Agreement.

105. "*EUR New Money Exit Facility*" means the new money credit facility (if any) provided for under the EUR New Money Exit Facility Credit Agreement.

106. "*EUR New Money Exit Facility Credit Agreement*" means the definitive credit agreement governing the EUR New Money Exit Facility, a form of which shall be included in the Plan Supplement (if applicable).

107. "*EUR New Money Exit Facility Documents*" means, collectively, the EUR New Money Exit Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the Required Lenders.

108. "*EUR New Money Exit Term Loans*" means the loans provided for under the EUR New Money Exit Facility Credit Agreement, in each case, in form and substance acceptable to the Required Lenders.

109. "*EUR Physician Equity Interests*" means the EUR Holdco New Equity Interests to be issued pursuant to the EUR Physician Incentive Plan.

110. "*EUR Physician Incentive Plan*" means an equity incentive plan for certain of the Reorganized EUR Debtors' physicians, the terms and conditions of which shall be set forth in the Plan Supplement, in each case, in form and substance acceptable to the ROW Debtors and the Required Lenders.

111. "*EUR Takeback Facility*" means the credit facility provided for under the EUR Takeback Facility Credit Agreement, if applicable.

112. "*EUR Takeback Facility Agent*" means any agent under the EUR Takeback Facility Credit Agreement.

113. "*EUR Takeback Facility Amount*" means the total amount of EUR Takeback Term Loans issued to Holders of Allowed DIP Claims.

114. "*EUR Takeback Facility Credit Agreement*" means, if applicable, the definitive credit agreement governing the EUR Takeback Facility, a form of which shall be included in the Plan Supplement.

115. "*EUR Takeback Facility Documents*" means, if applicable, the EUR Takeback Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the ROW Debtors and the Required Lenders.

116. "*EUR Takeback Term Loans*" means the term loans issued under the EUR Takeback Facility Credit Agreement, in form and substance acceptable to the Required Lenders.

117. "*Excluded Parties*" means, subject to the investigations of the Special Committees, Dan Collins, Chris Gill, Keith Hansen, Helen Kurincic, Aaron Pickett, Nick Todhunter, and Ben Ward, each in their capacity as a former director or officer of the Debtors, and any affiliated investment vehicle of such persons that is not specifically identified as a Released Party.

118.     "*Exculpated Parties*" means, collectively, and in each case in its capacity as such, (a) each of the Debtors and (b) the Committee and each member of the Committee, solely in their respective capacities as such.

119.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

120.     "*Existing TopCo Interests*" means, collectively, all Interests in TopCo outstanding immediately prior to the Effective Date.

121.     "*Exit Takeback Term Loans*" means, collectively, the AUS Exit Takeback Term Loans and the EUR Takeback Term Loans.

122.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

123.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

124.     "*Final DIP Order*" means the Bankruptcy Court's order approving the DIP Facility and the Debtors' use of Cash Collateral on a final basis [Docket No. 323] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

125.     "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

126.     "*GC U.S. Debtors*" means GenesisCare USA Group Holdings, Inc.; GenesisCare USA Holdings, Inc.; GenesisCare USA, Inc.; California Radiation Therapy Management Services, Inc.; GenesisCare USA of Florida, LLC; Boynton Beach Real Estate, LLC; GenesisCare USA of South Carolina, LLC; Atlantic Urology Clinics, LLC; Carolina Regional Cancer Center, LLC; New England Radiation Therapy Management Services, Inc.; Maryland Radiation Therapy Management Services, LLC; Berlin Radiation Therapy Treatment Center, LLC; GenesisCare USA of Prince Georges County, Maryland, LLC; North Carolina Radiation Therapy Management Services, LLC; Goldsboro Radiation Therapy Services, LLC; Sampson Accelerator, LLC; GenesisCare USA of Kentucky, LLC; GenesisCare USA Management Services, Inc.; Northwest Cancer Care Management Company, LLC; GenesisCare USA of Alabama, LLC; South County Radiation Therapy, LLC; West Virginia Radiation Therapy Services, Inc.; Asheville CC, LLC; GenesisCare Solutions US LLC; Aurora Technology Development, LLC; GenesisCare US Sponsor, LLC; Delaware Radiation Therapy Management Services, Inc.; GenesisCare USA Services, LLC; U.S. Cancer Care, Inc.; GenesisCare CRO US LLC; GenesisCare USA Southwest Management Holdings, LLC; Cancer Treatment Services Arizona LLC; Oncure Holdings, Inc.; Financial Services of Southwest Florida, LLC; Northwest Baltimore Radiation Therapy Regional Center, LLC; Nevada Radiation Therapy Management Services, Inc.; Arizona Radiation Therapy Management Services, Inc.; and GenesisCare of Texas, LLC.

127.     "*GC U.S. Effective Date*" means the occurrence of the effective date with respect to the GC U.S. Debtors, which may be the Effective Date.

128.     "*GC U.S. New Equity Interests*" means, in the event of the U.S. Equitization Restructuring, the Equity Interests in Reorganized GC U.S. TopCo.

129.     "*GC U.S. Wind-Down Debtors*" means, in the event the U.S. Equitization Restructuring incorporates one or more U.S. Asset Sales, certain of the Reorganized GC U.S. Debtors that may be wound down in accordance with Article IV.B.1(n) of the Plan.

130.     "*General Administrative Claim*" means any Administrative Claim other than a Professional Fee Claim.

131.     "*General Unsecured Claim*" means any Claim against any of the Debtors that is not: (a) paid in full prior to the Applicable Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Secured Claim; (d) an Other Secured Claim; (e) an Other Priority Claim; (f) a Priority Tax Claim; (g) a DIP Claim; (h) an SFA Claim; (i) a Swap Claim; (j) a Shareholder Loan Claim; (k) an Intercompany Claim; (l) a Section 510(b) Claim; or (m) a Senior Secured Deficiency Claim.

132.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, special committee, or such similar governing body of any of the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable.

133.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

134.     "*GUC Trust*" means the trust that shall be established on the GC U.S. Effective Date in accordance with Article IV of the Plan to administer Class 5B General Unsecured Claims against the GC U.S. Debtors.

135.     "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

136.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

137.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

138.     "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

139.     "*Interests*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, and including all common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, and any other equity, ownership, beneficial or profits interests in any of the Debtors, whether or not transferable, and options, warrants, rights, or other securities, agreements or interests to acquire or subscribe for, or which are exercisable, convertible or exchangeable into or for the shares (or any class thereof) of, common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, or other equity, ownership, beneficial or profits interests in or of any Debtor, contractual or otherwise, including equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers or contractors of the Debtors (in each case whether or not arising under or in connection with any employment agreement).

140.     "*Interim DIP Order*" means the Bankruptcy Court's order approving the DIP Facility and the Debtors' use of Cash Collateral on an interim basis [Docket No. 89] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

141.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, and as applicable to the Chapter 11 Cases.

142.     "*KKR Loan Agreement*" means that certain loan agreement, dated as of June 4, 2022, between TopCo, as borrower, and Asia GCMIV Holdings II Pte. Ltd., as lender, as amended, restated, supplemented, or otherwise modified from time to time, including as amended and restated by an amendment and acknowledgment letter dated August 29, 2022.

143. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

144. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

145. "*Management Incentive Plans*" means, collectively, the TopCo Management Incentive Plan, the AUS Management Incentive Plan and the EUR Management Incentive Plan.

146. "*New Board*" means, collectively the New ROW Board and, as applicable, the New U.S. Board.

147. "*New Equity Interests* " means any Equity Interests issued by any of the Reorganized Debtors on or about the Applicable Effective Date pursuant to the Plan, as may be applicable and respectively as the context may require, including, for the avoidance of doubt, (a) the GC U.S. New Equity Interests, (b) the ROW New Equity Interests, (c) the AUS Holdco New Equity Interests, (d) the EUR Holdco New Equity Interests, and (e) the Rights Offering Equity Interests (including any Equity Interests issued on account of the Put Option Premium and the Unsubscribed Backstop Equity Interests).

148. "*New Money Exit Agent*" means, collectively, the AUS New Money Exit Agent, the EUR New Money Exit Agent, and the U.S. New Money Exit Agent.

149. "*New Money Exit Facilities*" means, collectively, the AUS New Money Exit Facility, the EUR New Money Exit Facility, and the U.S. New Money Exit Facility.

150. "*New Money Exit Facility Credit Agreements*" means, collectively, the AUS New Money Exit Facility Credit Agreement, the EUR New Money Exit Facility Credit Agreement, and the U.S. New Money Exit Facility Credit Agreement.

151. "*New Money Exit Facility Documents*" means, collectively, the AUS New Money Exit Facility Documents, the EUR New Money Exit Facility Documents, and the U.S. New Money Exit Facility Documents.

152. "*New Money Exit Term Loans*" means, collectively, the AUS New Money Exit Term Loans, the EUR New Money Exit Term Loans, and the U.S. New Money Exit Term Loans.

153. "*New Organizational Documents*" means the formation documents and governance documents for each of the Reorganized Debtors, which shall be in form and substance acceptable to the Required Lenders.

154. "*New ROW Board*" means, to the extent applicable, the initial board of directors, board of managers, or comparable Governing Body of Reorganized ROW TopCo, on and after the ROW Effective Date.

155. "*New U.S. Board*" means the initial board of directors, board of managers, or comparable Governing Body of Reorganized GC U.S. TopCo, on and after the GC U.S. Effective Date.

156. "*New Warrants*" means the warrants to purchase 10% of the ROW New Equity Interests to be issued pursuant to the Plan.  The New Warrants have a term of 6 years from the ROW Effective Date and a strike price equal to a par plus accrued interest recovery on the DIP Roll-Up Loans as of the ROW Effective Date.  The New Warrants will not have anti-dilution protection or Black-Scholes protection.

157. "*Organizational Documents*" means the formation documents and governance documents for the Debtors.

158. "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

159.    "*Other Secured Claims*" means any Secured Claim other than a DIP Claim, a Secured Tax Claim, an SFA Claim, or a Swap Claim.

160.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

161.    "*Petition Date*" means June 1, 2023.

162.    "*Physician Equity Interests*" means, collectively, the AUS Physician Equity Interests and the EUR Physician Equity Interests.

163.    "*Physician Incentive Plans*" means, collectively, the AUS Physician Incentive Plan and the EUR Physician Incentive Plan.

164.    "*Plan*" means this joint chapter 11 plan of reorganization, the Plan Supplement, and all exhibits and schedules annexed hereto or referenced herein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

165.    "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

166.    "*Plan Sponsor(s)*" means, in the event the U.S. Equitization Restructuring occurs, (i) the "Winning Bidder" under and as defined in the Bidding Procedures Order, or (ii) the Holders of Allowed DIP Claims.

167.    "*Plan Sponsor Advisors*" means the legal, financial, and other advisors that the Plan Sponsor engaged in connection with the Restructuring Transactions.

168.    "*Plan Sponsor Agreement*" means the transaction agreement, if any, to be entered into by the Debtors and the Plan Sponsor, which shall be in form and substance acceptable to the Required Lenders; *provided, however*, if the DIP Lenders are the Plan Sponsor, then there will not be a Plan Sponsor Agreement.

169.    "*Plan Sponsor Equity Shares*" means the GC U.S. New Equity Interests (i) purchased by the Plan Sponsor pursuant to the Plan Sponsor Agreement or (ii) distributed in accordance with Article II.C of the Plan.

170.    "*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Applicable Effective Date as amendments to the Plan Supplement, and in each case, in form and substance acceptable to the Required Lenders, including the following, as applicable:  (a) the New Organizational Documents; (b) to the extent known, the identities of the members of the New Board(s); (c) the Assumed Executory Contracts and Unexpired Leases Schedule; (d) the Transition Services Agreement(s); (e) the Physician Incentive Plans; (f) the New Money Exit Facility Credit Agreements and the New Money Exit Facility Documents (if any); (g) the Takeback Facility Credit Agreement and Takeback Facility Documents (if applicable); (h) the Rejected Executory Contracts and Unexpired Leases Schedule; (i) the Schedule of Retained Causes of Action; (j) the Restructuring Transactions Memorandum, (k) the Sale Transaction Documents, (m) the Plan Sponsor Agreement (if applicable); (n) the Rights Offering Documents (if applicable); and (o) the DIP Recovery Allocation.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Applicable Effective Date as set forth in this Plan, subject to the consent of the (x) the Required Lenders and (y) solely with respect to any terms in the Plan Supplement concerning the terms of the UCC Settlement, with the consent of the Committee.

171.    "*Plan Support Agreement*" means, in the event of the U.S. Equitization Restructuring, that certain Plan Support Agreement to be entered into by and among the Debtors, the Consenting Creditors, and the Plan Sponsor, including all exhibits and attachments thereto, and as amended, restated, and supplemented from time to time, in each case, in form and substance acceptable to the Required Lenders.

172.     "*Post Effective Date Debtors*" means, in the event of a Sale Transaction Restructuring, the GC U.S. Debtors after the GC U.S. Effective Date.

173.     "*Preference Action*" means any and all claims or defenses of the Debtors or Reorganized Debtors arising under section 547 of the Bankruptcy Code related to payments or transfers made within 90 days of the Petition Date.

174.     "*Prepetition Agents*" means Kroll Agency Services Limited, as facility agent under the SFA, and Kroll Trustee Services Limited, as security agent under the SFA.

175.     "*Prepetition Secured Parties*" has the meaning ascribed to such term in the Interim DIP Order.

176.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

177.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

178.     "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

179.     "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B of this Plan.

180.     "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

181.     "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the ROW Effective Date in an amount equal to the Professional Fee Amount.

182.     "*Proof of Claim*" means a proof of claim Filed against any of the Debtors in the Chapter 11 Cases.

183.     "*Purchase Agreement*" means the definitive purchase agreement(s) effectuating (i) the Sale Transaction Restructuring, or (ii) in the event the U.S. Equitization Restructuring occurs and it incorporates one or more U.S. Asset Sales, the U.S. Asset Sales, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof, in each case, in form and substance acceptable to the Required Lenders.

184.     "*Purchase Price*" has the meaning set forth in the Bidding Procedures Order.

185.     "*Purchaser*" means the purchaser or purchasers under the Purchase Agreement(s), if any, together any successors to and permitted assigns of such purchaser(s).

186.     "*Put Option Premium*" means a premium, if any, equal to a percentage of the ROW New Equity Interests to be set forth in the Rights Offering Backstop Commitment Agreement, subject to dilution on account of the ROW New Equity Interests issued pursuant to the Management Incentive Plans and the exercise of the New Warrants, payable to the Backstop Parties in accordance with the Rights Offering Backstop Commitment Agreement.

187.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the Holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

188.    "*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, in each case, in form and substance reasonably acceptable to the Required Lenders.

189.    "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.  For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

190.    "*Released Avoidance Action Parties*" means Holders of Claims in Classes 5A and 5B against which the Debtors possess UCC Settlement Avoidance Actions.

191.    "*Released Parties*" means, subject to the investigations of the Special Committees, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Post Effective Date Debtors; (d) the DIP Lenders; (e) each DIP Agent and each DIP Lender; (f) the Prepetition Agents and each Prepetition Secured Party; (g) the Shareholder Lenders; (h) Bank of America, N.A., Morgan Stanley & Co. International PLC, and Morgan Stanley Capital Services LLC as the Swap Counterparties; (i) the Plan Sponsor; (j) the Committee and each member of the Committee; (k) all Holders of Interests; (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m); *provided* that, in each case, an Entity shall not be a Released Party if such Entity:  (w) elects to opt out of the releases contained in Article VIII.D of the Plan; (x) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII.D of the Plan that is not resolved before Confirmation; (y) is a Defaulting Lender; or (z) is an Excluded Party.

