**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENESIS CARE PTY LIMITED, *et al.*,[1] | ) | Case No. 23-90614 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' MOTION
TO WAIVE COMPLIANCE WITH SECTION 345(B)
OF THE BANKRUPTCY CODE ON AN FINAL BASIS**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the court will treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors (collectively, the "Debtors") state as follows in support of this motion:[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the attached form (the "Order"), waiving compliance with section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/GenesisCare.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 1419 SE 8th Terrace, Suite 200, Cape Coral, Florida 33990.

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Young, Chief Executive Officer of Genesis Care Pty Limited, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19] (the "First Day Declaration").  Capitalized terms used but not immediately defined in this Motion have the meanings ascribed to them later in this motion or in the First Day Declaration as applicable.

**Jurisdiction**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this motion.

3.      Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.      On June 1, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 15, 2023, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 174].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      On the Petition Date, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records,*

*and (II) Granting Related Relief* [Docket No. 17] (the "Cash Management Motion")[3] seeking, inter alia, the authority to continue using their existing Cash Management System, Bank Accounts, and Business Forms. The Court entered an order approving the Cash Management Motion [Docket No. 76] on an interim basis. On July 19, 2023, the Court entered an order approving the Cash Management Motion on a final basis [Docket No. 322] (the "Final Cash Management Order"). The Debtors have received seven extensions of the deadline to comply with section 345(b): (i) the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue to Perform Intercompany transactions, and (C) Maintain Existing Business Forms and Books and Records, and (II) Granting Related Relief* [Docket No. 76], extending the period for compliance to July 15, 2023; (ii) the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records, and (II) Granting Related Relief* [Docket No. 322], extending the period for compliance to July 31, 2023; (iii) the *Stipulation Extending the Deadline by which the Debtors Must Comply with Section 345(b) of the Bankruptcy Code* [Docket No. 379], extending the period for compliance to August 15, 2023; (iv) the *Stipulation Extending the Deadline by which the Debtors Must Comply with Section 345(b) of the Bankruptcy Code* [Docket No. 430], extending the period for compliance to August 31, 2023; (v) the *Stipulation Extending the Deadline by which the Debtors Must Comply with Section 345(b) of the Bankruptcy Code* [Docket No. 668], extending the period for compliance to September 29, 2023; (vi) the *Stipulation and Agreed Order Among the Debtors and United States Trustee Extending the Deadline by which the*

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Cash Management Motion.

*Debtors Must Comply with Section 345(b) of the Bankruptcy Code* [Docket No. 996], extending the period for compliance to November 16, 2023; and (vii) the *Stipulation Extending the Deadline by which the Debtors Must Comply with Section 345(b) of the Bankruptcy Code* [Docket No. 1238], extending the period for compliance to December 14, 2023.

7.      On November 22, 2023, the Court entered the *Order (I) Approving the First Amended Disclosure Statement and (II) Confirming the First Amended Joint Plan of Genesis Care PTY Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 1192] (the "Confirmation Order").

## Preliminary Statement

### A. Foreign Accounts

8.      As described in the Cash Management Motion, the Debtors maintain bank accounts at four financial institutions:  (i) Wells Fargo Bank, N.A. ("Wells Fargo"); (ii) Australia and New Zealand Banking Group Limited ("ANZ Bank"); (iii) the Commonwealth Bank of Australia ("Commbank"); and (iv) HSBC Holdings plc (including HSBC UK Bank plc and HSBC Bank USA NA, collectively "HSBC").  The majority of the Debtors' bank accounts are with Wells Fargo.

9.      Wells Fargo is designated as an authorized depository in Region 7 (which includes the Southern District of Texas) pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), and as such, complies with the requirements under section 345(b) of the Bankruptcy Code. ANZ Bank, Commbank, and ANZ Bank are located outside of the United States, (the "Foreign Banks"), thus are not authorized depositories.  Nonetheless, the Foreign Banks, with which the Debtors rely on for their operations, are well-capitalized and financially stable institutions.  The U.K. Cash

Management System is primarily composed of accounts at HSBC, a well-respected, major bank whose roots extend to the mid-nineteenth century, with over $2.98 trillion in assets as of June 30, 2023.[4]   The Australian Cash Management System is primarily composed of accounts at CommBank, the largest bank in Australia with approximately $1.16 trillion in assets as of August 2023,[5] and ANZ Bank, which has over $720 billion in assets, and is the fourth largest bank in Australia.[6]

10.     The Foreign Banks are well-established banks that the Debtors have a long-standing relationship with.  Forcing the Debtors to move their cash into an authorized depository would be a major disruption to the restructuring process, a massive administrative burden, a drain on the estate, and a detriment to all stakeholders, especially given that the Debtors have already confirmed a plan and are on the cusp of emergence.