192.    "*Releasing Parties*" means, subject to the investigations of the Special Committees, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Post Effective Date Debtors; (d) the Consenting SFA Lenders; (e) each DIP Agent and each DIP Lender; (f) the Prepetition Agents and each Prepetition Secured Party; (g) the Shareholder Lenders; (h) Bank of America, N.A., Morgan Stanley & Co. International PLC, and Morgan Stanley Capital Services LLC as the Swap Counterparties; (i) the Plan Sponsor; (j) the Committee and each member of the Committee; (k) all Holders of Claims; (l) all Holders of Interests; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (m); *provided* that, in each case, an Entity shall not be a Releasing Party if such Entity:   (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII.D of the Plan that is not resolved before Confirmation.

193.    "*Reorganized AUS Holdco*" means (a) AUS Holdco, on and after the ROW Effective Date, or (b) a new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, issue the AUS Holdco New Equity Interests to be distributed pursuant to the Plan.

194.    "*Reorganized Australian Debtors*" means the Australian Debtors on and after the ROW Effective Date.

195.    "*Reorganized Debtors*" means Reorganized ROW TopCo, the Reorganized ROW Debtors, and, if applicable, Reorganized GC U.S. TopCo and the Reorganized GC U.S. Debtors.

196.    "*Reorganized EUR Debtors*" means the EUR Debtors on and after the ROW Effective Date.

197.    "*Reorganized EUR Holdco*" means (a) EUR Holdco, on and after the ROW Effective Date, or (b) a new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, issue the EUR Holdco New Equity Interests to be distributed pursuant to the Plan.

198.    "*Reorganized GC U.S. Debtors*" means, in the event of the U.S. Equitization Restructuring, the reorganized GC U.S. Debtors.

199.    "*Reorganized GC U.S. TopCo*" means, in the event of the U.S. Equitization Restructuring, on and after the GC U.S. Effective Date, either (a) U.S. TopCo or (b) a new corporation, limited liability company, partnership, or other Entity that may be formed in the United States to, among other things, issue the GC U.S. New Equity Interests to be distributed pursuant to the Plan.

200.    "*Reorganized ROW Debtors*" means the ROW Debtors on and after the ROW Effective Date.

201.    "*Reorganized ROW TopCo*" means, on and after the ROW Effective Date, either (a) TopCo or (b) a new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, issue the ROW New Equity Interests to be distributed pursuant to the Plan.

202.    "*Required Lenders*" has the meaning ascribed to it in the DIP Credit Agreement.

203.    "*Restructuring Expenses*" means the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses incurred by (a) the Ad Hoc Group Advisors and (b) the DIP Agents, including Sidley Austin LLP, as legal counsel to the DIP Agents, which, in each case and without further order of, or application to, the Bankruptcy Court by such professionals, including, the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, shall be Allowed as an Administrative Claim upon occurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.

204.    "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued or executed pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.B of the Plan, in each case, subject to the reasonable consent of the Required Lenders.

205.    "*Restructuring Transactions Memorandum*" means the summary of transaction steps to complete the Restructuring Transactions contemplated by the Plan, the Sale Transaction Restructuring, if applicable, and/or the U.S. Equitization Restructuring, if applicable, which shall be (a) included in the Plan Supplement; and (b) consistent with the Plan.

206.    "*Rights Offering*" means, to the extent agreed by the Debtors and the Required Lenders, the distribution of Subscription Rights to the Rights Offering Offerees to purchase the Rights Offering Equity Interests on the terms set forth in the Rights Offering Documents.

207.    "*Rights Offering Backstop Commitment Agreement*" means that certain Rights Offering Backstop Commitment Agreement, if any, between certain Debtors and the Backstop Parties, as may be amended, modified, or supplement from time to time, in accordance with its terms, pursuant to which the Backstop Parties shall have agreed to backstop the Rights Offering, and which shall be in form and substance acceptable to the Required Lenders.

208.     "*Rights Offering Documents*" means, collectively, if any, the Rights Offering Backstop Commitment Agreement, the Rights Offering Procedures, and any and all other agreements, documents, and instruments delivered or entered into in connection with the Rights Offering, which shall be in form and substance reasonably acceptable to the Required Lenders.

209.     "*Rights Offering Equity Interests*" means the amount of ROW New Equity Interests, if any, to be set forth in the Rights Offering Documents, issued pursuant to the Rights Offering.

210.     "*Rights Offering Offerees*" means, to the extent there is a Rights Offering, Holders of DIP Claims, as of the Rights Offering Record Date.

211.     "*Rights Offering Participants*" means Holders of DIP Claims that duly subscribe for the Rights Offering Equity Interests, if applicable.

212.     "*Rights Offering Procedures*" means those certain rights offering procedures with respect to the Rights Offering, if any, that are consistent in all respects with, and shall contain, the terms and conditions set forth in the Rights Offering Backstop Commitment Agreement, and shall be consistent with applicable securities laws and otherwise in form and substance reasonably acceptable to the Debtors and the Required Lenders in all respects, as set forth in the Plan Supplement (if applicable).

213.     "*Rights Offering Record Date*" means the date acceptable to the Required Lenders and the Debtors to be set forth in the Rights Offering Documents.

214.     "*ROW Debtors*" means the Australian Debtors and the EUR Debtors.

215.     "*ROW Effective Date*" means the occurrence of the effective date with respect to the ROW Debtors, which may be the Effective Date.

216.     "*ROW New Equity Interests*" means the Equity Interests in Reorganized ROW TopCo to be issued pursuant to the Plan, including any Equity Interests issuable upon the exercise of the New Warrants.

217.     "*Sale Election Notice*" means a notice Filed in advance of the later of the Confirmation Hearing or applicable Sale Hearing indicating that the GC U.S. Debtors, with the consent of the Required Lenders, not to be unreasonably withheld, have elected to pursue the Sale Transaction Restructuring or the U.S. Asset Sales.

218.     "*Sale Equity*" means, in the event the Sale Transaction Restructuring under the Plan is structured through a sale of Interests, any Interest in any GC U.S. Debtor that is sold in connection with such Sale Transaction Restructuring, as specified in the Sale Transaction Documents.

219.     "*Sale Hearing*" means a hearing to consider the approval of any Sale Transaction Restructuring contemplated by any Winning Bid, which may be the Confirmation Hearing.

220.     "*Sale Order*" means one or more Bankruptcy Court orders, which may be the Confirmation Order, approving the Debtors' entry into one or more definitive purchase agreement(s) in connection with the Sale Transaction Restructuring, in each case, in form and substance reasonably acceptable to the Required Lenders.

221.     "*Sale Transaction Documents*" means the documents governing the Sale Transaction Restructuring, in each case, in form and substance reasonably acceptable to the Required Lenders.

222.     "*Sale Transaction Restructuring*" means one or more sales of all, substantially all, or a material portion of the GC U.S. Debtors' Estate assets pursuant to section 363 of the Bankruptcy Code or the Plan, including pursuant to a Credit Bid, which shall occur if any GC U.S. Debtors file the Sale Election Notice, in each case, subject to the reasonable consent of the Required Lenders.

223. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, in each case, in form and substance reasonably acceptable to the Required Lenders. The Schedule of Retained Causes of Action shall not include the UCC Settlement Avoidance Actions.

224. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto, in each case, in consultation with the Required Lenders.

225. "*SEC*" means the United States Securities and Exchange Commission.

226. "*Section 510(b) Claims*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of Law or contract.

227. "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

228. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

229. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, and the rules and regulations promulgated thereunder.

230. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

231. "*Senior Secured Deficiency Claims*" means any portion of an SFA Claim or a Swap Claim that is not a Secured Claim.

232. "*SFA*" means that certain Senior Facilities Agreement dated October 23, 2018 (as amended and restated by amendment and restatement agreements dated February 28, 2020 and March 19, 2020 and as further amended by an amendment letter dated October 1, 2021).

233. "*SFA Claims*" means any and all Claims against the Debtors arising under, derived from, or based upon the SFA, including pursuant to the DIP Order.

234. "*SFA Loans*" means the loans under the SFA.

235. "*Shareholder Lenders*" means, collectively, (a) Asia GCMIV Holdings II Pte. Ltd., as lender under the KKR Loan Agreement, and (b) Asia Pacific Healthcare Investments Limited, as lender under the APH Loan Agreement.

236. "*Shareholder Loan Claim*" means any Claim arising from the Shareholder Loans.

237. "*Shareholder Loans*" means, collectively, the loans arising under the KKR Loan Agreement and the APH Loan Agreement.

238. "*Special Committees*" means, collectively, the special committee of Genesis Care Pty Ltd., the special committee of Genesis Care Finance Pty Ltd, the special committee of GenesisCare USA Group Holdings, Inc., and the special committee of Genesis Specialist Care Pty Ltd.

239.     "*Subscription Rights*" means the non-certificated rights issued and distributed to the Holders of DIP Claims pursuant to the Rights Offering that will enable each holder thereof to purchase such holder's Pro Rata percentage of the Rights Offering Equity Interests, subject to dilution by the ROW New Equity Interests issued pursuant to the Management Incentive Plans and the exercise of the New Warrants, pursuant to and on the terms set forth in the Rights Offering Documents, including the Rights Offering Procedures (including any holder eligibility criteria set forth therein).

240.     "*Swap Agreements*" means, collectively, as may be amended, amended and restated, supplemented, or modified from time to time:   the ISDA 1992 Master Agreement dated as of October 25, 2018 between Morgan Stanley & Co. International PLC and Genesis Specialist Care Finance UK Limited; the ISDA 1992 Master Agreement dated as of November 19, 2018 between Bank of China Limited, Sydney Branch and Genesis Specialist Care Finance UK Limited; the ISDA 1992 Master Agreement dated as of May 15, 2020 between Bank of America, N.A. and GenesisCare USA Holdings, Inc. (f/k/a Orion Merger Sub, Inc.); the ISDA 1992 Master Agreement dated as of March 2, 2020 between Morgan Stanley Capital Services LLC and GenesisCare USA Holdings, Inc. (f/k/a Orion Merger Sub, Inc.); the ISDA 2002 Master Agreement dated as of October 7, 2021 between the Hong Kong and Shanghai Banking Corporation Limited and Genesis Specialist Care Finance UK Limited; and that certain intercreditor agreement dated as of October 23, 2018 between Lucid Agency Services Limited, as senior facility agent, TopCo, GC Finance, the lenders under the SFA, and certain other parties.

241.     "*Swap Claims*" means any and all Claims against the Debtors arising under, derived from, or based upon the Swap Agreements, including pursuant to the DIP Order.

242.     "*Takeback Facilities*" means, collectively, the AUS Takeback Facility, the EUR Takeback Facility, and the U.S. Takeback Facility.

243.     "*Takeback Facility Agents*" means, collectively, the AUS Takeback Facility Agents, the EUR Takeback Facility Agents, and the U.S. Takeback Facility Agents.

244.     "*Takeback Facility Amount*" means, collectively, the AUS Takeback Facility Amount plus the EUR Takeback Facility Amount plus the U.S. Takeback Facility Amount.

245.     "*Takeback Facility Credit Agreements*" means, collectively, the AUS Takeback Facility Credit Agreement, the EUR Takeback Facility Credit Agreement, and the U.S. Takeback Facility Credit Agreement.

246.     "*Takeback Facility Documents*" means, collectively, the AUS Takeback Facility Documents, the EUR Takeback Facility Documents, and the U.S. Takeback Facility Documents.

247.     "*Third-Party Release*" means the release set forth in Article VIII.D of the Plan.

248.     "*TopCo*" means Genesis Care Pty Limited.

249.     "*TopCo Management Incentive Plan*" means a management incentive plan for the Reorganized ROW Debtors, the terms and conditions of which shall be agreed upon by the New ROW Board, in each case, in form and substance acceptable to the Required Lenders.

250.     "*Transition Services Agreement(s)*" means, in the event of the Sale Transaction Restructuring, the transition services agreement(s) to which the Debtors, the Reorganized Debtors, and/or the Post Effective Date Debtors are party, in each case, in form and substance reasonably acceptable to the Required Lenders.

251.     "*UCC Settlement*" means the settlement with the Committee as set forth herein, which settlement is agreed to and supported by the Committee.

252.     "*UCC Settlement Avoidance Actions*" means any Preference Actions and other Avoidance Action claims held by the Debtors against any Holders of Class 5A Claims and any Holders of Class 5B Claims.

253.     "*U.S. Asset Sales*" means, in the event the U.S. Equitization Restructuring occurs and the Debtors and the Plan Sponsor agree to sell certain assets of the GC U.S. Debtors, one or more sales of a portion of the GC U.S. Debtors' Estate assets pursuant to section 363 of the Bankruptcy Code or the Plan, which shall occur if any GC U.S. Debtors file the Sale Election Notice, in each case, subject to the reasonable consent of the Required Lenders.

254.     "*U.S. Equitization Restructuring*" means the restructuring transaction pursuant to the Plan if the Sale Transaction Restructuring does not occur, pursuant to which, among other things, the Plan Sponsor shall receive 100% of the GC U.S. New Equity Interests in exchange for the Equity Purchase Price (if applicable), in each case, subject to the reasonable consent of the Required Lenders.

255.     "*U.S. New Money Exit Agent*" means any agent under the U.S. New Money Exit Facility Credit Agreement.

256.     "*U.S. New Money Exit Facility*" means, in the event the U.S. Equitization Restructuring occurs, the new money credit facility (if any) provided for under the U.S. New Money Exit Facility Credit Agreement.

257.     "*U.S. New Money Exit Facility Credit Agreement*" means the definitive credit agreement governing the U.S. New Money Exit Facility, a form of which shall be included in the Plan Supplement (if applicable).

258.     "*U.S. New Money Exit Facility Documents*" means, collectively, the U.S. New Money Exit Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the GC U.S. Debtors and the Required Lenders.

259.     "*U.S. New Money Exit Term Loans*" means the loans provided for under the U.S. New Money Exit Facility Credit Agreement, in form and substance acceptable to the GC U.S. Debtors and the Required Lenders.

260.     "*U.S. Takeback Facility*" means, in the event the U.S. Equitization Restructuring occurs, the credit facility provided for under the U.S. Takeback Facility Credit Agreement, if applicable.

261.     "*U.S. Takeback Facility Agent*" means any agent under the U.S. Takeback Facility Credit Agreement.

262.     "*U.S. Takeback Facility Amount*" means the total amount of U.S. Takeback Term Loans issued to Holders of Allowed DIP Claims.

263.     "*U.S. Takeback Facility Credit Agreement*" means, if applicable, the definitive credit agreement governing the U.S. Takeback Facility, a form of which shall be included in the Plan Supplement.

264.     "*U.S. Takeback Facility Documents*" means, if applicable, the U.S. Takeback Facility Credit Agreement and any and all security documents or other documents related thereto, in each case, in form and substance acceptable to the GC U.S. Debtors and the Required Lenders.

265.     "*U.S. Takeback Term Loans*" means the loans provided for under the U.S. Takeback Facility Credit Agreement, in form and substance acceptable to the GC U.S. Debtors and the Required Lenders.

266.     "*U.S. TopCo*" means GenesisCare USA Group Holdings Inc or such other entity as may be set forth in the Restructuring Transactions Memorandum.

267.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

268.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

269.     "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

270.    "*Unsubscribed Backstop Equity Interests*" means those Equity Interests (if any) that are not subscribed for by the Rights Offering Offerees and are instead required to be purchased by the Backstop Parties pursuant to the Rights Offering Backstop Commitment Agreement.

271.    "*Waterfall Recovery*" means distributions under the Plan in accordance with the priorities set forth in Article IV.B.2(b)(ii)A.

272.    "*Wind Down*" means, in the event of a (i) Sale Transaction Restructuring or (ii) if the U.S. Equitization Restructuring incorporates one or more U.S. Asset Sales, the wind down and dissolution as set forth in Article IV.B.2(a)(iii) or Article IV.B.1(n), respectively.