**B. Efforts to Comply with Section 345(b)**

11.     Throughout these chapter 11 cases, the Debtors, along with their advisors, have investigated and proposed possible solutions to the non-compliance of the accounts held at the Foreign Banks (the "Foreign Accounts").  Prior to the commencement of these chapter 11 cases, the Debtors and the U.S. Trustee engaged in discussion regarding section 345(b) compliance. These discussions are reflected via the consensual request for an extension for the Foreign Accounts to come into section 345(b) compliance under the Cash Management Motion, with the ability to further extend without court order.  During that period, the Debtors made numerous efforts at the request of the U.S. Trustee, including:  (i) regularly sharing the balances of the

---

[4]     HSBC Total Assets 2010-2023. *Macrotrends.net.*

[5]     What are the biggest banks in Australia? *Savings.com.au.*

[6]     *Id.*

Foreign Accounts; (ii) requesting deposit insurance from the Foreign Banks; (iii) investigating the purchase of treasury bills; (iv) proposing maximum balance caps for each Foreign Account; and (v) seeking coverage from an international surety.

12.     When the Debtors' attempted to purchase deposit insurance they were informed that the Foreign Banks generally reserve such products for governments.   The Debtors investigated the possibility of purchasing treasury bills and identified two significant burdens to the estate:  (i) the need to move cash proceeds into treasury bills would compromise the Debtors' ability to operate in the short-term; and (ii) the arrangement would cause significant costs in the form of both interest payments and increased tax compliance.   Posting a bond also proved too burdensome for the Debtors, because it would require significant liquidity and resources of the Debtors, thus depleting recoveries to other parties in interest.   The Debtors then analyzed whether it would be feasible to transfer the Foreign Accounts to an authorized depository, but ultimately determined that doing so was not achievable without major disruption to ongoing business operations and administration of the Debtors' chapter 11 cases.   The Debtors also sought to obtain surety coverage of the Foreign Accounts, but the Foreign Banks rejected this proposition and refused to enter into such coverage.

13.     Despite their efforts, the Debtors have no realistic way of bringing the Foreign Accounts into compliance with section 345(b) of the Bankruptcy Code without causing significant disruption to the Debtors' Cash Management System and their business operations and/or jeopardizing the Debtors' ability to emerge.

14.     The Debtors communicated with the U.S. Trustee at every point throughout this process, in pursuit of a consensual resolution with the U.S. Trustee regarding section 345(b) compliance.

15.     Given the extent of the Debtors international operations, these Foreign Accounts are the backbone of the Debtors' business operations outside of the United States.

16.     The Debtors' confirmation hearing was held on November 21, 2023, and the Confirmation Order was entered on November 22, 2023.  Requiring the Debtors to move the Foreign Accounts to an authorized depository now would delay, complicate, and potentially jeopardize the Debtors' emergence from chapter 11.  The Debtors are working tirelessly to emerge from these chapter 11 cases as early as possible within the first quarter of 2024.  Accordingly, the Debtors' efforts are focused on the necessary preparations for an expedient emergence.  Forcing the Debtors to move the Foreign Accounts to an authorized depositary would require significant time and resources and would severely disrupt the Debtors' emergence timeline to the detriment of all interested parties.

17.     In light of the foregoing, the Debtors seek a waiver of section 345(b) of the Bankruptcy Code.

## Basis for Relief

18.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U. S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303.  *See* 11 U.S.C. § 345(b).  A bankruptcy court, however, may waive these requirements "for cause."  *Id.*; *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

19.     The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) "for cause" arises from the 1994 amendments to the Bankruptcy Code.  The legislative history of that amendment provides as follows:

> Section 345 of the Code governs investments of funds of bankruptcy estates.  The purpose is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate.  Under current law, all investments are required to be FDIC insured, collateralized or bonded.  While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors.  This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33 F.3d 294 (3d Cir. 1994).

*In re Service Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994)).

20.     In *Service Merchandise*, the bankruptcy court identified the following factors as a guide for determining whether cause exists to waive the requirements of section 345(b) of the Bankruptcy Code:

(a)     the sophistication of the debtor's business;

(b)     the size of the debtor's business operations;

(c)     the amount of investments involved;

(d)     the Moody's and Standard and Poor ratings of the financial institutions where the debtor's funds are held;

(e)     the complexity of the case;

(f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

  (h)  the benefit to the debtor of current practices;

  (i)  the harm, if any, to the estate; and

  (j)  the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.