273.    "*Wind-Down Amount*" means Cash in an amount set forth in the Wind-Down Budget to be determined by the Debtors and the Required Lenders.

274.    "*Wind-Down Budget*" means that certain budget governing the fees, expenses, and disbursements required for the Wind Down.

275.    "*Winning Bid*" has the meaning ascribed to such term in the Bidding Procedures Order.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal Law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Applicable Effective Date may be taken on or as soon as reasonably practicable after the Applicable Effective Date.

D.      *Governing Law.*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of Laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated or formed under New York Law shall be governed by the Laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors (or any one or more of them) shall mean the Debtors and the Reorganized Debtors (or such one or more Debtor and Reorganized Debtor), as applicable, to the extent the context requires.

G.      *Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiently this Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

H.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, including the Plan Supplement, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS,
## PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS,

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *General Administrative Claims.*

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, an amount of Cash equal to the amount of such Allowed General Administrative Claim, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code in accordance with the following:  (1) if a General Administrative Claim is Allowed on or prior to the Applicable Effective Date, on the Applicable Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such General Administrative Claim is not Allowed as of the Applicable Effective Date, no later than thirty days after the date on which an order Allowing such General Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed General Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim without any further action by the Holders of such Allowed General Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable, and in each case, with the consent of the Required Lenders, not to be unreasonably withheld; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, requests for payment of General Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date.  **Holders of General Administrative Claims against the Bar Date Debtors that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates or their property and such Administrative Claims shall be deemed discharged as of the Applicable Effective Date without the need for any objection from the Debtors or Reorganized Debtors or any notice to or action, order or approval of the Bankruptcy Court or any other Entity.**  Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than ninety days after the Applicable Effective Date or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *Professional Fee Claims.*

1.      Final Fee Applications and Payment of Professional Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days after the ROW Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.  The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the ROW Effective Date.

2.      Professional Fee Escrow Account.

On the ROW Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the applicable Reorganized ROW Debtor without any further action or order of the Bankruptcy Court.

3.   Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Applicable Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Applicable Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.   Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and Reorganized Debtors, as applicable, shall pay, within ten Business Days after submission of a detailed invoice to the Debtors or Reorganized Debtors, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors or the Reorganized Debtors, as applicable.  If the Debtors or the Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or the Reorganized Debtors, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

C.   *DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreement.  Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of the Plan, pursuant to the U.S. Equitization Restructuring or the Sale Transaction Restructuring, as applicable, or other such treatment as contemplated by this Article II.C of the Plan on the Effective Date, all Liens and security interests granted to secure the DIP Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided, however* that in the event the ROW U.S. Effective Date occurs before the GC U.S. Effective Date, the DIP Credit Agreement will continue in full force and effect with respect to the relevant GC U.S. Debtors until the GC U.S. Effective Date but the aggregate principal amount of the DIP Claims thereunder shall be decreased by the principal amount of the DIP Claims thereunder that are 'refinanced' on a cashless basis by the AUS Takeback Facility and the EUR Takeback Facility, respectively.

Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed DIP Claim, each Holder of an Allowed DIP Claim shall, in accordance with the DIP Recovery Allocation, receive: its Pro Rata share of the (i) the DIP Equity Pool, subject to dilution by the ROW New Equity Interests issued pursuant to the Management Incentive Plans, the exercise of the New Warrants, the Rights Offering (if any), and the Put Option Premium (if any), (ii) the Exit Takeback Term Loans, (iii) Distributable Cash allocated to the DIP Claims, if any, pursuant to the Waterfall Recovery, (iv) the Subscription Rights, if any, and (v) in the event that the DIP Lenders are the Plan Sponsor, the GC U.S. New Equity Interests.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Restructuring Expenses.*

On the Applicable Effective Date, the Debtors or the Reorganized Debtors shall pay in full in Cash any outstanding Restructuring Expenses without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Applicable Effective Date.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Person, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Persons, or cause the transfer of any assets.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Persons after the Applicable Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | SFA Claims and Swap Claims | Impaired | Entitled to Vote |
| Class 4 | Shareholder Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5A | General Unsecured Claims against the ROW Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5B[2] | General Unsecured Claims against the GC U.S. Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 7A | Intercompany Interests in the ROW Debtors | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 7B | Intercompany Interests in the GC U.S. Debtors | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 8A | Existing TopCo Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8B | Existing GC U.S. TopCo Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, and such Holder, and in each case, with the consent of the Required Lenders.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Applicable Effective Date and the date such Claim or Interest becomes an Allowed Claim or an Allowed Interest, as applicable, or as soon as reasonably practicable thereafter.

1.    Class 1 – Other Secured Claims.

(a)      *Classification*:  Class 1 consists of all Other Secured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim against the Debtors agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Other Secured Claim, each Holder of an Allowed Other Secured Claim against the Debtors shall receive, at the option of the applicable Debtor with the consent of the Required Lenders:  (i) payment in full in Cash; (ii) Reinstatement of such Claim; or (iii) such other treatment rendering such Claim Unimpaired.

(c)      *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims against the Debtors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims against the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims.

(a)      *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtors agrees in writing to less favorable treatment, in exchange for the full and final

---

2    Pursuant to the UCC Settlement, Class 5B General Unsecured Claims shall be divided into separate sub-classes as set forth herein.

satisfaction, settlement, release, and discharge of its Other Priority Claim, each Holder of an Allowed Other Priority Claim against the Debtors shall receive, at the option of the applicable Debtor with the consent of the Required Lenders:  (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims against the Debtors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims against the Debtors are not entitled to vote to accept or reject the Plan.

3.     Class 3 – SFA Claims and Swap Claims.

(a)     *Classification*:  Class 3 consists of all SFA Claims and Swap Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed SFA Claim or Allowed Swap Claim agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its SFA Claim or Swap Claim, each Holder of an Allowed SFA Claim or Allowed Swap Claim shall receive its Pro Rata share of (i) the New Warrants and (ii) Distributable Cash allocated to the SFA Claim or Swap Claim, if any, pursuant to the Waterfall Recovery.

(c)     *Voting*:  Class 3 is Impaired under the Plan.  Therefore, Holders of SFA Claims and Holders of Swap Claims are entitled to vote to accept or reject the Plan.

4.     Class 4 – Shareholder Loan Claims.

(a)     *Classification*:  Class 4 consists of all Shareholder Loan Claims against TopCo.

(b)     *Treatment*:  Subject to section 1129(a)(7)(A)(ii) of the Bankruptcy Code, on the ROW Effective Date each Shareholder Loan Claim shall be discharged and released, and each Holder of a Shareholder Loan Claim shall not receive or retain any distribution, property, or other value on account of such Shareholder Loan Claim.

(c)     *Voting*:  Class 4 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Shareholder Loan Claims are not entitled to vote to accept or reject the Plan.

5.     Class 5A – General Unsecured Claims Against the ROW Debtors.

(a)     *Classification*:  Class 5A consists of all General Unsecured Claims against the ROW Debtors.

(b)     *Treatment*:  Each Holder of an Allowed General Unsecured Claim against the ROW Debtors shall receive either:

(i)     Reinstatement of such Allowed General Unsecured Claim pursuant to section 1124 of the Bankruptcy Code; or

(ii)    Payment in full in Cash on (a) the ROW Effective Date, or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.

(c)     *Voting*:  Class 5A is Unimpaired under the Plan.  Holders of Allowed General Unsecured Claims in Class 5A are conclusively deemed to have accepted the Plan pursuant to

section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6. <u>Class 5B – General Unsecured Claims Against the GC U.S. Debtors.</u>

    (a)    Class 5B-1 – 5B-1 General Unsecured Claims Against the GC U.S. Debtors.

        (i)    *Classification*:  Class 5B-1 consists of all 5B-1 General Unsecured Claims against the GC U.S. Debtors.

        (ii)    *Treatment*:  On the GC U.S. Effective Date, each Holder of an Allowed 5B-1 General Unsecured Claim against the GC U.S. Debtors shall receive its Pro Rata share of 100% of the interests in the GUC Trust.

        (iii)    *Voting*:  Class 5B-1 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of 5B-1 General Unsecured Claims against the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

    (b)    Class 5B-2 – 5B-2 General Unsecured Claims Against the GC U.S. Debtors.

        (i)    *Classification*:  Class 5B-2 consists of all 5B-2 General Unsecured Claims against the GC U.S. Debtors.

        (ii)    *Allowance*:  5B-2 General Unsecured Claims that are included on the Schedules as neither contingent, unliquidated, nor disputed, shall be Allowed at their Filed amounts to the extent the Claims are less than the Convenience Class Threshold.

        (iii)    *Treatment*:  On the GC U.S. Effective Date, each Holder of an Allowed 5B-2 General Unsecured Claim against the GC U.S. Debtors shall receive its Pro Rata share of the Convenience Class Amount funded from, and a reduction of, the GUC Cash Pool.  For the avoidance of doubt, Holders of Allowed 5B-2 General Unsecured Claims will only recover from the Convenience Class Amount and shall not recover from the remaining amount of the GUC Cash Pool.

        (iv)    *Voting*:  Class 5B-2 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of 5B-2 General Unsecured Claims against the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

    (c)    Class 5B-3 – 5B-3 General Unsecured Claims Against the GC U.S. Debtors.

        (i)    *Classification*:  Class 5B-3 consists of all 5B-3 General Unsecured Claims against the GC U.S. Debtors.

        (ii)    *Treatment*:  On the GC U.S. Effective Date, in full and final satisfaction and release of any and all Allowed 5B-3 General Unsecured Claims Against the GC U.S. Debtors shall be entitled to pursue applicable insurance coverage, and the automatic stay and any injunction provided for in the Plan shall be lifted or modified to allow all the prosecution, defense, settlement, and administration of such Claim solely against any applicable insurer.

            All such 5B-3 General Unsecured Claims shall be entitled to payment from the applicable insurance policies only, and shall not be entitled to a recovery from the GUC Trust, including the GUC Cash Pool, or the Convenience Class Amount.

(iii)     *Voting*:  Class 5B-3 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of 5B-3 General Unsecured Claims against the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

7.   Class 6 – Intercompany Claims.

(a)     *Classification*:  Class 6 consists of all Intercompany Claims against the Debtors.

(b)     *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Allowed Intercompany Claim against the Debtors shall be Reinstated, converted to equity, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the applicable Debtors with the consent of the Required Lenders.

(c)     *Voting*:  Class 6 is Unimpaired if the Allowed Intercompany Claims in Class 6 are Reinstated or Impaired if the Allowed Intercompany Claims in Class 6 are converted to equity or otherwise set off, settled, distributed, contributed, cancelled or released.  Holders of Intercompany Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.   Class 7A – Intercompany Interests in the ROW Debtors.

(a)     *Classification*:  Class 7A consists of all Intercompany Interests in the ROW Debtors.

(b)     *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Intercompany Interest in the ROW Debtors shall be Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the applicable ROW Debtors with the consent of the Required Lenders.

(c)     *Voting*:  Class 7A is Unimpaired if the Allowed Intercompany Interests in Class 7A are Reinstated or Impaired if the Allowed Intercompany Interests in the ROW Debtors are converted to equity or otherwise set off, settled, distributed, contributed, cancelled or released.  Holders of Intercompany Interests in the ROW Debtors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests in the ROW Debtors are not entitled to vote to accept or reject the Plan.

9.   Class 7B – Intercompany Interests in the GC U.S. Debtors.

(a)     *Classification*:  Class 7B consists of all Intercompany Interests in the GC U.S. Debtors.

(b)     *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Intercompany Interest in GC U.S. Debtors shall:

(i)     If the U.S. Equitization Restructuring occurs, on the GC U.S. Effective Date, each Intercompany Interest in the GC U.S. Debtors shall be Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the applicable GC U.S. Debtors with the consent of the Plan Sponsor; or

(ii)     If the Sale Transaction Restructuring occurs, each Intercompany Interest in the GC U.S. Debtors shall (A) be sold pursuant to the applicable Sale Transaction Documents, and as set forth in the Plan Supplement, or (B) shall be Reinstated,

distributed, contributed, set off, settled, cancelled, and released, or otherwise addressed at the option of the applicable GC U.S. Debtors and the Required Lenders.

(c)     *Voting*:  Class 7B is Unimpaired if the Allowed Intercompany Interests in Class 7B are Reinstated or Impaired if the Allowed Intercompany Interests are converted to equity or otherwise set off, settled, distributed, contributed, cancelled, or released.  Holders of Intercompany Interests in the GC U.S. Debtors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests in the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

10.  Class 8A – Existing TopCo Interests.

(a)     *Classification*:  Class 8A consists of all Existing TopCo Interests.

(b)     *Treatment*:  On the ROW Effective Date, all Existing TopCo Interests shall be:

(i)     transferred to Reorganized ROW TopCo or such other Entity or Entities as specified in the Restructuring Transactions Memorandum;

(ii)     cancelled, released, and extinguished without any distribution, and will be of no further force or effect; or

(iii)     any combination of (i) and (ii), as specified in the Restructuring Transactions Memorandum, and each Holder of an Existing TopCo Interest shall not receive or retain any distribution, property, or other value on account of such Existing TopCo Interest unless otherwise provided in the Restructuring Transactions Memorandum.

(c)     *Voting*:  Class 8A is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Existing TopCo Interests are not entitled to vote to accept or reject the Plan.

11.  Class 8B – Existing U.S. TopCo Interests.

(a)     *Classification*:  Class 8B consists of all Existing Interests in U.S. TopCo.

(b)     *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Existing Interest in U.S. TopCo shall:

(i)     If the U.S. Equitization Restructuring occurs, on the GC U.S. Effective Date, without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor, all Existing Interests in U.S. TopCo shall be cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Interest in U.S. TopCo shall not receive or retain any distribution, property, or other value on account of such Existing Interest in U.S. TopCo;

(ii)     If the Sale Transaction Restructuring occurs, each Existing Interest in U.S. TopCo shall be Reinstated, distributed, contributed, set off, settled, cancelled and

released, or otherwise addressed with the consent of the Required Lenders; or

      (iii)    As otherwise specified in the Restructuring Transactions Memorandum.

    (c)    *Voting*:  Class 8B is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Existing Interests in the GC U.S. Debtors are not entitled to vote to accept or reject the Plan.

12.  Class 9 – Section 510(b) Claims.

    (a)    *Classification*:  Class 9 consists of all Section 510(b) Claims against the Debtors.

    (b)    *Treatment*:  On the Applicable Effective Date, all Section 510(b) Claims against the Debtors shall be discharged and released, and each Holder of a Section 510(b) Claim against the Debtors shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

    (c)    *Voting*:  Class 9 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Section 9 Claims against the Debtors are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing herein shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.    *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of ROW New Equity Interests or the Plan Sponsor, as applicable, and in exchange for the Debtors' and the applicable Reorganized Debtor's agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more Classes of Impaired Claims.  The Debtors may seek Confirmation of the Plan pursuant to

section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims and Interests.*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Applicable Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.     *Restructuring Transactions.*

1.     <u>U.S. Equitization Restructuring</u>.

If the U.S. Equitization Restructuring occurs for the GC U.S. Debtors, the following provisions shall govern.

(a)     Reorganized GC U.S. Debtors.

On the GC U.S. Effective Date, the new U.S. Board shall be established, and each Reorganized GC U.S. Debtor shall adopt its respective New Organizational Documents. The Reorganized GC U.S. Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan, in each case, subject to the consent of the Required Lenders.

(b)        Reorganized ROW Debtors.

On the ROW Effective Date, the New ROW Board shall be established, and each Reorganized ROW Debtor shall adopt its respective New Organizational Documents, in each case, in form and substance acceptable to the Required Lenders. The Reorganized ROW Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan, in each case, subject to the consent of the Required Lenders.

(c)        Sources of Consideration for Plan Distribution.

(i)        New Money Exit Facilities.