*Serv. Merch. Co.*, 240 B.R. at 896. The *Service Merchandise* court examined these factors and concluded that "cause" existed to warrant relief under section 345(b) of the Bankruptcy Code because the debtors were "large, sophisticated [companies] with a complex cash management system[,]" with the ability to shift money as needed to ensure that their funds were safe. *Id.* The benefits to the debtor in waiving the section 345(b) requirements far outweighed any potential harm to the estate, and the failure to waive the requirements "would needlessly handcuff these debtors' reorganization efforts." *Id.* at 896–97.

  21.  As in *Service Merchandise*, the Debtors are a large, sophisticated enterprise with a complex cash management system that allows their remaining operations to function efficiently and with minimal risk. The Foreign Accounts that do not comply with section 345(b) of the Bankruptcy Code are well-respected, stable financial institutions. The significant financial and logistical burden to the estate to comply with section 345(b) is not reasonable, particularly considering the fact that the Debtors have already confirmed their chapter 11 plan and are preparing to emerge.

  22.  Each of the Foreign Banks is a well-established global financial institution that is heavily regulated with strict capital and reporting requirements. These requirements reduce risks to the funds deposited in such accounts. The Debtors and the Foreign Banks have preexisting relationships whereby each of the Foreign Banks are familiar with the Debtors business operations. Thus, the Debtors' ability to continue to use the Foreign Accounts will be administratively convenient, efficient, and minimize unnecessary costs to the estates.

23.     Considering the majority of the Debtors' bank accounts comply with section 345(b) of the Bankruptcy Code, granting a waiver from the requirements under section 345(b) of the Bankruptcy Code would not negatively affect any party in interest. Accordingly, the *Service Merchandise* factors show that sufficient cause exists to grant a waiver of section 345(b) of the Bankruptcy Code with respect to the Foreign Accounts.  In recent cases, many chapter 11 debtors have not been able to comply with section 345(b) and have gone effective prior to the expiration of the section 345(b) compliance deadline.  *See, e.g.*, *In re OSG Holdings, Inc.*, No. 23-90799 (CML) (Bankr. S.D. Tex. Nov. 9, 2023) (extending the time for compliance with section 345(b)); *In re Noble House Home Furnishings LLC*, No. 23-90773 (CML) (Bankr. S.D. Tex. Oct. 6, 2023) (same); *In re Wesco Aircraft Holdings, Inc.*, No. 23-90611 (DRJ) (Bankr. S.D. Tex. July 7, 2023) (same); *In re Athenex, Inc.*, No. 23-90295 (DRJ) (Bankr. S.D. Tex. June 15, 2023) (same); *In re Kalera, Inc.*, No. 23-90290 (DRJ) (Bankr. S.D. Tex. May 24, 2023) (same).  However, courts in this district have granted relief similar to that requested herein in other complex chapter 11 cases.  *See, e.g., In re Limetree Bay Servs., LLC*, No. 21-32351 (Bankr. S.D. Tex. Sept. 1, 2021) (DRJ) (waiving the requirements of section 345(b)); *In re Westmoreland Coal Company*, No. 18-35672 (Bankr. S.D. Tex. Feb. 28, 2019) (DRJ) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017) (same); *In re Midstates Petrol. Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same); *In re Sherwin Alumina Co.*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (same).

## Notice

24.     The Debtors will provide notice of this motion to the following:  (a) the U.S. Trustee; (b) Kramer Levin Naftalis & Frankel LLP, as counsel to the Committee; (c) Akin Gump Strauss Hauer & Feld LLP as counsel to the Ad Hoc Term Lender Group; (d) Kroll Agency

Services Limited as DIP Agent; (e) Sidley Austin LLP as counsel to the DIP Agent; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP as counsel to KKR & Co. L.P.; (g) Ropes & Gray LLP as counsel to China Resources (Holdings) Co., Ltd.; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Cash Management Banks; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  No other or further notice is needed in light of the nature of the relief requested.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
January 24, 2024

*/s/ Jennifer F. Wertz*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
               jwertz@jw.com
               ggraham@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               steven.serajeddini@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jaimie Fedell (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         jaimie.fedell@kirkland.com

*Co-Counsel to the Debtors*                          *Co-Counsel to the Debtors*

**Certificate of Service**

I certify that on January 24, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Jennifer F. Wertz
Jennifer F. Wertz