On the Applicable Effective Date, if the Debtors and the Required Lenders agree that the New Money Exit Facilities are necessary or desirable, (A) the Reorganized Australian Debtors shall enter into the AUS New Money Exit Facility, the terms of which will be set forth in the AUS New Money Exit Facility Documents, (B) the Reorganized EUR Debtors shall enter into the EUR New Money Exit Facility, the terms of which will be set forth in the EUR New Money Exit Facility Documents, and (C) if applicable, certain or all of the Reorganized GC U.S. Debtors shall enter into the U.S. New Money Exit Facility, the terms of which shall be set forth in the U.S. New Money Exit Facility Documents. Confirmation of the Plan shall be deemed approval of the AUS New Money Exit Facility, the EUR New Money Exit Facility, and the U.S. New Money Exit Facility, including the AUS New Money Exit Facility Documents, the EUR New Money Exit Facility Documents, and the U.S. New Money Exit Facility Documents respectively, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the applicable Reorganized ROW Debtors or Reorganized GC U.S. Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the applicable Reorganized ROW Debtors or Reorganized GC U.S. Debtors to enter into and execute the applicable New Money Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the applicable New Money Exit Facility.

On the Applicable Effective Date, all of the Liens and security interests to be granted in accordance with the New Money Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the respective New Money Exit Facility Documents, (c) shall be deemed automatically perfected on the Applicable Effective Date, subject only to such Liens and security interests as may be permitted under the New Money Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Australian Debtors, the Reorganized EUR Debtors, and the Reorganized GC U.S. Debtors, respectively, and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(ii)        Takeback Facilities.

On the Applicable Effective Date, (A) the Reorganized Australian Debtors shall enter into the AUS Takeback Facility, the terms of which will be set forth in the AUS Takeback Facility Documents, (B) the Reorganized EUR Debtors shall enter into the EUR Takeback Facility, the terms of which will be set forth in the EUR Takeback Facility Documents, and (C) if applicable, certain or all of the Reorganized GC U.S. Debtors shall enter into the U.S. Takeback Facility, the terms of which shall be set forth in the U.S. Takeback Facility Documents. The Takeback Facilities shall rank junior in priority to the New Money Exit Facilities. Confirmation of the Plan shall be deemed approval of the AUS Takeback Facility, the EUR Takeback Facility, and, if applicable, the U.S. Takeback Facility, including the AUS Takeback Facility Documents, the EUR Takeback Facility Documents, and, if applicable, the U.S. Takeback Facility Documents respectively, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the applicable Reorganized ROW Debtors or Reorganized

33

GC U.S. Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the applicable Reorganized ROW Debtors or Reorganized GC U.S. Debtors to enter into and execute the applicable Takeback Facility Documents and such other documents as may be required to effectuate the treatment afforded by the applicable Takeback Facility. Execution of any Takeback Facility Credit Agreement by the applicable Takeback Facility Agent shall be deemed to bind all Holders of DIP Claims as if each such Holder had executed such Takeback Facility Credit Agreement with appropriate authorization.

On the Applicable Effective Date, all of the Liens and security interests to be granted in accordance with the Takeback Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the respective Takeback Facility Documents, (c) shall be deemed automatically perfected on the Applicable Effective Date, subject only to such Liens and security interests as may be permitted under the respective Takeback Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Australian Debtors, the Reorganized EUR Debtors, and the Reorganized GC U.S. Debtors respectively, and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(iii)    New Equity Investment.

On the GC U.S. Effective Date, in the event the Plan Sponsor is not the Holders of Allowed DIP Claims, the Plan Sponsor shall purchase the Plan Sponsor Equity Shares in exchange for the Equity Purchase Price committed in the Winning Bid pursuant to the Plan Sponsor Agreement.

(iv)    ROW New Equity Interests.

Reorganized ROW TopCo shall be authorized to issue a certain number of shares of ROW New Equity Interests pursuant to its New Organizational Documents (to the extent applicable). On the ROW Effective Date, the Reorganized ROW Debtors shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of ROW New Equity Interests issued pursuant to the Plan and, to the extent applicable, the Rights Offering and the Rights Offering Backstop Commitment Agreement, shall be, to the extent applicable, duly authorized, validly issued, fully paid, and non-assessable. The issuance of ROW New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by the Holder of any Claims or Interests, as applicable. Each distribution and issuance referred to in Article IV.B.1(c)(iv) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

(v)    Rights Offering.

If the Debtors and the Required Lenders in good faith determine that a Rights Offering is necessary or desirable, the Debtors shall distribute the Subscription Rights to the Rights Offering Offerees on behalf of the Reorganized Debtors as set forth in the Plan and the Rights Offering Documents. The Rights Offering (if any) shall be conducted and consummated on the terms and conditions of, and in accordance with the Rights Offering Procedures (if any).

Upon exercise of the Subscription Rights by the Rights Offering Participants pursuant to the terms of the Rights Offering Documents (including the Rights Offering Procedures) and the Plan, the Reorganized Debtors shall

34

be authorized to issue the Rights Offering Equity Interests in accordance with the Rights Offering Documents and the Plan.

The Rights Offering (if any) may be backstopped by the Backstop Parties on the terms set forth in the Rights Offering Backstop Commitment Agreement, pursuant to which the Backstop Parties agree to purchase any Unsubscribed Backstop Equity Interests by the Rights Offering Participants at the per share purchase price set forth in the Rights Offering Backstop Commitment Agreement. The Rights Offering Equity Interests shall be subject to dilution on account of the ROW New Equity Interests issued pursuant to the Management Incentive Plans, and the exercise of the New Warrants.

The Subscription Rights will be offered, issued, and distributed under the Plan without registration under the Securities Act, or any state law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, and to the extent such exemption is not available, then the Subscription Rights will be issued and distributed under the Plan in reliance upon the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S, or another available exemption from registration under the Securities Act. On the Effective Date, the rights and obligations of the Debtors under the Rights Offering Backstop Commitment Agreement shall vest in the Reorganized ROW Debtors, as applicable.

In addition, on the ROW Effective Date, any ROW New Equity Interests to be issued on account of the Put Option Premium shall be distributed to the Backstop Parties under and as set forth in the Rights Offering Backstop Commitment Agreement.

(vi)     AUS Holdco New Equity Interests.

Reorganized AUS Holdco shall be authorized to issue a certain number of shares of AUS Holdco New Equity Interests pursuant to its New Organizational Documents. On or after the ROW Effective Date, Reorganized AUS Holdco may issue such securities, notes, instruments, certificates, and other documents as it determines from time to time in accordance with its New Organizational Documents (as amended or replaced from time to time) and relevant Law.

All of the shares of AUS Holdco New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of AUS Holdco New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable. Each distribution and issuance referred to in Article IV.B.1(c)(v) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

(vii)     EUR Holdco New Equity Interests.

Reorganized EUR Holdco shall be authorized to issue a certain number of shares of EUR Holdco New Equity Interests pursuant to its New Organizational Documents. On the ROW Effective Date, Reorganized EUR Holdco shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of EUR Holdco New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of EUR Holdco New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable. Each distribution and issuance referred to in Article IV.B.1(c)(v) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

(viii)     GC U.S. New Equity Interests.

Reorganized GC U.S. TopCo shall be authorized to issue a certain number of shares of GC U.S. New Equity Interests pursuant to its New Organizational Documents.  On the GC U.S. Effective Date, the GC U.S. Debtors shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of GC U.S. New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of GC U.S. New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable.  Each distribution and issuance referred to in Article IV.B.1(c)(viii) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

(ix)     Issuance of the New Warrants.

On the ROW Effective Date, Reorganized ROW TopCo will issue the New Warrants only to the extent required to provide for distributions to Holders of SFA Claims and Holders of Swap Claims, as contemplated by this Plan.  All of the New Warrants (including, for the avoidance of doubt, any New Equity Interests issued upon exercise of the New Warrants) issued pursuant to the Plan shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable, validly issued, fully paid, and non-assessable.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s).

(d)     Corporate Existence.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, Plan Support Agreement, or the Plan Supplement, each GC U.S. Debtor, as Reorganized GC U.S. Debtors, shall continue to exist on and after the Applicable Effective Date and each ROW Debtor, as Reorganized ROW Debtors, shall continue to exist on and after the Applicable Effective Date as a separate legal Entity with all the powers available to such Entity pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Applicable Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended, amended and restated, or replaced under the Plan or otherwise, including pursuant to both the Organizational Documents and the New Organizational Documents, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan, in each case, in form and substance acceptable to the Required Lenders, and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law).  On or after the Applicable Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, in each case, subject to the consent of the Required Lenders.  On or after the Applicable Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated, in each case, subject to the consent of the Required Lenders, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

(e)     Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum and Article VIII hereof), on the Applicable Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the GC U.S. Debtors and the ROW Debtors pursuant to the Plan shall vest in each Reorganized GC U.S. Debtor and Reorganized ROW Debtor, respectively, as applicable, free and clear of all Liens, Claims, charges, other

encumbrances, and interests.  On and after the Applicable Effective Date, except as otherwise provided in the Plan, including Article VIII hereof, each Reorganized Debtor, as applicable, may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

(f)      Release of Liens.

Except as otherwise expressly provided herein or in the Confirmation Order, on the Applicable Effective Date, all Liens on any property of any GC U.S. Debtors or ROW Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any GC U.S. Debtor or ROW Debtor shall be automatically discharged and released.

(g)      Corporate Action.

Upon the Applicable Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects without any further corporate or equity holder action, including:  (1) selection of the directors, officers, or managers for the Reorganized GC U.S. Debtors and Reorganized ROW Debtors; (2) the distribution of the GC U.S. New Equity Interests; (3) the authorization, issuance, and distribution of the ROW New Equity Interests and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (4) the authorization, issuance and distribution of the AUS Holdco New Equity Interests; (5) the authorization, issuance, and distribution of the EUR Holdco New Equity Interests; (6) implementation of the Restructuring Transactions, including the formation of any Entities required pursuant thereto; (7) entry into the New Money Exit Facility Documents; (8); entry into the Takeback Facility Documents; (9) all other actions contemplated under the Plan (whether to occur before, on, or after the Applicable Effective Date); (10) adoption, execution, and/or filing of the New Organizational Documents; (11) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (12) the reservation of the DIP Equity Pool; and (13) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Applicable Effective Date).   All matters provided for in the Plan involving the corporate structure of the GC U.S. Debtors or the Reorganized GC U.S. Debtors and the ROW Debtors or the Reorganized ROW Debtors, as applicable, and any corporate, partnership, limited liability company or other governance action required by the GC U.S. Debtors or the Reorganized GC U.S. Debtors, and the ROW Debtors or the Reorganized ROW Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further corporate or other action by the security or equity holders, members, directors, officers, or managers of the GC U.S. Debtors or the Reorganized GC U.S. Debtors, as applicable and the ROW Debtors or the Reorganized ROW Debtors, as applicable.  On or (as applicable) prior to the Applicable Effective Date, the appropriate officers of the GC U.S. Debtors or the Reorganized GC U.S. Debtors, as applicable, and the ROW Debtors or the Reorganized ROW Debtors, as applicable shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized GC U.S. Debtors or the Reorganized ROW Debtors, as applicable, including the GC U.S. New Equity Interests, the ROW New Equity Interests, the AUS Holdco New Equity Interests, the EUR Holdco New Equity Interests, the New Organizational Documents, the New Money Exit Facilities, the New Money Exit Facility Documents, the Takeback Facilities, the Takeback Facility Documents, the Rights Offering Documents (if any), and any and all other agreements, documents, securities, and instruments relating to the foregoing.   The authorizations and approvals contemplated by this Article IV.B.1(g) shall be effective notwithstanding any requirements under non-bankruptcy law.

(h)      New Organizational Documents.

On or immediately prior to the GC U.S. Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized GC U.S. Debtors.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the applicable Reorganized GC U.S. Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization.  The New Organizational

Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the GC U.S. Effective Date, the applicable Reorganized GC U.S. Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the applicable Reorganized GC U.S. Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

On or immediately prior to the ROW Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized ROW Debtors.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the applicable Reorganized ROW Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization.  The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the ROW Effective Date, the applicable Reorganized ROW Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the applicable Reorganized ROW Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

(i)      Directors and Officers of the Reorganized GC U.S. Debtors.

As of the GC U.S. Effective Date, the terms of the current directors of the board of directors of U.S. TopCo shall expire, and the new directors and officers of the Reorganized GC U.S. Debtors shall be appointed.  Except to the extent that a current director on the board of directors of U.S. TopCo is designated to serve as a director, manager, or sole manager of a Reorganized GC U.S. Debtor, the current directors on the board of directors of U.S. TopCo prior to the GC U.S. Effective Date, in their capacities as such, shall have no continuing obligations to U.S. TopCo on or after the GC U.S. Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a director of U.S. TopCo on the GC U.S. Effective Date.  Each of the directors, managers, sole managers and officers of each of the Reorganized GC U.S. Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized GC U.S. Debtor and may be designated, replaced, or removed in accordance with such New Organizational Documents.

(j)      Directors and Officers of the Reorganized ROW Debtors.

As of the ROW Effective Date, the terms of the current members of the board of directors of TopCo expire, and the new directors and officers of the Reorganized ROW Debtors shall be appointed.  Except to the extent that a current director on the board of directors of TopCo is designated to serve as a director, manager, or sole manager of a Reorganized ROW Debtor, the current directors on the board of directors of TopCo prior to the ROW Effective Date, in their capacities as such, shall have no continuing obligations to TopCo on or after the ROW Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a director of TopCo on the ROW Effective Date; *provided* that each disinterested director of the Debtors shall retain his/her respective authority following the ROW Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at his/her respective authority and direction in accordance with the terms of the Plan.  Each disinterested director of the Debtors shall not have any of his/her respective privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Reorganized ROW Debtors, the Plan Sponsor, or any other Entity without such director's prior written consent; *provided, however*, the Reorganized ROW Debtors shall have access to the ROW Debtors' books and records, including all reports and related documents prepared by the respective legal advisors to the Special Committees in connection with their respective investigations if such reports were provided to the full board of directors of TopCo; receipt of such materials by the Reorganized ROW Debtors shall not be deemed a breach of any applicable privilege or confidentiality obligations.  Each disinterested director of the Debtors retains the right to review, approve, and make decisions, as well as to file papers and be heard before the Bankruptcy Court on all matters under such director's continuing authority.  Each of the directors, managers, sole managers and officers of each of the Reorganized ROW Debtors shall serve pursuant to the terms of the applicable

New Organizational Documents of such Reorganized ROW Debtor and may be designated, replaced, or removed in accordance with such New Organizational Documents.

(k)     Effectuating Documents; Further Transactions.

Prior to the Applicable Effective Date, the Debtors are, and on and after the Applicable Effective Date, the applicable Reorganized Debtors, and their respective officers, directors, members, and managers (as applicable), are, authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the applicable Reorganized Debtors, without the need for any approvals, authorizations, actions, notices or consents except for those expressly required pursuant to the Plan.

(l)     Employee Matters.

Unless otherwise provided herein, and subject to Article V of the Plan, the Reorganized GC U.S. Debtors, shall:  (a) assume all employment agreements, indemnification agreements, or other agreements with current and former members of any Governing Body, employees, officers, directors, or managers of the GC U.S. Debtors; or (b) enter into new agreements with such persons on terms and conditions acceptable to the Reorganized GC U.S. Debtors, the Plan Sponsor, and such person; *provided, however*, notwithstanding the foregoing, if the DIP Lenders are the Plan Sponsor, then all such assumptions and any new agreements shall be subject to the Required Lenders' consent, not to be unreasonably withheld.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the GC U.S. Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

Unless otherwise provided herein, and subject to Article V of the Plan, the Reorganized ROW Debtors, shall: (a) assume all employment agreements, indemnification agreements, or other agreements with current and former members of any Governing Body, employees, officers, directors, or managers of the ROW Debtors; or (b) enter into new agreements with such persons on terms and conditions acceptable to the Reorganized ROW Debtors, the Required Lenders, and such person; *provided, however*, notwithstanding the foregoing, all such assumptions and any new agreements shall be subject to the Required Lenders' consent, not to be unreasonably withheld.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the ROW Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

(m)     Preservation of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof or pursuant to a Final Order (including the DIP Order), each Reorganized GC U.S. Debtor and Reorganized ROW Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (other than the UCC Settlement Avoidance Actions) of the GC U.S. Debtors or the ROW Debtors, as applicable, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized GC U.S. Debtors' or the Reorganized ROW Debtors' rights, as applicable, to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Applicable Effective Date, other than the Causes of Action released by the GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof or pursuant to a Final Order (including the DIP Order), which, in each case, shall be deemed released and waived by the GC U.S. Debtors and the Reorganized GC U.S. Debtors or the ROW Debtors and the Reorganized ROW Debtors, as applicable, as of the Applicable Effective Date.

The Reorganized GC U.S. Debtors or the Reorganized ROW Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized GC U.S. Debtors or the Reorganized ROW Debtors, as applicable.  **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the GC U.S. Debtors or the ROW Debtors or the Reorganized GC U.S.**

Debtors or the Reorganized ROW Debtors, as applicable, will not pursue any and all available Causes of Action of the GC U.S. Debtors or the ROW Debtors, as applicable, against it.  Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the DIP Order), the GC U.S. Debtors and the ROW Debtors and the Reorganized GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof or pursuant to a Final Order (including the DIP Order).  Any objection to this Article IV.B.1(m) that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized GC U.S. Debtor and any Reorganized ROW Debtor, as applicable, without the need for any objection or responsive pleading by the applicable Reorganized GC U.S. Debtors or the Reorganized ROW Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  The Reorganized GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the GC U.S. Debtors or the ROW Debtors or Reorganized GC U.S. Debtors or the Reorganized ROW Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the GC U.S. Debtors or the ROW Debtors, as applicable, against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the DIP Order), the Reorganized GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, reserve and shall retain such Causes of Action of the GC U.S. Debtors and the ROW Debtors, as applicable, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the DIP Order), any Causes of Action that a GC U.S. Debtor or a ROW Debtor may hold against any Entity shall vest in the Reorganized GC U.S. Debtors or the ROW Debtors, as applicable, except as otherwise expressly provided in the Plan, including Article VIII hereof.  The applicable Reorganized GC U.S. Debtors and Reorganized ROW Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized GC U.S. Debtors and the Reorganized ROW Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

(n)      Wind Down.

In the event the U.S. Equitization Restructuring occurs and it incorporates one or more U.S. Asset Sales, on and after the GC U.S. Effective Date, the Reorganized GC U.S. Debtors will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Reorganized GC U.S. Debtors shall have the power and authority to take any action necessary to wind down and dissolve the GC U.S. Wind-Down Debtors and/or their assets, in each case, in accordance with the Wind-Down Budget.

As soon as practicable after the GC U.S. Effective Date, the Reorganized GC U.S. Debtors shall:  (i) comply with, and abide by, the terms of the Purchase Agreement(s) and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the GC U.S. Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as may be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Reorganized GC U.S. Debtors without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the GC U.S. Effective Date, except with respect to Reorganized GC U.S. Debtors as set forth herein, the GC U.S. Wind-Down Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the GC U.S. Wind-Down Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any

sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan all Interests in the GC U.S. Wind-Down Debtors, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the GC U.S. Effective Date.  For the avoidance of doubt, notwithstanding the GC U.S. Wind-Down Debtors' dissolution, the GC U.S. Wind-Down Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the GC U.S. Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Reorganized GC U.S. Debtors.

2. <u>Sale Transaction Restructuring</u>.

In the event the Sale Transaction Restructuring occurs, the Sale Transaction Restructuring will be effectuated either by (a) one or more equity sale(s) under the Plan or (b) one or more asset sale(s) pursuant to section 363 of the Bankruptcy Code or the Plan, in each case, with such Sale Transaction Documents to be set forth in the Plan Supplement or Filed with the Bankruptcy Court.

(a) GC U.S. Debtors.

If the Sale Transaction Restructuring occurs, the following provisions shall govern with respect to the GC U.S. Debtors:

(i) Vesting of Assets.

Except as otherwise provided in the Confirmation Order, the Plan (including the Restructuring Transactions Memorandum and Article VIII hereof), or the Purchase Agreement(s), as applicable, on the GC U.S. Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property retained by any of the GC U.S. Debtors pursuant to the Plan or the Purchase Agreement(s) shall vest in each respective Post Effective Date Debtor, as applicable, free and clear of all Liens, Claims, charges, other encumbrances, and interests for the purposes of winding down the Post Effective Date Debtors, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the GC U.S. Effective Date, except as otherwise provided in the Purchase Agreement(s) or the Plan, including Article VIII hereof, each Post Effective Date Debtor, as applicable, may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

(ii) Post Effective Date Debtors.

Following the sale of certain assets of the GC U.S. Debtors under the Plan or the Sale Order(s), on and after the GC U.S. Effective Date, the Post Effective Date Debtors shall continue in existence for purposes of (a) winding down the GC U.S. Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) funding distributions in accordance with the Wind-Down Budget, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreement(s) and Transition Services Agreement(s), if any, and (h) administering the Plan in an efficacious manner, in each case, with the consent of the Required Lenders.  The Post Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the GC U.S. Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, DIP Orders (as applicable) and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in

each case without the need or requirement for a plan administrator to file motions or substitutions of parties or counsel in each such matter.

(iii)   Wind Down.

In the event the Sale Transaction Restructuring occurs, on and after the GC U.S. Effective Date, the Post Effective Date Debtors will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Post Effective Date Debtors shall have the power and authority to take any action necessary to wind down and dissolve the GC U.S. Debtors and/or their assets.

As soon as practicable after the GC U.S. Effective Date, the Post Effective Date Debtors shall:  (i) comply with, and abide by, the terms of the Purchase Agreement(s) and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the GC U.S. Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as may be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Post Effective Date Debtors without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the GC U.S. Effective Date, except with respect to Post Effective Date Debtors as set forth herein, the GC U.S. Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the GC U.S. Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan all Interests in the GC U.S. Debtors, unless otherwise set forth in an applicable Purchase Agreement, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the GC U.S. Effective Date.  For the avoidance of doubt, notwithstanding the G.C. US Debtors' dissolution, the GC U.S. Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the GC U.S. Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Post Effective Date Debtors.

(b)   ROW Debtors and GC U.S. Debtors.

The following provisions shall govern for the ROW Debtors and GC U.S. Debtors, as applicable.

(i)   Reorganized ROW Debtors and Post Effective Date Debtors.

On the GC U.S. Effective Date, the New Board shall be established, and each Reorganized ROW Debtor and each Post Effective Date Debtor shall adopt its New Organizational Documents.  Each Reorganized ROW Debtor and each Post Effective Date Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan, in each case, subject to the consent of the Required Lenders.

(ii)   Priority Waterfall and Sources of Consideration for Plan Distribution.

A.   Priority Waterfall.

Distributions to Holders of Allowed DIP Roll-Up Claims, Allowed SFA Claims, and Allowed Swap Claims will be funded in part from Distributable Cash.  All Distributable Cash shall be allocated as follows:  (1) first, to Holders of Allowed DIP Roll-Up Claims, along with the other forms of recovery to Holders of Allowed DIP Roll-Up Claims set forth in Article II.C, until such Claims are paid in full; and (2) second, to Holders of Allowed SFA Claims and Holders of Allowed Swap Claims (the "Waterfall Recovery").

42

Notwithstanding anything to the contrary in this Plan, on the Applicable Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Applicable Effective Date shall vest in the Reorganized Debtors or the Post Effective Date Debtors, as applicable.

B.      New Money Exit Facilities.

On the ROW Effective Date, if the Debtors and the Required Lenders agree that the New Money Exit Facilities are necessary or desirable, (1) the Reorganized Australian Debtors shall enter into the AUS New Money Exit Facility, the terms of which will be set forth in the AUS New Money Exit Facility Documents and (2) the Reorganized EUR Debtors shall enter into the EUR New Money Exit Facility, the terms of which will be set forth in the EUR New Money Exit Facility Documents.  Confirmation of the Plan shall be deemed approval of the AUS New Money Exit Facility and the EUR New Money Exit Facility, including the respective New Money Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the applicable Reorganized ROW Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the applicable Reorganized ROW Debtors to enter into and execute the applicable New Money Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the applicable New Money Exit Facility.

On the ROW Effective Date, all of the Liens and security interests to be granted in accordance with the New Money Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the applicable New Money Exit Facility Documents, (c) shall be deemed automatically perfected on the ROW Effective Date, subject only to such Liens and security interests as may be permitted under the applicable New Money Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Australian Debtors and the Reorganized EUR Debtors, respectively, and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

C.      Takeback Facilities.

On the ROW Effective Date, (1) the Reorganized Australian Debtors shall enter into the AUS Takeback Facility, the terms of which will be set forth in the AUS Takeback Facility Documents and (2) the Reorganized EUR Debtors shall enter into the EUR Takeback Facility, the terms of which will be set forth in the EUR Takeback Facility Documents.  Confirmation of the Plan shall be deemed approval of the AUS Takeback Facility and the EUR Takeback Facility, including the respective Takeback Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the applicable Reorganized ROW Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the applicable Reorganized Debtors to enter into and execute the applicable Takeback Facility Documents and such other documents as may be required to effectuate the treatment afforded by the applicable Takeback Facility.  Execution of any Takeback Facility Credit Agreement by the applicable Takeback Facility Agent shall be deemed to bind all Holders of DIP Roll-Up Claims as if each such Holder had executed such Takeback Facility Credit Agreement with appropriate authorization.

On the ROW Effective Date, all of the Liens and security interests to be granted in accordance with the Takeback Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the applicable Takeback Facility Documents, (c) shall be deemed automatically perfected on the ROW Effective Date, subject only to such Liens and security interests as may be permitted under the applicable Takeback Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute

preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Australian Debtors and the Reorganized EUR Debtors, respectively, and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

D.      Cash on Hand.

On the Applicable Effective Date, the Reorganized Debtors shall fund Cash distributions under the Plan, in whole or in part, with (1) Cash on hand and (2) Cash consideration received by the GC U.S. Debtors pursuant to the Sale Transaction Restructuring.

E.      ROW New Equity Interests.

Reorganized ROW TopCo shall be authorized to issue a certain number of shares of ROW New Equity Interests pursuant to its New Organizational Documents (to the extent applicable).  On the ROW Effective Date, the Reorganized ROW Debtors shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of ROW New Equity Interests issued pursuant to the Plan and, to the extent applicable, the Rights Offering and the Rights Offering Backstop Commitment Agreement, shall be, to the extent applicable, duly authorized, validly issued, fully paid, and non-assessable.  The issuance of ROW New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable.  Each distribution and issuance referred to in Article IV.B.1(c)(iv) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

F.      Rights Offering.

If the Debtors and the Required Lenders in good faith determine that a Rights Offering is necessary or desirable, the Debtors shall distribute the Subscription Rights to the Rights Offering Offerees on behalf of the Reorganized Debtors as set forth in the Plan and the Rights Offering Documents.  The Rights Offering (if any) shall be conducted and consummated on the terms and conditions of, and in accordance with the Rights Offering Procedures (if any).

Upon exercise of the Subscription Rights by the Rights Offering Participants pursuant to the terms of the Rights Offering Documents (including the Rights Offering Procedures) and the Plan, the Reorganized Debtors shall be authorized to issue the Rights Offering Equity Interests in accordance with the Rights Offering Documents and the Plan.

The Rights Offering (if any) may be backstopped by the Backstop Parties on the terms set forth in the Rights Offering Backstop Commitment Agreement, pursuant to which the Backstop Parties agree to purchase any Unsubscribed Backstop Equity Interests by the Rights Offering Participants at the per share purchase price set forth in the Rights Offering Backstop Commitment Agreement.  The Rights Offering Equity Interests shall be subject to dilution on account of the ROW New Equity Interests issued pursuant to the Management Incentive Plans, and the exercise of the New Warrants.

The Subscription Rights will be offered, issued, and distributed under the Plan without registration under the Securities Act, or any state law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, and to the extent such

exemption is not available, then the Subscription Rights will be issued and distributed under the Plan in reliance upon the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S, or another available exemption from registration under the Securities Act.  On the ROW Effective Date, the rights and obligations of the Debtors under the Rights Offering Backstop Commitment Agreement shall vest in the Reorganized ROW Debtors, as applicable.

In addition, on the ROW Effective Date, any ROW New Equity Interests to be issued on account of the Put Option Premium shall be distributed to the Backstop Parties under and as set forth in the Rights Offering Backstop Commitment Agreement.

G.      AUS Holdco New Equity Interests.

Reorganized AUS Holdco shall be authorized to issue a certain number of shares of AUS Holdco New Equity Interests pursuant to its New Organizational Documents.  On the ROW Effective Date, Reorganized AUS Holdco shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of AUS Holdco New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of AUS Holdco New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable.  Each distribution and issuance referred to in Article IV.B.1(c)(v) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

H.      EUR Holdco New Equity Interests.

Reorganized EUR Holdco shall be authorized to issue a certain number of shares of EUR Holdco New Equity Interests pursuant to its New Organizational Documents.  On the ROW Effective Date, Reorganized EUR Holdco shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

All of the shares of EUR Holdco New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of EUR Holdco New Equity Interests shall be duly authorized without any further action by the Debtors or the Reorganized Debtors or by Holder of any Claims or Interests, as applicable.  Each distribution and issuance referred to in Article IV.B.1(c)(v) hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

I.      Issuance of New Warrants.

On the ROW Effective Date, Reorganized ROW TopCo will issue the New Warrants only to the extent required to provide for distributions to Holders of SFA Claims and Holders of Swap Claims, as contemplated by this Plan.  All of the New Warrants issued pursuant to the Plan shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable, validly issued, fully paid, and non-assessable.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s).

(iii)      Corporate Existence of the ROW Debtors.

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, the Plan Support Agreement, or the Plan Supplement, each ROW Debtor, as Reorganized Debtors, shall continue to exist on and after the ROW Effective Date as a separate legal Entity with all the powers available to such Entity pursuant to the applicable Law in the jurisdiction in which each applicable ROW Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the ROW Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended, amended and restated, or replaced under the Plan or otherwise, including pursuant to both the Organizational Documents and the New Organizational Documents, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan, in each case, in form and substance acceptable to the Required Lenders, and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law).  On or after the ROW Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized ROW Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, in each case, subject to the consent of the Required Lenders.

(iv)      Vesting of Assets in the Reorganized ROW Debtors.

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum and Article VIII hereof), on the ROW Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the ROW Debtors pursuant to the Plan shall vest in each respective Reorganized ROW Debtor, as applicable, free and clear of all Liens, Claims, charges, other encumbrances, and interests.  On and after the ROW Effective Date, except as otherwise provided in the Plan, including Article VIII hereof, each Reorganized ROW Debtor, as applicable, may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

(v)      Release of Liens.

Except as otherwise expressly provided herein or in the Confirmation Order, on the Applicable Effective Date, all Liens on any property of any GC U.S. Debtors or ROW Debtors or the Post Effective Date Debtors or the Reorganized ROW Debtors, as applicable, shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any GC U.S. Debtors or ROW Debtors or the Post Effective Date Debtors or the Reorganized ROW Debtors, as applicable, shall be automatically discharged and released.

(vi)      Corporate Action.

Upon the Applicable Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (A) consummation of the Sale Transaction Restructuring; (B) selection of the directors, officers, or managers for the Reorganized ROW Debtors and Post Effective Date Debtors; (C) the distribution of the GC U.S. New Equity Interests; (D) the distribution of the ROW New Equity Interests; (E) the distribution of the AUS Holdco New Equity Interests; (F) the distribution of the EUR Holdco New Equity Interests; (G) entry into the New Money Exit Facility Documents; (H); entry into the Takeback Facility Documents; (I) the distribution of the New Warrants; (J) all other actions contemplated under the Plan (whether to occur before, on, or after the Applicable Effective Date); (K) adoption of the New Organizational Documents; (L) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (M) the reservation of the DIP Equity Pool; and (N) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Applicable Effective Date).  All matters provided for in the Plan involving the corporate structure of the GC U.S. Debtors or the Post Effective Date Debtors and the ROW Debtors or the Reorganized ROW Debtors, as applicable, and any corporate action required by the GC U.S. Debtors or the Post Effective Date Debtors,

and the ROW Debtors or the Reorganized ROW Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, officers, or managers of the GC U.S. Debtors or the Post Effective Date Debtors, as applicable and the ROW Debtors or the Reorganized ROW Debtors, as applicable.  On or (as applicable) prior to the Applicable Effective Date, the appropriate officers of the GC U.S. Debtors or the Post Effective Date Debtors, as applicable, and the ROW Debtors or the Reorganized ROW Debtors, as applicable shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post Effective Date Debtors or the Reorganized ROW Debtors, as applicable, including the ROW New Equity Interests, the AUS Holdco New Equity Interests, the EUR Holdco New Equity Interests, the New Organizational Documents, the New Money Exit Facilities (if any), the New Money Exit Facility Documents (if any), the Takeback Facilities, the Takeback Facility Documents, and the Rights Offering Documents (if any), and the New Warrants, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.B.1(e) shall be effective notwithstanding any requirements under non-bankruptcy law.

(vii)     New Organizational Documents.

On or immediately prior to the GC U.S. Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Post Effective Date Debtors.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the applicable Post Effective Date Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization.  The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the GC U.S. Effective Date, the applicable Post Effective Date Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the applicable Post Effective Date Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

On or immediately prior to the GC U.S. Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized ROW Debtors.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the applicable Reorganized ROW Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization.  The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the ROW Effective Date, the applicable Reorganized ROW Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the applicable Reorganized ROW Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

(viii)     Directors and Officers of the Reorganized ROW Debtors.

As of the ROW Effective Date, the terms of the current directors on the board of directors of TopCo shall expire, and the new directors and officers of the Reorganized ROW Debtors shall be appointed.  Except to the extent that a current director on the board of directors of TopCo is designated to serve as a director, manager, or sole manager of a Reorganized ROW Debtor, the current directors on the board of directors of TopCo prior to the ROW Effective Date, in their capacities as such, shall have no continuing obligations to TopCo on or after the ROW Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a manager of TopCo on the ROW Effective Date; *provided* that each disinterested director of the Debtors shall retain his/her respective authority following the ROW Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at his/her respective authority and direction in accordance with the terms of the Plan. Each disinterested director of the Debtors shall not have any of his/her respective privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Reorganized ROW Debtors, the Plan Sponsor, or any other

Entity without such director's prior written consent; *provided, however*, the Reorganized ROW Debtors shall have access to the ROW Debtors' books and records, including all reports and related documents prepared by the respective legal advisors to the Special Committees in connection with their respective investigations if such reports were provided to the full board of directors of TopCo; receipt of such materials by the Reorganized ROW Debtors shall not be deemed a breach of any applicable privilege or confidentiality obligations.  Each disinterested director of the Debtors retains the right to review, approve, and make decisions, as well as to file papers and be heard before the Bankruptcy Court on all matters under such director's continuing authority.  Each of the directors, managers, sole managers and officers of each of the Reorganized ROW Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized ROW Debtor and may be designated, replaced, or removed in accordance with such New Organizational Documents.

(ix) Directors and Officers of the Post Effective Date Debtors.

As of the GC U.S. Effective Date, the terms of the current directors on the board of directors of U.S. TopCo shall expire, and the new directors and officers of the Post Effective Date Debtors shall be appointed.  Except to the extent that a current director on the board of directors of U.S. TopCo is designated to serve as a director, manager, or sole manager of a Post Effective Date Debtor, the current directors on the board of directors of U.S. TopCo prior to the GC U.S. Effective Date, in their capacities as such, shall have no continuing obligations to U.S. TopCo on or after the GC U.S. Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a manager of U.S. TopCo on the GC U.S. Effective Date.  Each of the directors, managers, sole managers and officers of each of the Post Effective Date Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Post Effective Date Debtors and may be designated, replaced, or removed in accordance with such New Organizational Documents.

(c) Effectuating Documents; Further Transactions.

Prior to the Applicable Effective Date, the Debtors are, and on and after the Applicable Effective Date, the applicable Reorganized Debtors or Post Effective Date Debtors, and their respective officers, directors, members, and managers (as applicable), are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the applicable Reorganized Debtors or Post Effective Date Debtors, without the need for any approvals, authorizations, actions, notices or consents except for those expressly required pursuant to the Plan.

(d) Employee Matters.

Unless otherwise provided herein, and subject to Article V of the Plan, the Reorganized Debtors or Post Effective Date Debtors, as applicable, shall: (a) (i) assume all employment agreements, indemnification agreements, or other agreements with current and former members of any Governing Body, employees, officers, directors, or managers of the GC U.S. Debtors or the ROW Debtors, as applicable, in each case, subject to the Required Lenders' consent, not to be unreasonably withheld; or (ii) enter into new agreements with such persons on terms and conditions acceptable to the Reorganized ROW Debtors or the Post Effective Date Debtors, as applicable, the Required Lenders, and such person; *provided, however*, notwithstanding the foregoing, all such assumptions and any new agreements shall be subject to the Required Lenders' consent, not to be unreasonably withheld.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Applicable Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law; and (b) terminate the rabbi trusts established in respect of that certain Executive Nonqualified Excess Plan, adopted by GenesisCare, USA, Inc., GenesisCare USA of Florida, LLC, GenesisCare USA Management Services, Inc., Financial Services of Southwest Florida, Inc., and North Carolina Radiation Therapy Management Services, Inc. pursuant to the Executive Nonqualified Excess Plan Adoption Agreement on December 2, 2019.

(e)        Preservation of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof or pursuant to a Final Order (including the DIP Order), each Reorganized ROW Debtor or Post Effective Date Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (other than the UCC Settlement Avoidance Actions) of the ROW Debtors or GC U.S. Debtors, as applicable, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized ROW Debtors' or the Post Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Applicable Effective Date, other than the Causes of Action released by the ROW Debtors or GC U.S. Debtors, as applicable, pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof or pursuant to a Final Order (including the DIP Order), which, in each case, shall be deemed released and waived by the ROW Debtors and the Reorganized ROW Debtors or the GC U.S. Debtors and Post Effective Date Debtors, as applicable, as of the Applicable Effective Date.

The Reorganized ROW Debtors or Post Effective Date Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized ROW Debtors or Post Effective Date Debtors, as applicable. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the ROW Debtors, the Reorganized ROW Debtors, the GC U.S. Debtors, or the Post Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action of the applicable Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the DIP Order), the ROW Debtors and the Reorganized ROW Debtors or the GC U.S. Debtors and the Post Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof or pursuant to a Final Order (including the DIP Order). Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized ROW Debtor or Post Effective Date Debtor, as applicable, without the need for any objection or responsive pleading by the applicable Reorganized ROW Debtors or Post Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Reorganized ROW Debtors and the Post Effective Date Debtors, as applicable, may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the ROW Debtors or Reorganized ROW Debtors or the GC U.S. Debtors or the Post Effective Date Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the ROW Debtors or GC U.S. Debtors, as applicable, against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the DIP Order), the Reorganized ROW Debtors and the GC U.S. Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized ROW Debtors and the Post Effective Date Debtors reserve and shall retain such Causes of Action of the ROW Debtors and GC U.S. Debtors, as applicable, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the DIP Order), any Causes of Action that a ROW Debtor or a GC U.S. Debtor may hold against any Entity shall vest in the Reorganized ROW Debtors or the Post Effective Date Debtors, as applicable, except as otherwise expressly provided in the Plan, including Article VIII hereof. The applicable Reorganized ROW Debtors or Post Effective Date Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized ROW Debtors and the Post Effective Date Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Certain Securities Law Matters.*

1.   <u>ROW New Equity Interests, Subscription Rights, Rights Offering Equity Interests, Put Option Premium, and New Warrants</u>.

The offering, issuance, and distribution of the ROW New Equity Interests, the Subscription Rights (if any), the Rights Offering Equity Interests (if any), the ROW New Equity Interests issued on account of the Put Option Premium (if any), the New Warrants (including, for the avoidance of doubt, any ROW New Equity Interests issuable upon exercise of the New Warrants), as contemplated by Article III of this Plan, will be conducted in reliance upon one or more exemptions from registration under the Securities Act, which will include the exemption provided in section 1145 of the Bankruptcy Code to the fullest extent available.  Securities issued in reliance upon section 1145 of the Bankruptcy Code (including any ROW New Equity Interests, Subscription Rights (if any), Rights Offering Equity Interests (if any), the ROW New Equity Interests issued on account of the Put Option Premium (if any), and New Warrants, to the extent such exemption is permitted and available) are exempt from, among other things, to the maximum extent possible, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local Law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  Such Securities issued under the Plan are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and, in general, will be freely tradable under the Securities Act by the initial recipient.  Any Securities, including the ROW New Equity Interests, the Subscription Rights (if any), the Rights Offering Equity Interests (if any), the ROW New Equity Interests issued on account of the Put Option Premium (if any), and the New Warrants (including, for the avoidance of doubt, any ROW New Equity Interests issuable upon exercise of the New Warrants), issued under the Plan in reliance on section 1145(a) of the Bankruptcy Code, in general, may be resold without registration under the federal securities laws, unless the holder is (a) is an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (b) has been an "affiliate" within ninety (90) days of such transfer, or (c) is an Entity that is an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code.  The offering, issuance, distribution, and sale of any Securities in accordance with section 1145 of the Bankruptcy Code shall be made without registration under the Securities Act or any similar federal, state, or local Law due to reliance on section 1145(a) of the Bankruptcy Code.

However, if any of the ROW New Equity Interests, Subscription Rights (if any), Rights Offering Equity Interests (if any), the ROW New Equity Interests issued on account of the Put Option Premium (if any) or New Warrants, as may be applicable, cannot be issued in reliance on section 1145 of the Bankruptcy Code (including, to the extent applicable, any Unsubscribed Backstop Equity Interests (other than the ROW New Equity Interests issued on account of the Put Option Premium)), then such Securities will be issued in reliance upon the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S, or another available exemption from registration under the Securities Act.  Further, in all cases, including with respect to any Securities issued in reliance on section 1145 of the Bankruptcy Code, such Securities remain further subject to any restrictions in the New Organizational Documents and any other applicable securities Laws and any applicable regulatory approvals.

2.   <u>GC U.S. New Equity Interests and Unsubscribed Backstop Equity Interests</u>.

The GC U.S. New Equity Interests and any Unsubscribed Backstop Equity Interests will be issued in reliance upon the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S, or another available exemption from registration under the Securities Act.  Such Persons will hold "restricted securities."  Such restricted securities (including any other New Equity Interests that may be deemed "restricted securities") may not be resold, exchanged, assigned, or otherwise transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom and further subject to other applicable Law and any restrictions in the New Organizational Documents.  For the avoidance of doubt, the offering, issuance, distribution, and sale of such securities shall be made without registration under the Securities Act or any similar federal, state, or local Law in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act.

Holders of restricted securities would, however, be permitted to resell the GC U.S. New Equity Interests and any Unsubscribed Backstop Equity Interests (or any other New Equity Interests that may be deemed restricted securities) without registration under federal securities Laws if they are able to comply with the applicable provisions

of Rule 144 or Rule 144A under the Securities Act (if available) or any other exemption from registration under the Securities Act, or if such Securities are registered with the SEC. Further, in all cases, such securities remain further subject to any restrictions in the New Organizational Documents and any other applicable securities Laws.

       3.   <u>Certain DTC and Other Entity Matters</u>.

Should the Reorganized Debtors elect on or after the Applicable Effective Date to reflect any ownership of the New Equity Interests or any other Security to be issued under the Plan through the facilities of DTC (or another similar depository), the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the Securities, including the New Equity Interests to be issued under the Plan under applicable securities Laws. DTC (or another similar depository) shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Securities, including the New Equity Interests to be issued under the Plan, is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Securities, including the New Equity Interests to be issued under the Plan, is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

       4.   <u>Application of Securities Laws</u>.

The issuance of the New Equity Interests shall not constitute an invitation or offer to sell, or the solicitation of an invitation or offer to buy, any securities in contravention of any applicable Law in any jurisdiction. No action has been taken, nor will be taken, in any jurisdiction that would permit a public offering of any of the New Equity Interests (other than securities issued pursuant to section 1145 of the Bankruptcy Code) in any jurisdiction where such action for that purpose is required.

D.    *Management Incentive Plans*.

On or after the Applicable Effective Date, (1) the New ROW Board will determine, and Reorganized ROW TopCo shall adopt and implement a TopCo Management Incentive Plan (including the issuance of ROW New Equity Interests) for certain of the Reorganized ROW Debtors' directors, officers, and employees, (2) the New ROW Board will determine, and the Reorganized Australian Debtors shall adopt and implement an AUS Management Incentive Plan (including through the issuance of ROW New Equity Interests) for certain of the Reorganized Australian Debtors' directors, officers, and employees and (3) the New ROW Board will determine, and the Reorganized EUR Debtors shall adopt and implement an EUR Management Incentive Plan (including through the issuance of ROW New Equity Interests) for certain of the Reorganized EUR Debtors' directors, officers, and employees. The New ROW Board, in its sole discretion, shall be authorized to institute each such Management Incentive Plan and enact and enter into related policies and agreements. For the avoidance of doubt, the terms and conditions of any Management Incentive Plan (including any related agreements, policies, programs, other arrangements, and Management Incentive Plan participants) shall be determined by the New ROW Board, and in each case, subject to the consent of the Required Lenders, in its sole discretion on or after the Applicable Effective Date.

Any New Equity Interests offered pursuant to the Management Incentive Plans shall be exempt from any registration requirements under any federal securities Laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

E.    *Physician Incentive Plans*.

On or after the ROW Effective Date, (1) the Reorganized Australian Debtors shall adopt and implement the AUS Physician Incentive Plan (including through the issuance of AUS Holdco New Equity Interests) for certain of the Reorganized Australian Debtors' physicians and (2) the Reorganized EUR Debtors shall adopt and implement the EUR Physician Incentive Plan (including through the issuance of EUR Holdco New Equity Interests) for certain of the Reorganized EUR Debtors' physicians. For the avoidance of doubt, the terms and conditions of any Physician Incentive Plan (including any related agreements, policies, programs, other arrangements, and Physician Incentive

Plan participants) shall be set forth in the Plan Supplement, and in each case, subject to the consent of the Required Lenders.

Any Physician Equity Interests, including any AUS Holdco New Equity Interests or EUR Holdco New Equity Interests, offered pursuant to the Physician Incentive Plans shall be exempt from any registration requirements under any federal securities Laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

F.     *UCC Settlement.*

The Plan incorporates and implements the UCC Settlement, a compromise and settlement of numerous issues and disputes between and among (a) the Debtors, (b) the Committee, and (c) the Ad Hoc Group.  The UCC Settlement is designed to achieve a reasonable and effective resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth herein or in the Confirmation Order, the UCC Settlement constitutes a settlement of all potential issues and claims between and among (a) the Debtors, (b) the Committee, and (c) the Ad Hoc Group.

On the GC U.S. Effective Date, the Reorganized Debtors shall establish and fund the GUC Trust with: (a) $4,500,000 in Cash (the "GUC Cash Amount") to fund recoveries for Allowed Class 5B-1 General Unsecured Claims (subject to reduction to fund the Convenience Class Amount) and Allowed Class 5B-2 Convenience Class Claims (solely from the Convenience Class Amount); (b) $350,000 in Cash to satisfy the carrying costs of maintaining and administering the GUC Trust, with any unused amounts added to the GUC Cash Amount; and (c) 12.5% of the net proceeds, if any, of the retained Causes of Action pursued solely (i) against the Excluded Parties, (ii) against the Defaulting Lenders, (iii) against participants in share plan arrangements liable under partial recourse loans on account of those loans, (iv) against insurers under the Debtors' prepetition directors and officers liability policies or any applicable tail policy, in each case, with respect to the Excluded Parties or otherwise, and (iv) in or relating to the class action antitrust lawsuit styled *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP ((a), (b) and (c) together, the "GUC Cash Pool").

The identity of the trustee for the GUC Trust and oversight board members, if such an oversight board is established, shall be determined by the Committee and set forth in the documentation governing the GUC Trust, with the terms of such GUC Trust to be acceptable to the Committee.

The Claims objection and resolution process for all Class 5B General Unsecured Claims shall be undertaken by the Reorganized GC U.S. Debtors or the Post Effective Date Debtors (as applicable) in good faith and using commercially reasonable efforts with oversight by the GUC Trust as set forth below; *provided, however*, the costs of the Claims objection and resolution process for all Class 5B General Unsecured Claims incurred by the Reorganized GC U.S. Debtors or the Post Effective Date Debtors (as applicable) shall not exceed an amount agreed to by the Required Lenders, the Committee, and the Debtors prior to the Confirmation Hearing, which amount may not be increased without the prior consent of the Required Lenders (not to be unreasonably withheld, conditioned or delayed); *provided, further* that the professionals engaged by the Reorganized GC U.S. Debtors or the Post Effective Date Debtors (as applicable) to conduct such Claims objections and resolution process shall be reasonably acceptable to the Required Lenders and the Committee.  Before the Effective Date, the Committee, the Required Lenders, and the Debtors will agree to an acceptable protocol for the reconciliation, objection and settlement of all Class 5B General Unsecured Claims.  With prior notice to the GUC Trust, the Reorganized GC U.S. Debtors or the Post Effective Date Debtors (as applicable) may settle or Allow any Class 5B General Unsecured Claim in excess of $1,750,000, so long as the Reorganized GC U.S. Debtors' or Post Effective Date Debtors' (as applicable) settlement and/or Allowance of such Claim is consistent with the obligations of the Reorganized GC U.S. Debtors or Post Effective Date Debtors (as applicable) herein; *provided, however*, if the GUC Trust does not agree with the settlement and/or Allowance of such Claim, then the GUC Trust may take over the prosecution of any objection to the applicable Class 5B General Unsecured Claim at its own cost and at no additional expense to the Reorganized GC U.S. Debtors or Post Effective Date Debtors (as applicable).

G.     *Cancellation of Existing Securities and Agreements.*

On the Applicable Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in this Plan and the Confirmation Order, all notes, instruments, certificates,

credit agreements, indentures, Securities, and other documents evidencing or governing Claims or Interests (other than those Claims or Interests Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order or hereunder.

H.      *Indemnification Obligations.*

Subject to the investigations of the Special Committee, consistent with applicable Law, all indemnification provisions in place as of the Applicable Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Support Agreement, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced, or terminated after the Applicable Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Applicable Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the applicable Reorganized Debtors. Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code.

I.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable Law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

J.      *Director and Officer Liability Insurance.*

After the Applicable Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Applicable Effective Date, and all directors and officers

of the Debtors who serviced in such capacity at any time prior to the Applicable Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Applicable Effective Date.

K.      *Closing the Chapter 11 Cases.*

Upon the occurrence of the Applicable Effective Date, the Reorganized Debtors or Post Effective Date Debtors, as applicable, shall be permitted to close all of the Chapter 11 Cases with respect to the applicable Reorganized Debtors or Post Effective Date Debtors, except for one of the Chapter 11 Cases as determined by the Reorganized Debtors or Post Effective Date Debtors, as applicable, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

1.      Reorganized ROW Debtors.

Except as otherwise agreed by the ROW Debtors and the Required Lenders, each Executory Contract and Unexpired Lease for the ROW Debtors shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the ROW Effective Date under section 365 of the Bankruptcy Code. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.  Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, in each case, in consultation with the Required Lenders, each assumed Executory Contract or Unexpired Lease of the ROW Debtors shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the ROW Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

2.      Reorganized GC U.S. Debtors or Post Effective Date Debtors.

On the GC U.S. Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Reorganized GC U.S. Debtor or Post Effective Date Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) are the subject of a motion to assume Filed on or before the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction including the Sale Transaction Restructuring; (5) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (6) are a D&O Liability Insurance Policy.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Leases Schedule, or the Rejected Executory Contracts and Unexpired Leases Schedule, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Applicable Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Applicable Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized GC U.S. Debtor or Post Effective Date Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory

Contracts or Unexpired Leases pending on the Applicable Effective Date shall be subject to approval by a Final Order on or after the Applicable Effective Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Reorganized Debtors or Post Effective Date Debtor.

To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan conditions, restricts or prevents, or purports to condition, restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition a renewal or extension, or modify any term or condition upon any assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, after the Confirmation Date, an Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases Schedule as of the Confirmation Date may not be assumed by the applicable Debtor(s) unless the applicable lessor or contract counterparty has (x) consented to such assumption, (y) objected to the rejection of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be rejected and should instead be assumed (and such objection remains outstanding), or (z), in the case of Unexpired Leases, consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's consent, the "Deferred Deadline"), in which case for purposes of clause (z) the applicable Debtor(s) shall have until the Deferred Deadline to assume such Unexpired Lease, subject to the applicable lessor's right to object to such assumption, or such Unexpired Lease shall be deemed rejected.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules require the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Applicable Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors, or Post Effective Date Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease against the Bar Date Debtors shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtors shall serve notices of proposed assumptions to the counterparties to the agreements listed on the Assumed Executory Contracts and Unexpired Leases Schedule, which shall include a description of the procedures for resolving disputes related to the proposed assumption of applicable Executory Contracts and Unexpired Leases. In the event that any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and

Unexpired Leases Schedule after the provision of notices of proposed assumptions described above, a notice of proposed assumption with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by counsel to the Debtors no later than the date and time specified in the notice (which shall not be less than fourteen days after such notice is served). The Debtors or the Reorganized Debtors or Post Effective Date Debtors, as applicable, may reconcile and settle, with the consent of the Required Lenders, not to be unreasonably withheld, in the ordinary course of the Debtors' business any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount (including any request for an additional or different cure amount) will be deemed to have assented to such assumption or Cure amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the applicable Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors or the Reorganized Debtors or Post Effective Date Debtors, as applicable, shall pay the Cure amounts, if any, on the Applicable Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that if a dispute regarding assumption or Cure is unresolved as of the Applicable Effective Date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.

If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Cure Notice (such greater amount, the "Court-Ordered Cure Cost"), the Debtors shall have the right to (a) pay the Court-Ordered Cure Cost as soon as reasonably practicable thereafter and assume such Executory Contract or Unexpired Lease in accordance with the terms herein or, (b) within fourteen days of such determination, add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected on the later of the (i) date of entry of the Court-Ordered Cure Cost and, (ii) solely with respect to Unexpired Leases, the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable, and in the case of an Unexpired Lease, the Debtors shall, pursuant to section 365(d)(4) of the Bankruptcy Code, immediately surrender the related premises to the lessor unless otherwise agreed with the applicable lessor, subject to the applicable counterparty's right to object to such rejection. Notwithstanding anything to the contrary herein, the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, and the applicable counterparty shall be entitled to the full benefits of the Executory Contract or Unexpired Lease (including without limitation, any license thereunder) pending the resolution of any Cure dispute.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Sale Transaction Restructuring or the U.S. Equitization Restructuring, shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Applicable Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

      Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Sale Transaction Restructuring or the U.S. Equitization Restructuring, shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors or Post Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy Law to the contrary, the applicable Reorganized Debtors or Post Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

      Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise provided in the Plan, on the Applicable Effective Date, in connection with all contemplated transactions under this Plan, solely to the extent explicitly provided in the Assumed Executory Contracts and Unexpired Leases Schedule, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (2) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the applicable Reorganized Debtors or Post Effective Date Debtors.

      Unless otherwise provided in the Plan, on the Applicable Effective Date, in connection with the Sale Transaction Restructuring, the Debtors shall be deemed to have assumed or assumed and assigned to the applicable Purchaser, solely to the extent set forth in the Purchase Agreement, and explicitly provided in the Assumed Executory Contracts and Unexpired Leases Schedule, all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; *provided* that any insurance policies that are not assumed and assigned to the Purchaser shall be assumed by the Debtors for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto.

      Nothing in this Plan, the Plan Support Agreement (if applicable), the Plan Sponsor Agreement, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the Purchaser, solely to the extent assumed and assigned to the Purchaser under the Purchase Agreement) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

      Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

      Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights.*

Nothing contained in the Plan, the Plan Support Agreement, the Plan Sponsor Agreement, the Purchase Agreement, or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.      *Nonoccurrence of the Effective Date.*

In the event that either Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the applicable Reorganized Debtors or Post Effective Date Debtors in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the applicable Reorganized Debtors or Post Effective Date Debtors, as the case may be, and the Holder of the applicable Allowed Claim, on the first Distribution Date, the applicable Reorganized Debtors or Post Effective Date Debtors shall make initial distributions under the Plan on account of Claims Allowed as of the Applicable Effective Date, subject to the Reorganized Debtors' and Post Effective Date Debtors' right, as applicable, to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Applicable Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan, and (3) Allowed General Unsecured Claims shall be paid (if entitled to payment) in accordance with Article III of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Applicable Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

B.      *Distribution Agent.*

All distributions under the Plan shall be made by the Distribution Agent.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Reorganized Debtors or Post Effective Date Debtors.

C.      *Rights and Powers of the Distribution Agent.*

      1.      <u>Powers of the Distribution Agent</u>.

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

      2.      <u>Expenses Incurred on or After the Effective Date</u>.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Applicable Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Distribution Agent, in each case directly related to distributions under the Plan, shall be paid in Cash by the Reorganized Debtors or the Post Effective Date Debtors, as applicable, in the ordinary course of business.  In the event that the Reorganized Debtors or the Post Effective Date Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Reorganized Debtors or the Post Effective Date Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Reorganized Debtors or the Post Effective Date Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

      1.      <u>Record Date for Distribution</u>.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

      2.      <u>Delivery of Distributions in General</u>.

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors or Post Effective Date Debtors.

      3.      <u>Minimum Distributions</u>.

No fractional shares of New Equity Interests or New Warrants (including, for the avoidance of doubt, any shares of New Equity Interests issued upon exercise of the New Warrants) shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of New Equity Interests or New Warrants that is not a whole number, the actual distribution of shares of New Equity Interests or New Warrants shall be calculated to one decimal place and rounded up or down to the closest whole number of shares of New Equity Interests or New Warrants (with a half-share of New Equity Interests or New Warrants or greater rounded up and less than a half-share of New Equity Interests or New Warrants rounded down).  The total number of authorized shares of New Equity Interests or New Warrants (including, for the avoidance of doubt, any shares of New Equity Interests issued upon exercise of the New Warrants) to be distributed to Holders of Allowed Claims hereunder shall

be adjusted as necessary to account for the foregoing rounding. Neither the Reorganized Debtor, the Post Effective Date Debtors, nor the Distribution Agent shall have any obligation to make a distribution that consists of less than one share of New Equity Interests or New Warrants or is less than two hundred and fifty dollars ($250) to any Holder of an Allowed Claim.

    4.   <u>Undeliverable Distributions and Unclaimed Property</u>.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Distribution Agent is notified in writing of the then-current address of such Holder, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, as applicable, until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to this Article VI, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution or remains undeliverable (as reasonably deemed unclaimed or undeliverable by the Reorganized Debtors or the Distribution Agent) for a period of 90 days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such unclaimed distribution is comprised of New Equity Interests or New Warrants, such New Equity Interests or New Warrants shall be cancelled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be cancelled, released, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary, and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred. The Distribution Agent shall adjust the distributions of the New Equity Interests or New Warrants to reflect any such cancellation; however, for the avoidance of doubt, additional Securities shall not be issued to other Holders of Claims due to any such cancellations.

    5.   <u>Surrender of Cancelled Instruments or Securities</u>.

On the Applicable Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.F hereof shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated under this Plan.

E.    *Manner of Payment.*

    1.   Except as otherwise set forth herein, all distributions of New Equity Interests or New Warrants to Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

    2.   All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Reorganized Debtor.

    3.   At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, Post Effective Date Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, Reorganized Debtors, and Post Effective Date Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Distribution Agent an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Final Order, as of the Applicable Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)* on the Petition Date or another date reasonably agreed to by the Debtors and the Required Lenders.

I.      *Setoffs and Recoupment.*

Except as expressly provided in the DIP Order and this Plan, including pursuant to Article VIII hereof, each Reorganized Debtor and Post Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor or Post Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) or Post Effective Date Debtor(s), and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or a Post Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or Post Effective Date Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors or the Reorganized Debtors or the Post Effective Date Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G hereof on or before the Applicable Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties</u>.

The Debtors or the applicable Reorganized Debtors or Post Effective Date Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any

further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor or a Post Effective Date Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Reorganized Debtor or a Post Effective Date Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor or Post Effective Date Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor or Post Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

> 2.   _Claims Payable by Third Parties_.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

To the extent any insurance policy applicable to any 5B-3 General Unsecured Claim contains a self-insured retention, deductible, or similar requirement (each a "SIR"), such SIR (once, and if, Allowed) shall be satisfied pursuant to the Plan as a 5B-1 General Unsecured Claim; _provided_ that in the event the insurer with respect to such insurance policy holds a letter of credit, cash collateral, or credits (collectively, "Collateral") with respect to a SIR or has access to any other avenues for recovery (including other applicable insurance policies), the insurer must exhaust such Collateral or other avenues of recovery before sharing in any recovery from the GUC Trust or the Convenience Class.

> 3.   _Applicability of Insurance Policies_.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

K.      _Distributions After the Effective Date_.

To the extent that Distributable Cash is received by the Post Effective Date Debtors after the Applicable Effective Date, then such Distributable Cash shall be distributed at the direction of the Required Lenders and the Reorganized ROW Debtors.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      _Allowance of Claims_.

The Debtors, the Reorganized Debtors, and the Post Effective Date Debtors, as applicable, and in each case, in consultation with the Required Lenders, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed.  Upon such determination, the Debtors or relevant Reorganized Debtors or Post Effective Date Debtors, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Article III (including, for the avoidance of doubt,

Reinstatement), to mark such Proofs of Claims as satisfied. The Debtors may determine to Reinstate a claim that would be an Unimpaired Claim under the Plan, even if no timely Proof of Claim against a Bar Date Debtor is filed therefor.

After the Applicable Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors and Post Effective Date Debtors, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Applicable Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy Law.

B.    *Claims Administration Responsibilities.*

The Debtors and the Reorganized Debtors and Post Effective Date Debtors, as applicable, and in each case, in consultation with the Required Lenders, shall have the exclusive authority to (1) File, withdraw, or litigate to judgment any objections to Claims, (2) settle or compromise any such objections to Claims without further notice to or action, order, or approval of the Bankruptcy Court, and (3) administer and adjust the Claims Register to reflect such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court. Except as otherwise provided herein, from and after the Applicable Effective Date, each Reorganized Debtor and Post Effective Date Debtor, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Applicable Effective Date with respect to any Claim or Interest (including any Disputed Claim or Interest), including the Causes of Action retained pursuant to Article IV of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (a) on or before the date that is one hundred and eighty days following the later of (i) the Applicable Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of a Claim or (b) such later date as ordered by the Bankruptcy Court.

C.    *Disputed Claims Process.*

Holders of Claims (other than General Unsecured Claims or General Administrative Claims against the Bar Date Debtors) and Interests need not file a Proof of Claim, as applicable, with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan, except to the extent a Claim arises on account of rejection of an Executory Contract or Unexpired Lease in accordance with Article V.B hereof. On and after the Applicable Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be paid pursuant to the Plan. Other than Claims arising from the rejection of an Executory Contract or Unexpired Lease and General Unsecured Claims against the Bar Date Debtors (which Claims shall be addressed by the applicable Bar Date Debtor (including as reorganized) in the Bankruptcy Court), if the Debtors or the Reorganized ROW Debtors or the Post Effective Date Debtors dispute any Claim or Interest, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced, and all parties shall retain any and all rights, claims, causes of action, defenses, and remedies that such parties had immediately prior to or arising after the Petition Date. Solely to the extent that an Entity is required to file a Proof of Claim and the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VII of the Plan. For the avoidance of doubt, with respect to a Claim other than General Unsecured Claims or General Administrative Claims against the Bar Date Debtors or a Claim arising from the rejection of an Executory Contract or Unexpired Lease, there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim or Allowed Interest, as applicable, under the Plan. Notwithstanding the foregoing, Entities must file cure objections as set forth in Article V.C hereof to the extent such Entity disputes the amount of the proposed cure. **Except as otherwise provided herein or agreed to by the Reorganized Debtors or Post Effective Date Debtors, as applicable, any and all Proofs of Claim required to be Filed by the Plan that are Filed after the Claims Bar Date against the Bar Date Debtors shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor or Post Effective Date Debtor, without the need for any objection by the Reorganized Debtors or Post Effective Date Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, unless leave to file a late Proof of Claim is obtained.**

63

D.      *Estimation of Claims and Interests.*

Before, on, or after the Applicable Effective Date, the Debtors or the relevant Reorganized Debtors or Post Effective Date Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor or Post Effective Date Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors or Post Effective Date Debtors without such entity having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, and subject to the terms hereof, including Article VIII, and the DIP Order, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors or Post Effective Date Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if:  (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors or Post Effective Date Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distributions (if any) to which such Holder is entitled under the Plan as of the Applicable Effective Date, without any interest to be paid on account of such Claim or Interest.

I.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, including the DIP Order, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Applicable Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.  DIP Claims shall accrue and be paid interest in accordance with the terms set forth in the DIP Credit Agreement.

J.      *Accrual of Dividends and Other Rights.*

For purposes of determining the accrual of distributions or other rights after the Applicable Effective Date, the New Equity Interests and New Warrants shall be deemed distributed as of the Applicable Effective Date regardless of the date on which they are actually distributed; *provided, however*, that the relevant Reorganized Debtors shall not pay any such distributions or distribute such other rights, if any, until after distribution of the applicable New Equity Interests or New Warrants actually takes place.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Applicable Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Applicable Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Applicable Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Applicable Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order, if applicable, shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Applicable Effective Date.

**B.      Release of Liens.**

**Except as otherwise provided in the Plan, the Plan Sponsor Agreement, the Confirmation Order, the Purchase Agreement, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Applicable Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Applicable Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors or Post Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors**

or Post Effective Date Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Applicable Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Post Effective Date Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors or Post Effective Date Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

On the GC U.S. Effective Date, concurrently with the consummation of the Sale Transaction Restructuring through the Plan (if applicable) and except as set forth in the Purchase Agreement, the assets sold in the Sale Transaction Restructuring shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, interests or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of any Sale Order (which may be the Confirmation Order), the Plan and the Purchase Agreement, as applicable.

C.      *Releases by the Debtors.*

Effective as of the Applicable Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Applicable Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in Law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Rights Offering (if any), the Disclosure Statement, the DIP Facility, the DIP Documents, the New Money Exit Facilities (if any), the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents (if any), the Takeback Facility (if applicable), the Takeback Facility Documents (if applicable), the SFA, the Swap Agreements, the Rights Offering Documents (if any), the pursuit of Confirmation and Consummation, the pursuit of the Sale Transaction Restructuring, any U.S. Equitization Restructuring, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Applicable Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Applicable Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any

obligations arising on or after the Applicable Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan; (2) the Causes of Action set forth in the Schedule of Retained Causes of Action; or (3) any Excluded Party.

Each Released Avoidance Action Party is deemed released and discharged by the Debtors, their Estates, the Reorganized Debtors, and the Post Effective Date Debtors from any and all UCC Settlement Avoidance Actions.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

D.      *Releases by the Releasing Parties.*

Effective as of the Applicable Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permissible under applicable Law, each Releasing Party (other than the Debtors, the Reorganized Debtors, or Post Effective Date Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in Law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Plan (including the Plan Supplement), the Rights Offering (if any), the Disclosure Statement, the DIP Facility, the DIP Documents, the New Money Exit Facilities (if any), the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents (if any), the Takeback Facility (if applicable), the Takeback Facility Documents (if applicable), the SFA, the Swap Agreements, the Rights Offering Documents (if any), the pursuit of Confirmation and Consummation, the pursuit of the Sale Transaction Restructuring, any U.S. Equitization Restructuring, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Applicable Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Applicable Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any obligations arising on or after the Applicable Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed

to implement the Plan as set forth in the Plan (including, without limitation, the New Money Exit Facilities, if any, the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents, if any, and the Rights Offering Documents, if any) or (2) any Excluded Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

E.      *Exculpation.*

Effective as of the Applicable Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Applicable Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents (including with respect to the DIP Facility), the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents (if any), the Takeback Facility (if applicable), the Takeback Facility Documents (if applicable), the Rights Offering Documents (if any), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction Restructuring, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Applicable Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding the foregoing, the exculpation shall not release (1) any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) the Causes of Action set forth in the Schedule of Retained Causes of Action; or (3) any Excluded Parties.

F.      *Injunction.*

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Applicable Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or

with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Applicable Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action or Covered Claim, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, the Exculpated Parties, the Released Parties, or the Covered Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action or Covered Claim, as applicable, subject to Article VIII.C, Article VIII.D, Article VIII.E, and Article VIII.F hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action or Covered Claim, as applicable, against any such Debtor, Reorganized Debtor, Post Effective Date Debtor, Exculpated Party, Released Party, or Covered Party, as applicable.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or Post Effective Date Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, the Post Effective Date Debtors, or another Entity with whom the Reorganized Debtors or the Post Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Applicable Effective Date, the Reorganized Debtors and Post Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors or the Post Effective Date Debtors, as applicable.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the ROW Effective Date.*

It shall be a condition to the ROW Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions hereof:

a.   the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and such order shall have become a Final Order;

b.   the DIP Order shall have been entered by the Bankruptcy Court and shall remain in full force and effect;

c.   the Debtors shall not be in default under the DIP Facility or the DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Documents or DIP Order) and there shall not have occurred and be continuing any event, act, or omission that, but for the expiration of time, would permit any DIP Lender to terminate the DIP Facility in accordance with its terms upon the expiration of such time and the DIP Credit Agreement shall be in full force and effect;

d.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

e.   the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

f.   all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

g.   all Restructuring Expenses shall have been paid in full in Cash;

h.   no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

i.   the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), in form and substance acceptable to the Required Lenders and shall not have been terminated prior to the Effective Date:  (a) the Organizational Documents; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents (if any); (d) the Takeback Facility Credit Agreements and other Takeback Facility Documents; (e) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions, and (f) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions);

j.   each of the Disclosed Matters shall have been fully and finally resolved, in each case, on terms and conditions satisfactory to each of the Required Lenders and Debtors; and

k.   the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan.

B.     *Conditions Precedent to the GC U.S. Effective Date.*

    a.  the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and such order shall have become a Final Order;

    b.  the DIP Order shall have been entered by the Bankruptcy Court and shall remain in full force and effect;

    c.  the Debtors shall not be in default under the DIP Facility or the DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Documents or DIP Order) and there shall not have occurred and be continuing any event, act, or omission that, but for the expiration of time, would permit any DIP Lender to terminate the DIP Facility in accordance with its terms upon the expiration of such time and the DIP Credit Agreement shall be in full force and effect;

    d.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

    e.  the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

    f.  all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

    g.  all Restructuring Expenses shall have been paid in full in Cash;

    h.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

    i.  in the event of (i) the Sale Transaction Restructuring or (ii) the U.S. Equitization Restructuring that incorporates one or more U.S. Asset Sales, the conditions to effectiveness to the Purchase Agreement(s) shall have been duly satisfied or waived;

    j.  in the event of the U.S. Equitization Restructuring where the DIP Lenders are not the Plan Sponsor, the conditions to effectiveness of the Plan Sponsor Agreement shall have been duly satisfied or waived and the New Equity Interests will be issued in accordance with the Distribution Record Date;

    k.  the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), in form and substance acceptable to the Required Lenders and shall not have been terminated prior to the Effective Date:  (a) the Organizational Documents; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) the New Money Exit Facility Credit Agreements and the other New Money Exit Facility Documents (if any); (d) the Takeback Facility Credit Agreements and other Takeback Facility Documents; (e) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions, and (f) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions); and

    l.  the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan.

C.      *Waiver of Conditions.*

Except as otherwise specified in this Plan, any one or more of the conditions precedent to the Applicable Effective Date (or any component thereof) set forth in this Article IX may be waived by the Debtors only with the prior written consent of the Required Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

If the ROW Effective Date occurs prior to the GC U.S. Effective Date then the Restructuring Transactions Memorandum will set forth the related transaction steps.

D.      *Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

E.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Applicable Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in this Plan, and in each case, subject to the consent of the Required Lenders, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to (1) those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the, subject to the consent of the Required Lenders, Debtors expressly reserve their right to revoke or withdraw, or to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors shall not make any modifications or amendments to the Plan concerning the terms of the UCC Settlement without the consent of the Committee.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization, in each case, subject to the consent of the Required Lenders.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be

deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Applicable Effective Date, on and after the Applicable Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c.  resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to rejection of an Executory Contract or Unexpired Lease and Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Applicable Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

d.  ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

e.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Applicable Effective Date;

f.  adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

g.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

h.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

i.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

j.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

k.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

l.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J hereof;

m.   enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

n.   determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

o.   enter an order concluding or closing the Chapter 11 Cases;

p.   adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

q.   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

r.   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

s.   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

t.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

u.   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

v.   enforce all orders previously entered by the Bankruptcy Court; and

w.   hear any other matter not inconsistent with the Bankruptcy Code.

As of the Applicable Effective Date, notwithstanding anything in this Article XI to the contrary, the Organizational Documents and New Organizational Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.   *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Applicable Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Post Effective Date Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests (a) are Impaired or Unimpaired, (b)

74

have, or are deemed to have accepted the Plan, or (c) failed to vote to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents.*

On or before the Applicable Effective Date, and with the consent of the Required Lenders, not to be unreasonably withheld, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors or Post Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees due and payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Debtors, Reorganized Debtors or Post Effective Date Debtors, as applicable (or the Distribution Agent on behalf of the Reorganized Debtors or Post Effective Date Debtors), for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

Prior to and including the Applicable Effective Date, the Debtors shall timely File operating reports for each month (including any fraction thereof).  After the Applicable Effective Date, the Reorganized Debtors, or the Post Effective Date Debtors, as applicable (or the Distribution Agent on behalf of the Reorganized Debtors or Post Effective Date Debtors), shall timely File post-confirmation reports in a form reasonably acceptable to the U.S. Trustee for each quarter (including any fraction thereof), until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first; *provided* that:  (a) if the U.S. Equitization Restructuring occurs for the GC U.S. Debtors, then the filing of the final monthly report (for the month in which the Applicable Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Reorganized GC U.S. Debtors; and (b) if the Sale Transaction Restructuring occurs, then the filing of the final monthly report (for the month in which the Applicable Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Post Effective Date Debtors.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the later of the GC U.S. Effective Date and the ROW Effective Date, the Committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided, however*, that the Committee shall continue in existence for the limited purposes of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the later of the GC U.S. Effective Date and the ROW Effective Date.  The Reorganized Debtors and the Post Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the later of the GC U.S. Effective Date and the ROW Effective Date, except for any fees and expenses incurred in connection with the activities described in the foregoing sentence.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Applicable Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Applicable Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Genesis Care Pty Limited 2270 Colonial Blvd., Fort Myers, FL 33907 Attn:  General Counsel | Kirkland & Ellis LLP 601 Lexington Avenue New York, New York 10022 Attn: Steven N. Serajeddini, P.C. (steven.serajeddini@kirkland.com) |
| **United States Trustee** | and |
| Office of The United States Trustee 515 Rusk Street, Suite 3516 Houston, TX 77002 Attn: Hector Duran (Hector.Duran.Jr@usdoj.gov) | Kirkland & Ellis LLP 300 North LaSalle Chicago, Illinois 60654 Attn: Jaimie Fedell (jaimie.fedell@kirkland.com) and Jackson Walker L.L.P. 1401 McKinney Street, Suite 1900 Houston, Texas 77010 Attn: Matthew D. Cavenaugh, (mcavenaugh@jw.com) |

After the Applicable Effective Date, the Reorganized Debtors and the Post Effective Date Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Applicable Effective Date, the Reorganized Debtors and the Post Effective Date Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Applicable Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.  *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/GenesisCare or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.  *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' or Post Effective Date Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

L.  *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors or the Post Effective Date Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.  *Closing of Chapter 11 Cases.*

The Reorganized Debtors and the Post Effective Date Debtors, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.  *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Plan Support Agreement (if applicable) or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.  *Creditor Default*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors and Post Effective Date Debtors, in consultation with the Required Lenders, may seek to hold the defaulting party in contempt of the

Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors and Post Effective Date Debtors, as applicable, in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may:  (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors or the Post Effective Date Debtors, as applicable, in an amount, including interest, to compensate the Reorganized Debtors or the Post Effective Date Debtors, as applicable, for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

Dated:  November 21, 2023

GENESIS CARE PTY LIMITED
on behalf of itself and all other Debtors

By:     */s/  David Young*
Name:  David Young
Title:   Chief Executive Officer

**<u>Exhibit B</u>**

**Proposed Notice of Effective Date**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS CARE PTY LIMITED, *et al.*,[1] | ) | Case No. 23-90614 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

NOTICE OF (I) ENTRY OF AN ORDER (A) APPROVING
THE DISCLOSURE STATEMENT AND (B) CONFIRMING THE
JOINT CHAPTER 11 PLAN OF GENESIS CARE PTY LIMITED AND ITS
DEBTOR AFFILIATES AND (II) OCCURRENCE OF THE EFFECTIVE DATE

On [_____], 2023, the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered the *Order Approving (I) the Disclosure Statement and (II) Confirming the First Amended Joint Chapter 11 Plan of Genesis Care Pty Limited and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 1186] (the "Confirmation Order") confirming the Plan[2] of the above-captioned debtors (the "Debtors").

The Effective Date of the Plan occurred on **[_____], 2023**.

The Confirmation Order and the Plan are available for inspection. If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Kroll Restructuring Administration LLC, the notice, claims, and solicitation agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling the Debtors' restructuring hotline at (833) 744-6948 (US/Canada toll free) or (646) 440-4836 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.ra.kroll.com/GenesisCare; or (c) emailing GenesisCareInfo@ra.kroll.com. You may also obtain copies of any pleadings Filed in these Chapter 11 Cases for a fee via PACER at: www.txs.uscourts.gov.

The Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GenesisCare. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is:  1419 SE 8th Terrace, Suite 200, Cape Coral, Florida 33990.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 1186] (as modified, amended, or otherwise supplemented from time to time, the "Plan").

The Plan and its provisions are binding on the Debtors, Reorganized Debtors, Post Effective Date Debtors, Distribution Agent, and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

The Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

Houston, Texas
[●], 2023

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:       (713) 752-4221
Email:           mcavenaugh@jw.com
                 jwertz@jw.com
                 ggraham@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 steven.serajeddini@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jaimie Fedell (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           jaimie.fedell@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*